UNITED STATE DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IRA ALSTON, | : |
| | : CIVIL ACTION NO. |
| Plaintiff, | : 3:07-CV-473 (RNC) |
| | : |
| v. | : JURY TRIAL DEMANDED |
| | : |
| JASON CAHILL, MIGUEL DIAZ, JON DONOVAN, BRUCE MOYERS, SCOTT SALIUS, MELVIN SAYLOR, WILBUR STROZIER, ADAM VAZQUEZ, CARSON WRIGHT | : |
| | : |
| Defendants. | : November 21, 2007 |

## AMENDED COMPLAINT

### INTRODUCTION

1. Plaintiff, Ira Alston, was beaten on November 12, 2006 by at least six correctional officers (C/Os) at Northern Correctional Institution.  Plaintiff was then improperly and maliciously restrained, aggravating his injuries.  He has since been denied adequate medical treatment for his injuries.  Since the assault, Defendants have continued to retaliate against him.

### JURISDICTION

2. This action arises under the First, Eighth, and Fourteenth Amendments to the U.S. Constitution, the Civil Rights Act of 1871, 42 U.S.C. §1983, and the constitution, statutes, and laws of the State of Connecticut. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

1

3. This Court also has jurisdiction over Plaintiff's request for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201-2202.

## PARTIES

4. Plaintiff Ira Alston is a citizen of the United States, a resident of Connecticut incarcerated at Northern Correctional Institution, and currently a state prisoner pursuant to the provisions of Conn. Gen. Stat. § 18-84.

5. Defendant Scott Salius is and was at all relevant times a Captain assigned to Northern Correctional Institution. As the Unit Manager for Administrative Segregation at Northern, he is responsible for security and coordination of programs in his unit; enforcement of department policies and directives; supervision and control of persons working for the department; and care and custody of Plaintiff.

6. Defendant Jason Cahill is and was at all relevant times a Lieutenant assigned to Northern Correctional Institution. He is responsible for safety and security, and he supervises other staff at Northern.

7. Defendant Melvin Saylor is and was at all relevant times a Lieutenant assigned to Northern Correctional Institution. He is responsible for safety and security, and he supervises other staff at Northern.

8. Defendant Miguel Diaz is and was at all relevant times a Correction Officer assigned to Northern Correctional Institution. He is responsible for safety and security at Northern.

9. Defendant Jon Donovan is and was at all relevant times a Correction Officer assigned to Northern Correctional Institution. He is responsible for safety and security at Northern.

10. Defendant Bruce Moyers is and was at all relevant times a Correction Officer assigned to Northern Correctional Institution. He is responsible for safety and security at Northern.

11. Defendant Wilbur Strozier is and was at all relevant times a Correction Officer assigned to Northern Correctional Institution. He is responsible for safety and security at Northern.

12. Defendant Adam Vazquez is and was at all relevant times a Correction Officer assigned to Northern Correctional Institution. He is responsible for safety and security at Northern.

13. Defendant Carson Wright is a medical doctor employed or retained by the Department of Correction assigned to Northern Correctional Institution and was specifically assigned to address Plaintiff's injuries. As such, he was responsible for ensuring that Plaintiff received proper medical care, including medication.

14. Each of the Defendants is sued on all claims for relief in his or her individual capacity. Each of the Defendants is also sued for declaratory relief in his or her official capacity.

15. At all times relevant to this action, the Defendants were acting under color of the constitution, statutes, laws, regulations, custom and usages of the State of Connecticut, had a duty to refrain from violating the constitutional rights of inmates, and had both the duty and opportunity to prevent other law enforcement officers from violating the Plaintiff's rights.

16. At all times relevant to this action, the Defendants were acting in the course and scope of their employment.

17. The Defendants each acted with reckless or callous indifference to Plaintiff's constitutional rights and to his dignity as a human being.

## FACTS

**Retaliatory Assault and Preceding Events**

18. On November 4, 2006, Defendant C/O Miguel Diaz threatened Plaintiff with abusive language after Plaintiff complained about cleaning supplies being thrown into his cell. After Plaintiff stated he would report Diaz to a shift supervisor, Diaz threatened to "whoop [Plaintiff's] ass" when he came out for recreation.

19. On November 5 and over the next several days, Defendant Diaz and several other officers, including Defendant C/O Wilbur Strozier, threatened Plaintiff with physical harm, telling him to "get ready" as they walked by his cell.

20. On the morning of November 10, Defendants Diaz and Strozier were responsible for conducting inmate recreation on Plaintiff's tier. Diaz and Strozier refused to allow Plaintiff and his cell mate, Anthony Nugent, to leave their cells to go out for recreation – although other inmates on their tier were allowed to go out.

21. On November 11, when Defendant Strozier came to Plaintiff's cell to bring breakfast, Plaintiff asked why he and Mr. Nugent were denied recreation the previous day. Strozier told Plaintiff that it was because of Plaintiff's earlier argument with Defendant Diaz, saying, "you could have gotten it yesterday if you hadn't gotten it fucked up with my boy Diaz."

4

22. After breakfast on November 11, during cell cleanup, Plaintiff sought to trade the spray bottle in his cell for a broom and dustpan to continue cleaning his cell. Defendant Strozier summoned Defendant Lieutenant Saylor, who radioed for a cell extraction team and a handheld video camera to document the planned use of force to retrieve the spray bottle from Plaintiff's cell.  Plaintiff handed over the spray bottle and force was not used.

23. Directly after the dispute, Defendant Strozier threatened to "get" Plaintiff when Mr. Nugent was out of their cell the next morning to get a haircut.

24. Instead of curbing his subordinate's threats, Defendant Lieutenant Saylor encouraged Defendant Strozier, telling him to "make sure you fuck him up." Strozier replied "oh, we will," referring to himself and Diaz.

25. Later in the morning of November 11, while passing by Plaintiff's cell conducting a unit tour, Defendant Diaz told Plaintiff that he was going to "fuck him up." That same day, Diaz accused Plaintiff of threatening him and issued Plaintiff a disciplinary report.

26. Early the next morning, Defendant Strozier told Plaintiff of his plan to "get" him.  Mr. Nugent was out of the cell to get a haircut, but Plaintiff remained in the cell alone.

27. When Mr. Nugent and other inmates on the tier who had received haircuts returned to their cells, only Mr. Nugent was escorted by corrections officers. Mr. Nugent was not usually escorted back to his cell from receiving a haircut.  Defendant Diaz escorted Mr. Nugent back to the cell he shared with Plaintiff, which was located on the top tier, although upon information and belief Diaz was not working on the top tier that day.

28. Defendant Strozier, who was working on the top tier, saw Defendant Diaz approaching with Mr. Nugent.  Strozier took the lead towards Plaintiff's cell, with Mr. Nugent and Diaz following a few yards behind.

29. As Defendant Strozier approached Plaintiff's cell, Plaintiff went to the door to see who was coming. As soon as the door to the cell opened, Strozier rushed in.

30. Defendant Strozier immediately slammed Plaintiff against his bunk bed and storage locker and started choking him.  Defendant Diaz then rushed into the cell, and kicked Plaintiff's feet out from under him.  Both Strozier and Diaz punched and kicked Plaintiff as they brought him to the floor.  Only then did Plaintiff raise his arms to protect his head.

31. While Plaintiff was lying face down on the ground, Defendant Diaz placed Plaintiff in handcuffs behind his back.  Diaz intentionally bent Plaintiff's wrist back toward his forearm, causing severe pain and injury to the back of Plaintiff's hand.  Defendant Strozier smashed his walkie-talkie into Plaintiff's forehead several times, causing bleeding and leaving a visible imprint of the walkie-talkie pattern on his forehead. Strozier then began to punch Plaintiff repeatedly with his fist.

32. Only then did Defendants Diaz and Strozier call for assistance, falsely claiming that Plaintiff had assaulted them. Defendants Lieutenant Jason Cahill and C/Os Jon Donovan, Bruce Moyers, and Adam Vazquez rushed into Plaintiff's cell, where Plaintiff already lay prone on the ground in handcuffs. Moyers jumped on Plaintiff's back and Cahill began kicking him in the ribs. Defendants Donovan and Vazquez each punched Plaintiff several times before Vazquez left the cell to retrieve a handheld

camera. The five remaining officers continued to beat Plaintiff until Vazquez returned with the camera.

33. Plaintiff remained in handcuffs and was placed in leg irons to be escorted to the Medical Unit. When Plaintiff arrived at the Medical Unit, he had swollen and bruised ribs, a cut lip, swelling and bruising of his right eye, a puffy and bruised left jaw, and bleeding from a swollen abrasion on his forehead. Plaintiff's left hand was injured from being bent back toward his wrist and was numb because the handcuffs placed by Defendant Diaz were unnecessarily tight.

34. Plaintiff's repeated complaints that his handcuffs were too tight and that his left hand was numb were ignored by Nurse Hill and correctional staff present in the Medical Unit.

**Punitive and Malicious In-Cell Restraint**

35. Plaintiff was escorted from the Medical Unit to Administrative Detention by three of the officers who had assaulted him, Defendants Donovan, Moyers, and Cahill. While escorting Plaintiff, Donovan maliciously exerted additional pressure on Plaintiff's injured left wrist. Donovan was aware of the injury because he had been present when Plaintiff complained to Nurse Hill that the handcuffs were too tight and that his left hand was numb.

36. Defendant Lieutenant Cahill, the Custody Supervisor, immediately ordered Plaintiff to be placed in Administrative Detention, on "in-cell restraint status," where Plaintiff's wrists were chained together in handcuffs and his ankles were bound by leg irons. This placement in in-cell restraints for punitive reasons was in violation of the procedures set forth in Administrative Directives 6.5 and 9.4.

37. As he was placed in restraints, Plaintiff again complained of pain and numbness in his hand to officers and Nurse Hill. The handcuffs and leg irons were then chained together in an improper manner that forced Plaintiff to remain bent at the waist. He remained in in-cell restraints for approximately 48 hours.

38. The handcuff on Plaintiff's left hand continued to be much too tight. Nurse Hill was present to check the restraints in cell, but despite Plaintiff's reports of numbness from his left wrist to his fingers, she did not call for the restraints to be adjusted. Plaintiff now has a visible scar on his left wrist where the handcuff cut his skin.

39. Because of the position of his handcuffs, Plaintiff was unable to defecate without soiling himself, and in the approximately 48 hours he remained in restraints, Plaintiff was only offered assistance with the toilet one time. When he requested assistance from Nurse Ray Sayre later in the evening of November 12th, was told to "shit on yourself, nigger."

40. On the morning of November 13, after the first 24 hours in restraints, Defendant Captain Scott Salius, the Unit Manager of the Administrative Segregation Unit where Plaintiff was kept in Administrative Detention, was conducting a unit tour and spoke to Plaintiff. Plaintiff told Salius that the restraints were too tight, that he was in severe pain, and that he could not defecate. Plaintiff also asked to be removed from restraints. Salius told Plaintiff that he was being kept in restraints "for assaulting my officers," a punitive purpose in violation of Administrative Directives 6.5 and 9.4.

41. Subsequent complaints to medical staff also failed to loosen the restraints. On the morning of November 13, Plaintiff was in so much pain that he had difficulty talking

in clear sentences. Despite his complaints of numbness of pain in his left hand, Nurse Wendy Sanders told Plaintiff, "Yeah we know already. Stop crying you big pussy."

42. Similarly, on November 14 when Plaintiff was finally released from restraints after more than 48 hours, Nurse Barbara Savoie ignored Plaintiff's complaints of numbness and pain in his left hand, stating, "custody will take care of you" and leaving his cell.

**Plaintiff's Injury**

43. Despite Plaintiff's complaints about his pain and numbness in his left hand from November 12 through November 14, he was not allowed to see a doctor until November 19.

44. Despite repeated formal requests via the inmate grievance procedure, Plaintiff did not receive an X-ray of his left wrist until December 1, 2007.

45. On December 5, Dr. Dalal, the physician who created the X-ray report, noted widening of the scapholunate joint space in Plaintiff's left hand, with the possibility of scapholunate dissociation, and recommended that Plaintiff receive an MRI examination of his wrist to rule out scapholunate dissociation.

46. Plaintiff received his first pain medication for the injury to his left hand over a month after the assault. On December 15, Defendant Dr. Wright examined Plaintiff and prescribed 600 mg of Motrin twice per day for pain.

47. On January 11, 2007, Plaintiff saw Dr. Wright again, nearly sixty days after the initial injury to his hand. Plaintiff was still experiencing severe pain in his left hand.

48. The same day, Plaintiff received notice that the Utilization Review Committee declined to provide an MRI, despite the recommendation of Dr. Dalal that Plaintiff receive an MRI.

49. A second series of X-rays from January 12, 2007 demonstrated that Plaintiff had widening of the scapholunate joint and the possibility of scapholunate dissociation.

50. On January 30, 2007, in response to Plaintiff's repeated complaints of sharp pain in his left hand, Defendant Dr. Wright prescribed 25 mg of Elavil. This was the first time since Plaintiff's injury that Dr. Wright provided prescription medication for Plaintiff's pain.

51. On February 5, 2007, the Utilization Review Committee, for the second time, denied requests for a CT scan of Plaintiff's left hand.

52. Plaintiff saw Defendant Dr. Wright again on March 9, 2007 and again complained of severe left hand pain. The Elavil did not alleviate Plaintiff's significant pain in his left hand. Dr. Wright prescribed two weeks of Motrin.

53. Upon information and belief, to this date, the only treatment Plaintiff received for the injuries sustained to his left hand from the November 12-14, 2006 is a temporary prescription for Motrin, an over-the-counter medication and more than two months after the injury, a temporary prescription for Elavil. No doctor has followed up on the possibility that Plaintiff suffers from schapholunate dissociation and possible nerve damage to his left hand.

54. Plaintiff continues to suffer pain and numbness in his left hand, with possibly permanent nerve damage.

**Further Retaliation**

55. On January 7, 2007, while Plaintiff remained in punitive segregation, Defendant Diaz verbally harassed him for having accused Diaz of assault on November 12, 2006.

56. The same day, Defendant Diaz issued a disciplinary report to Plaintiff, falsely claiming that Plaintiff threatened him.

57. Defendant Diaz continued to harass Plaintiff consistently. On June 22 and 23, 2007, Plaintiff filed emergency grievances to address Diaz's harassment.

58. On July 5, 2007, Defendant Saylor verbally harassed, taunted, and threatened Plaintiff with physical harm. Plaintiff complained about the harassment and threats to Defendant Salius, who told him that Saylor "wasn't making a threat, he was making a promise," and that next time Plaintiff had a problem, he should "tell someone who cares."

59. On July 23, 2007, Defendant Saylor again harassed Plaintiff, insulting him with abusive and intimidating language. Saylor told Plaintiff that if Plaintiff took Saylor's name out of the this case, Plaintiff would be "saving himself from a massive, bloody repercussion."

60. Plaintiff continues to be taunted, harassed, threatened with physical harm, and assaulted in retaliation for filing legitimate grievances.

61. Plaintiff continues to be verbally taunted, harassed, threatened with physical harm, and assaulted for filing this lawsuit on March 27, 2007.

**First Claim**

Declaratory Judgment pursuant to 28 U.S.C. § 2201 against all Defendants in their individual and official capacities

62. Plaintiff re-alleges and incorporates herein by reference each and every allegation of paragraphs 1 through 61.

63. There is an actual controversy between the Plaintiff and the Defendants concerning the existence, nature, scope and severity of the violation of Plaintiff's rights under the United States Constitution.

64. The Plaintiff is entitled to a declaration of his rights and remedies.

### Second Claim

Deliberate Indifference to Safety and Failure to Protect against Defendants Cahill, Diaz, Donovan, Moyer, Salius, Saylor, Strozier, and Vazquez, pursuant to 42 U.S.C. § 1983

65. Plaintiff realleges and incorporates by reference each and every allegation in Paragraphs 1 through 61.

66. Each of the Defendants knew that other Department employees, including the other Defendants, were using excessive force against Plaintiff and/or were failing to summon or provide needed medical care for him.

67. Each Defendant could have taken action to stop the use of excessive force and to prevent injury to Plaintiff, but they all failed and refused to do so.

68. Each Defendant failed to protect Plaintiff from the use of excessive force in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

### Third Claim

Excessive Force, against Defendants Cahill, Diaz, Donovan, Moyer, Salius, Strozier and Vazquez, pursuant to 42 U.S.C. § 1983

69. Plaintiff realleges and incorporates by reference each and every allegation in Paragraphs 1 through 61.

70. The following acts of the Defendants were unreasonable and excessive use of force and violated Plaintiff's rights under the Eighth and Fourteenth Amendments to the United States Constitution:

   a. As described in paragraphs 29, 30, 31, 32, 33 above, Defendants Diaz and Strozier used unreasonable force when they knowingly inflicted physical harm, entering Plaintiff's cell without any provocation and intentionally and maliciously beating him, causing severe physical injury.

   b. As described in paragraphs 32, 33, 35 above, Defendants Donovan, Moyer, Vazquez, and Cahill used unreasonable force when they beat Plaintiff as he lay prone in his cell, handcuffed behind his back.

   c. As described in paragraphs 36, 37 above, Defendant Cahill ordered Plaintiff placed in in-cell restraints, despite Plaintiff's injury to his left hand.

   d. As described in paragraph 40 above, Defendant Salius intentionally and maliciously used unreasonable force when he continued to keep Plaintiff in painfully tight in-cell restraints for 48 hours, despite Plaintiff's repeated complaints of injury to his left hand.

## Fourth Claim

Violation of Due Process, against Defendants Cahill and Salius, pursuant to 42. U.S.C. § 1983

71. Plaintiff realleges and incorporates by reference each and every allegation in Paragraphs 1 through 61.

72. The punishments that Plaintiff received as a result of the Disciplinary Reports for Assault on November 12, 2006, included, among others, punitive placement on In-Cell Restraint Status for 48 hours. These punishments were an atypical and significant hardship that is qualitatively different from punishment one normally suffers in prison, giving rise to a protected liberty interest.

73. The following acts of the Defendants were unreasonable and violated Plaintiff's constitutional right to due process under the Fourteenth Amendment to the United States Constitution:

    a. As described in paragraphs 36, 37 above, Defendant Cahill violated Plaintiff's due process rights by placing Plaintiff on In-Cell Restraint Status solely for punitive reasons, in violation of the procedures in Administrative Directives 6.5 and 9.4.

    b. As described in paragraph 40 above, Defendant Salius violated Plaintiff's due process rights by continuing Plaintiff in In-Cell Restraint Status for punitive reasons, in violation of Administrative Directives 6.5 and 9.4.

74. Plaintiff has no plain, adequate or complete remedy at law to redress the wrong described above. Pursuant to DOC Administrative Directive 9.6, Plaintiff filed numerous inmate grievances with Northern officials regarding these issues and the grievance procedure does not provide monetary damages for the injuries sustained during the events described above.

75. As a direct result of the acts and omissions of the Defendants described above, Defendants violated Plaintiff's constitutional rights and Plaintiff suffered physical and mental injury.

### Fifth Claim

Violation of the First Amendment, against Defendants Diaz, Strozier, and Saylor, pursuant to 42. U.S.C. § 1983

76. Plaintiff realleges and incorporates by reference each and every allegation in Paragraphs 1 through 61.

77. The following acts of the Defendants would deter an ordinary person from engaging in the protected activity and Defendants' conduct was substantially motivated by Plaintiff's protected activity:

   a. As described in paragraphs 18, 19, 20, 25, 29, 30, 31, 32, 33, 55, 56, 57 above, Defendants Diaz violated Plaintiff's rights under the First Amendment and the DOC Administrative Directives by threatening and assaulting Plaintiff and issuing him false disciplinary reports in retaliation for engaging in the protected conduct of filing a grievance on January 7, 2007, June 22 and 23, 2007 and threatening to report Defendant Diaz' conduct to his supervisor on November 4, 2006.

   b. As described in paragraphs 19, 20, 21, 23, 24, 26, 29, 30, 31, 32, 33 above, Defendant Strozier violated Plaintiff's rights under the First Amendment by threatening and assaulting him in retaliation against Plaintiff for engaging in the protected conduct of filing grievances against Defendant Diaz.

    c. As described in paragraphs 24, 29, 30, 31, 32, 33,58, 59 above, Defendant Saylor violated Plaintiff's rights under the First Amendment for engaging in protected conduct of filing this lawsuit on July 5 and 23, 2007 by threatening him with physical harm and putting Plaintiff in imminent physical harm.

78. As a direct result of the acts and omissions of the Defendants described herein, Plaintiff's constitutional rights were violated and he suffered physical and mental injury.

### Sixth Claim

Claim for tortious assault and battery against Defendants Cahill, Diaz, Donovan, Moyer, Salius, and Vazquez, pursuant to the laws of Connecticut

79. Plaintiff realleges and incorporates by reference each and every allegation in Paragraphs 1 through 61.

80. The following acts of the Defendants intentionally inflicted physical harm and injured Plaintiff, violating Plaintiff's rights under the laws of Connecticut:

    a. As described in paragraphs 29, 30, 31, 32, 33 above, Defendants Diaz and Strozier entered Plaintiff's cell without any provocation and maliciously beat Plaintiff, causing severe physical injury

    b. As described in paragraphs 32, 33, 35 above, Defendants Donovan, Moyer, Vazquez, and Cahill beat Plaintiff without provocation in his cell as he lay prone handcuffed behind his back.

16

    c.   As described in paragraphs 36, 37 above, Defendant Cahill ordered Plaintiff placed in in-cell restraints despite Plaintiff's injury to his left hand.

    d.   As described in paragraph 40 above, Defendant Salius kept Plaintiff in painfully tight in-cell restraints for 48 hours, despite Plaintiff's repeated complaints of injury to his left hand.

81. As a result of Defendants' intentional acts, Plaintiff's rights were violated and he suffered physical and emotional injury and anxiety.

## Seventh Claim

Deliberate Indifference, Failure to Provide Constitutionally Adequate Medical Care against defendant Carson Wright, pursuant to 42 U.S.C. § 1983

82. Plaintiff realleges and incorporates by reference each and every allegation in Paragraphs 1 through 61.

83. As described in paragraph 46, 47, 50, 53 above, Plaintiff informed Wright of the pain on several occasions and only received Motrin in response. Wright failed to provide any prescription pain relief for Plaintiff's significant pain until more than two months after the injury. Even once a prescription was provided, Plaintiff's pain continued and Dr. Wright failed to take actions to address Plaintiff's pain.

84. By failing to provide Plaintiff with, and failing to ensure the provision of, constitutionally adequate medical care through his failure to provide meaningful pain relief, the defendant disregarded an excessive risk to Plaintiff's health and knowingly subjected

him to pain, thereby violating Plaintiff's rights under the Eighth and Fourteenth Amendments to the United States Constitution.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Ira Alston respectfully requests a jury trial, pursuant to Rule 38 of the Federal Rules of Civil Procedure, and requests for relief as follows:

1. A declaration that each of the Defendants violated Plaintiff's Constitutional rights;
2. Compensatory damages;
3. Punitive damages;
4. Costs and reasonable attorneys fees; and
5. Such further relief as the Court deems just and proper.

Dated: November 21, 2007                          PLAINTIFF, IRA ALSTON

                                                  By: /s/ David N. Rosen
                                                  David N. Rosen (CT00196)
                                                  David Rosen & Associates
                                                  400 Orange Street
                                                  New Haven, CT
                                                  Telephone (203) 787-3513
                                                  Facsimile (203) 789-1605
                                                  Email: drosen@davidrosenlaw.com
                                                  His Attorney

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing was emailed and mailed, first class, postage prepaid on November 21, 2007 to:

Richard Biggar, Esq.
Attorney General's Office
110 Sherman Street
Hartford, Connecticut 06106


                                              <u>/s/ David N. Rosen</u>
                                              David N. Rosen