UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| IRA ALSTON, | : | CASE NO. |
|  | : | CASE NO. 3:07CV473(RNC) |
|  | : |  |
| V. | : |  |
|  | : |  |
| JASON CAHILL. ET. AL., | : | June 6, 2008 |
|  | : |  |

### Third AMENDED COMPLAINT

**INTRODUCTION**

1.   Plaintiff, Ira Alston, was beaten on November 12, 2006 by at least six correctional officers (C/Os) at Northern Correctional. Institution. Plaintiff was then improperly and maliciously restrained, aggravating his injuries. He has since been denied adequate medical treatment for his injuries. Since the assault, Defendants have continued to retaliate against him.

**JURISDICTION**

2.   This action arises under the First, Eighth, and Fourteenth Amendments to the U.S. Constitution, the Civil Rights Act of 1871,42 U.S.C. § 1983, 1988 and the constitution, statutes, and laws of the State of Connecticut. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 1343, and 1367.

3.   This Court also has jurisdiction over Plaintiffs request for declaratory and injunctive relief pursuant to 28 U.S.C. § 2201-2202.

**PARTIES**

4.   Plaintiff Ira Alston is a citizen of the United States, a resident of Connecticut incarcerated at Northern Correctional Institution, and currently a state prisoner pursuant to the provisions of Conn. Gen. Stat. § 18-84.

5.   Defendant Fredrick Levesque Jr. is and was the Department of Correction's Director of Offender Classification and Population management. As the Director he supervises the classification of inmates, including those at Northern. Duties

1

       include assigning hearing Officers to conduct hearings and investigations concerning placement of inmates in Administrative Segregation.

6. Defendant Jeffery McGill is and was at all relevant times a Warden assigned to Northern Correctional Institution. He is responsible for safety and security at Northern. He is responsible for the administration of the Northern facility, the care and custody of persons incarcerated at Northern, and the supervision, discipline, and control of persons working at Northern. Defendant McGill is responsible, directly and in a supervisory capacity, for: (a) the supervision, training, discipline and control of persons working for the department; (b) the establishment and enforcement of policies and practices, and (c) the care and custody of the Plaintiff. He is also responsible for requesting that the Director of Offender Classification and Population Management review inmates overall security risk classification.

7. Defendant Scott Salius is and was at all relevant times a Captain assigned to Northern Correctional Institution. As the Unit Manager for Administrative Segregation at Northern, he is responsible for security and coordination of programs in his unit; enforcement of department policies and directives; supervision and control of persons working for the department; and care and custody of Plaintiff

8. Defendant Jason Cahill is and was at all relevant times a Lieutenant assigned to Northern Correctional Institution. He is responsible for safety and security, and he supervises other staff at Northern.

9. Defendant Melvin Saylor is and was at all relevant times a Lieutenant assigned to Northern Correctional Institution. He is responsible for safety and. security, and he supervises other staff at Northern.

10. Defendant Miguel Diaz is and was at all relevant times a Correction Officer assigned to Northern Correctional Institution. He is responsible for safety and security at Northern.

11. Defendant Jon Donovan is and was at all relevant times a Correction Officer assigned to Northern. Correctional Institution. He is responsible for safety and security at Northern.

12. Defendant Rodriguez is and was at all relevant times a Correction Officer assigned to Northern Correctional Institution. He is responsible for safety and security at Northern.

13. Defendant Bruce Moyers is and was at all relevant times a Correction Officer assigned to Northern Correctional Institution. He is responsible for safety and security at Northern.

14. Defendant Wilbur Strozier is and was at all relevant times a Correction Officer assigned to Northern Correctional Institution. He is responsible for safety and security at Northern.

15. Defendant Adam Vazquez is and was at all relevant times a Correction Officer assigned to Northern Correctional Institution. He is responsible for safety and security at Northern.

16. Defendant Carson Wright is a medical doctor employed or retained by the Department of Correction assigned to Northern Correctional Institution and was specifically assigned to address Plaintiffs injuries. As such, he was responsible for ensuring that Plaintiff received proper medical care, including medication.

17. Defendant Rose is and was at all relevant times a Correction Officer assigned to Northern Correctional Institution. She is responsible for safety and security at Northern.

18. Defendant Theresa Lantz is and was at all relevant times State of Connecticut Commissioner of the State's Department of Corrections.

19. Defendant Hill is a nurse employed or retained by the Department of Correction assigned to Northern Correctional Institution.

20. Defendant Ray Sayre is a nurse employed or retained by the Department of Correction assigned to Northern Correctional Institution.

21. Defendant Wendy Sanders is a nurse employed or retained by the Department of Correction assigned to Northern Correctional Institution.

22. Defendant Barbara Savoe is a nurse employed or retained by the Department of Correction assigned to Northern Correctional Institution.

23. Defendant Valerie Light is and was at all times Deputy Warden assigned to Northern Correctional Institution. She is responsible for the programs and treatment at Northern.

24. Each of the Defendants is sued on all claims for relief in his or her individual capacity. Each of the Defendants is also sued for declaratory and injunctive relief in his or her official capacity.

25. At all times relevant to this action, the Defendants were acting under color of law and or under the authority of the constitution, statutes, laws, regulations, custom and usages of the State of Connecticut, having a duty to refrain from violating the constitutional rights of inmates, and had both the duty and opportunity to prevent other law enforcement officers from violating the Plaintiffs rights.

26. At all times relevant to this action, the Defendants were acting in the course and scope of their employment.

27. The Defendants each acted with reckless or callous indifference to Plaintiffs constitutional rights and to his dignity as a human being.

# FACTS

## Assault and Preceding Events

28. On November 4, 2006, Defendant C/O Miguel Diaz threatened Plaintiff with abusive language after Plaintiff complained about cleaning supplies being thrown into his cell. After Plaintiff stated he would report Diaz to a shift supervisor, Diaz threatened to "whoop [Plaintiff's] ass" when he came out for recreation.

29. On the morning of November 10, Defendants Diaz and Strozier were responsible for conducting inmate recreation on Plaintiffs tier. Diaz and. Strozier refused to allow Plaintiff and his cellmate, Anthony Nugent, to leave their cells to go out for recreation although other inmates on their tier were allowed to go out.

30. On November 11, when Defendant Strozier came to Plaintiffs cell to bring breakfast, Plaintiff asked why he and Mr. Nugent were denied recreation the previous day. Strozier told Plaintiff that it was because of Plaintiffs earlier argument with Defendant Diaz, saying, "you could have gotten it yesterday if you hadn't gotten it fucked up with my boy Diaz."

31. After breakfast on November 11, during cell cleanup, Plaintiff sought to trade the spray bottle in his cell for a broom and dustpan to continue cleaning his cell. Defendant Strozier summoned Defendant Lieutenant Saylor, who radioed for a cell extraction team and a handheld video camera to document the planned use of force to retrieve the spray bottle from Plaintiffs cell. Plaintiff handed over the spray bottle and force was not used.

32. Instead of curbing his subordinate's threats, Defendant Lieutenant Saylor encouraged Defendant Strozier, telling him to "make sure you fuck him up." Strozier replied, "oh, we will," referring to himself and Diaz.

33. Later in the morning of November 11, while passing by Plaintiff's cell conducting a unit tour, Defendant Diaz told Plaintiff that he was going to "fuck him up." That same day, Diaz accused Plaintiff of threatening him and issued Plaintiff a disciplinary report.

4

34. Directly after the dispute on November 12, 2006 Defendant Strozier threatened the plaintiff by telling him to "get ready" when Mr. Nugent was out of their cell the next morning to get a haircut.

35. When Mr. Nugent and other inmates on the tier who had received haircuts returned to their cells, corrections officers escorted only Mr. Nugent. Mr. Nugent was not usually escorted back to his cell from receiving a haircut. Defendant Diaz escorted Mr. Nugent back to the cell he shared with Plaintiff, which was located on the top tier, although upon information and belief Diaz was not working on the top tier that day.

36. Defendant Strozier, who was working on the top tier, saw Defendant Diaz approaching with Mr. Nugent; Strozier took the lead towards Plaintiffs cell, with Mr. Nugent and Diaz following a few yards behind.

37. As Defendant Strozier approached Plaintiffs cell, Plaintiff went to the door to see who was coming. As soon as the door to the cell opened, Strozier rushed in.

38. Defendant Strozier immediately slammed Plaintiff against his bunk bed and storage locker and started choking him. Defendant Diaz then rushed into the cell, and kicked Plaintiff's feet out from under him.

39. While Plaintiff was lying face down on the ground, Defendant Diaz placed Plaintiff in handcuffs behind his back. Diaz intentionally bent Plaintiffs wrist back toward his forearm, causing severe pain and injury to the back of Plaintiffs hand. Defendant Strozier smashed his walkie-talkie into Plaintiffs forehead several times, causing bleeding and leaving a visible imprint of the walkie-talkie pattern on his forehead. Strozier then began to punch Plaintiff repeatedly with his fist.

40. Only then did Defendants Diaz and Strozier call for assistance, falsely claiming that Plaintiff had assaulted them. Defendants Lieutenant Jason Cahill and C/Os Jon Donovan, Bruce Moyers, and Adam Vazquez rushed into Plaintiffs cell, where Plaintiff already lay prone on the ground in handcuffs. Moyers jumped on Plaintiffs back and Cahill began kicking him in the ribs. Defendants Donovan and Vazquez each punched Plaintiff several times before Vazquez left the cell to retrieve a handheld camera. The five remaining officers continued to beat Plaintiff until Vazquez returned with the camera.

41. Plaintiff remained in handcuffs and was placed in leg irons to be escorted to the Medical Unit. When Plaintiff arrived at the Medical Unit, he had swollen and bruised ribs, a cut lip, swelling and bruising of his right eye, a puffy and bruised left jaw, and bleeding from a swollen abrasion on his forehead. Plaintiff's left hand was injured from being bent back toward his wrist and was numb because the handcuffs placed by Defendant Diaz were unnecessarily tight.

5

42. Nurse Hill and correctional staff present in the Medical Unit ignored plaintiff's repeated complaints that his handcuffs were too tight and that his left hand was numb.

**Punitive and Malicious In-Cell Restraint**

43. Plaintiff was escorted from the Medical Unit to Administrative Detention by three of the officers who had assaulted him, Defendants Donovan, Moyers, and Cahill. While escorting Plaintiff, Donovan maliciously exerted additional pressure on Plaintiffs injured left wrist. Donovan was aware of the injury because he had been present when Plaintiff complained to Nurse Hill that the handcuffs were too tight and that his left hand was numb.

44. Defendant Lieutenant Cahill, the Custody Supervisor, immediately ordered Plaintiff to be placed in Administrative Detention, on "in-cell restraint status," where Plaintiffs wrists were chained together in handcuffs and his ankles were bound by leg irons. This placement in in-cell restraint for punitive reasons was in violation of the procedures set forth in Administrative Directives 6.5 and 9.4.

45. As he was placed in restraints, Plaintiff again complained of pain and numbness in his hand to officers and Nurse Hill. The handcuffs and leg irons were then chained together in an improper manner that forced Plaintiff to remain bent at the waist. He remained, in in-cell restraints for approximately 54 hours. During this 54-hour period Chief Of Security Rose did not review plaintiffs in-cell restraint status as required by the DOC policy rules and/or regulations. Furthermore, during this 54-hour period Defendant Warden McGill did not review plaintiff's in-cell restraint status every 24 hours as required by DOC policy rules and/or regulations. The plaintiff while in in-cell restraints did not receive his state issued meals for the first 24 hours at the refusal of Northern Correctional Officers.

46. The handcuff on Plaintiffs left hand continued to be much too tight. Nurse Hill was present to check the restraints in cell, but despite Plaintiffs reports of numbness from his left wrist to his fingers, she did not call for the restraints to be adjusted. Plaintiff now has a visible scar on his left wrist where the handcuff cut his skin.

47. Because of the position of his handcuffs, Plaintiff was unable to defecate without soiling himself, and in them approximately 54 hours he remained in restraints. Plaintiff was only offered assistance with the toilet one time. When he requested assistance from Nurse Ray Sayre later in the evening of November 12th, was told to "shit on yourself, nigger."

48. On the morning of November 13th, after the first 24 hours in restraints, Defendant Captain Scott Salius, the Unit Manager of the Administrative Segregation Unit where Plaintiff was kept in Administrative Detention, was conducting a unit tour

6

and spoke to Plaintiff. Plaintiff told Salius that the restraints were too tight, that he was in severe pain, and that he could not defecate. Plaintiff also asked to be removed from restraints. Salius told Plaintiff that he was being kept in restraints "for assaulting my officers," a punitive purpose in violation of Administrative Directives 6.5 and 9.4.

49. Subsequent complaints to medical staff also failed to loosen the restraints. On the morning of November 13, Plaintiff was in so much pain that he had difficulty talking in clear sentences. Despite his complaints of numbness of pain in his left hand, Nurse Wendy Sanders told Plaintiff, "Yeah we know already. Stop crying you big pussy."

50. Similarly, on November 14th, when Plaintiff was finally released from restraints after more than 48 hours, Nurse Barbara Savoie ignored Plaintiffs complaints of numbness and pain in his left hand, stating, "custody will take care of you" and leaving his cell.

**Plaintiffs Injury**

51. Plaintiff had abrasions on the forehead from repeatedly being hit with a radio and sustained a bruised and swollen right eye, lip and jaw.

52. Despite Plaintiffs complaints about his pain and numbness in his left hand from November 12 through November 14, he was not allowed to see a doctor until November 19.

53. Despite repeated formal requests via the inmate grievance procedure, Plaintiff did not receive an X-ray of his left wrist until December 1, 2007.

54. On December 5, Dr. Dalal, the physician who created the X-ray report, noted widening of the scaphoid joint space in Plaintiffs left hand, with the possibility of scapholunate dissociation, and recommended that Plaintiff receive an MRI examination of his wrist to rule out scapholunate dissociation.

55. Plaintiff received his first pain medication for the injury to his left hand over a month after the assault. On December 15, Defendant Dr. Wright examined Plaintiff and prescribed 600 mg of Motrin twice per day for pain.

56. On January 11, 2007, Plaintiff saw Dr. Wright again, nearly sixty days after the initial injury to his hand. Plaintiff was still experiencing severe pain in his left hand.

57. The same day, Plaintiff received notice that the Utilization Review Committee declined to provide an MRI, despite the recommendation of Dr. Dalal that Plaintiff receive an MRI.

7

58. A second series of X-rays from January 12, 2007 demonstrated that Plaintiff had widening of the scaphoid joint and the possibility of scapholunate dissociation.

59. On February 5, 2007, the Utilization Review Committee, for the second time, denied requests for a CT scan of Plaintiffs left hand.

60. Upon information and belief, to this date, the only treatment Plaintiff received for the injuries sustained to his left hand from the November 12-14, 2006 is a temporary prescription for Motrin, an over-the-counter medication and more than two months after the injury, a temporary prescription for Elavil. No doctor has followed up on the possibility that Plaintiff suffers from schapholunate dissociation possible nerve damage to his left hand.

61. Plaintiff continues to suffer pain and numbness in his left hand, with possibly permanent nerve damage.

**Retaliation**

62. On January 7, 2007, while Plaintiff remained on punitive administrative segregation, Defendant Diaz verbally harassed him for having accused Diaz of assault on November 12, 2006.

63. The same day, Defendant Diaz issued a disciplinary report to Plaintiff, falsely claiming that Plaintiff threatened him.

64. Defendant Diaz continued to harass Plaintiff consistently. On June22 and 23, 2007, Plaintiff filed emergency grievances to address Diaz's harassment.

65. On July 5, 2007, Defendant Saylor verbally harassed, taunted, and threatened Plaintiff with physical harm. Plaintiff complained about the harassment and threats to Defendant Salius, who told him that Saylor "wasn't making a threat, he was making a promise," and that next time Plaintiff had a problem, he should "tell someone who cares."

66. On July 23, 2007, Defendant Saylor again harassed Plaintiff, insulting him with abusive and intimidating language. Saylor told Plaintiff that if Plaintiff took Saylor's name out of the this case, Plaintiff would be "saving himself from a massive, bloody repercussion."

67. Plaintiff continues to be taunted, harassed, threatened with physical harm, and assaulted in retaliation for filing legitimate grievances.

68. Plaintiff continues to be verbally taunted, harassed, threatened with physical harm, and assaulted for filing this lawsuit on March 27, 2007.

8

**Correctional Staffs Failure to Follow Proper Administrative Procedures**

69. As described above in paragraph 43, Plaintiff was sent to Administrative Detention on November 12, 2006, where he was kept in in-cell restraints for more than 48 hours solely for punitive reasons, in violation, of Administrative Directives 6.5 and 9.4.

70. On. November 22. Plaintiff had hearings for the disciplinary reports alleging assault on Defendants Diaz and Strozier on November 12. These hearings were beyond the time frame provided for in the Administrative Directive 9.5.

71. At the hearings for the alleged assault on Defendants Strozier and Diaz, no witnesses were called, and Plaintiff was not present at either hearing. At each hearing, a not guilty plea was entered in Plaintiffs absence, Plaintiff was sentenced to punitive segregation for 30 days for each offense, the maximum allowable time, running consecutively, from November 19 to December 19, 2006, and December 20 to January 19,2007.

72. Plaintiff's review for placement in Administrative Segregation was also beyond the timeframe established by Administrative Directive 9.5. At the request of Defendant Warden McGill to Defendant Fred Levesque, Jr., the Director of Offender Classification and Population Management, Plaintiff was to be reviewed for placement in Administrative Segregation. Although Plaintiff was entitled under the Administrative Directives to a hearing for his placement in Administrative Segregation by January 19, 2007, the date that his punitive segregation for the disciplinary reports for assault on November 12 ended, he did not receive a notice of hearing until February 7, 2007. A hearing was scheduled for February 9, 2007, at 9 am, but no hearing was held on that date.

73. When Plaintiff met with his inmate advocate for the Administrative Segregation hearing on the morning of February 13, 2007, Plaintiff stated formally to his advocate that the hearing was not within the proper time frame as required by the Department of Correction Administrative Directive 9.5.

74. Plaintiff finally had a hearing for placement on Administrative Segregation immediately following his meeting with his advocate on February 13, 2007, which relied in part on memo from Defendant McGill to Defendant Levesque. Defendant Levesque subsequently authorized placement of Plaintiff on Administrative Segregation status on February 15, 2007.

75. Following the disposition of the Administrative Segregation hearing, on. February 15, 2007, Defendant Levesque also increased. Plaintiffs overall risk classification score increased from level 4 to level 5. Plaintiff did not learn of his overall risk reclassification to level 5 until he received, a copy of the review classifications

9

     sheet on February 22, 2007 beyond the time frame required in DOC Administrative Directive 9.2.

76. Pursuant to Administrative Procedures the Plaintiff appealed his administrative segregation placement to the same Director Fredrick Levesque who denied the Plaintiff's appeal to his administrative segregation placement. This procedure fails to afford inmates and the plaintiff a adequate appeal process to their administrative segregation placement. Furthermore since the plaintiff had been placed on administrative segregation placement Deputy Warden Light did not afford the Plaintiff the opportunity to be involved in the regular classification periodic review of his placement. Thus the Northern Classification Committee failed to engage in every periodic review of the placement of the Plaintiff on administrative segregation placement

77. Warden McGill knew about the assault and the excessive force used. Pursuant to Department policy "AD. 9.6 Inmate Grievances," Plaintiff filed numerous inmate grievances regarding the assault. Warden McGill denied. Plaintiffs Level I grievance on December 14, 2006. Warden McGill also received a copy of a denial of Plaintiffs appeal against the false disciplinary reports on December 4, 2006.

### First Claim

Declaratory Judgment pursuant to 28 U.S.C. § 2201 against all Defendants in their individual and official capacities.

78. Plaintiff re-alleges and. incorporates herein by reference each and every allegation of paragraphs l through 77.

79. There is an actual controversy between the Plaintiff and the Defendants concerning the existence, nature, scope and severity of the violation of Plaintiffs rights under the United States Constitution.

80. The Plaintiff is entitled to a declaration of his rights and remedies.

### Second Claim

Deliberate Indifference as to Safety and Failure to Protect against Defendants Cahill, Diaz, Donovan, Moyer, Salius, Saylor, Strozier, and Vazquez, pursuant to 42 U.S.C. § 1983.

81. Plaintiff re-alleges and incorporates by reference each and every allegation in Paragraphs 1 through 77.

82. Each of the Defendants knew that other Department employees, including the other Defendants, were using excessive force against Plaintiff and/or were failing to summon or provide needed medical care for him.

83. Each Defendant could have taken action to stop the use of excessive force and to prevent injury to Plaintiff, but they all failed and refused to do so.

84. Each Defendant failed to protect Plaintiff from the use of excessive force in violation of the Eighth and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1983.


**Third Claim**
Excessive Force, against Defendants Cahill, Diaz, Donovan, Moyer. Salius, Strozier and Vazquez, pursuant to the 8th Amendment and 42 U.S.C. § 1983.

85. Plaintiff re-alleges and incorporates by reference each and every allegation in Paragraphs 1 through 77.

86. The following acts of the Defendants were unreasonable and excessive use of force and violated Plaintiffs rights under the Eighth and Fourteenth Amendments to the United States Constitution:
    a. As described in paragraphs 29 through 40 above, Defendants Diaz and Strozier used unreasonable force when they knowingly inflicted physical harm, entering Plaintiffs cell without any provocation and intentionally and maliciously beating him, causing severe physical injury.
    b. As described in paragraphs 40 above, Defendants Donovan, Moyer, Vazquez, and Cahill used unreasonable force when they beat Plaintiff, as he lay prone in his cell, handcuffed behind his back.
    c. As described in paragraphs 44, 45 above, Defendant Cahill ordered Plaintiff placed in in-cell restraints, despite Plaintiffs injury to his left hand.


**Fourth Claim**
Violation of Due Process, against Defendants Cahill, Salius, McGill and Rose pursuant to 42. U.S.C. § 1983, and the Fourteenth Amendment to the United States Constitution.

87. Plaintiff re-alleges and incorporates by reference each and every allegation in Paragraphs I. through 77.

88. The punishments that Plaintiff received as a result of the Disciplinary Reports for Assault on November 12, 2006, included, among others, punitive placement on In-Cell Restraint Status for 48 hours. These punishments were an atypical and

11

significant hardship that is qualitatively different from punishment one normally suffers in prison, giving rise to a protected liberty interest and substantive rights.

89. The following acts of the Defendants were unreasonable and violated Plaintiffs constitutional right to due process under the Fourteenth Amendment to the United States Constitution:
    a. As described in paragraphs 44, 45 above, Defendant Cahill violated Plaintiffs due process rights by placing Plaintiff on In-Cell Restraint Status solely for punitive reasons, in violation of the procedures in Administrative Directives 6.5 and 9.4.
    b. As described in paragraph 48 above Defendant Salius violated Plaintiff's due process rights by continuing plaintiff's in-cell restraint status solely for punitive reasons in violation of the procedures in administrative directives 6.5 and 9.4.
    c. As described in paragraph 45 above Defendant Rose violated the Plaintiff's due process rights by failing to review the Plaintiff's in-cell restraint status after 5 hours of placement in violation of procedures in administrative directives 6.5 and 9.4.
    d. As described in paragraph 45 above Defendant McGill violated Plaintiff's due process rights by failing to review the Plaintiff's in-cell restraint status every 24 hours while the plaintiff was on in-cell restraint status for 54 hours in violation with procedures in administrative directives 6.5 and 9.4.

90. Plaintiff has no plain, adequate or complete remedy at law to redress the wrong described above. Pursuant to DOC Administrative Directive 9.6, Plaintiff filed numerous inmate grievances with Northern officials regarding these issues and the grievance procedure does not provide monetary damages for the injuries sustained during the events described above.

91. As a direct result of the acts and omissions of the Defendants described above, Defendants violated Plaintiffs constitutional rights and Plaintiff suffered physical and mental injury.

**Fifth Claim**
Violation of the First Amendment, against Defendants Diaz, Saylor and Salius, and 42. U.S.C. § 1983.

92. Plaintiff re-alleges and incorporates by reference each and every allegation in Paragraphs 1 through 77.

93. The following acts of the Defendants would deter an ordinary person from engaging in the protected activity and Defendants' conduct was substantially motivated by Plaintiffs protected activity:

12

    a. As described in paragraphs 62-68 above, Defendants Diaz violated Plaintiffs rights under the First Amendment and the DOC Administrative Directives by threatening and. assaulting Plaintiff and issuing him false disciplinary reports in retaliation for engaging in the protected conduct of filing a grievance on January 7,2007, June 22 and 23, 2007 and threatening to report Defendant Diaz' conduct to his supervisor on November 4, 2006.

    b. As described in paragraphs 31, 32, 65, and 66 above, Defendant Saylor violated Plaintiff's rights under the First Amendment for engaging in protected conduct of filing grievances on July 5th and 23rd 2007 by threatening him with physical harm and putting Plaintiff in imminent physical harm.

    c. As described in paragraph 48 above Defendant Salius violated Plaintiff rights under the first amendment and DOC administrative directive by continuing Plaintiff's in-cell restraint status for punitive purposes thus retaliating against the plaintiff subjecting him to continuous physical and mental harm.

94. As a direct result of the acts and omissions of the Defendants described herein, Plaintiffs constitutional rights were violated and he suffered physical and mental injury.

**Sixth Claim**
Claim for tortuous assault and battery against Defendants Cahill, Diaz, Donovan, Moyer, Strozier, and Vazquez, pursuant to the laws of Connecticut, as a pendent state claim.

95. Plaintiff re-alleges and incorporates by reference each and every allegation in Paragraphs 1 through 77.

96. The following acts of the Defendants intentionally inflicted physical harm and injured Plaintiff, violating Plaintiffs rights under the laws of Connecticut:

    a. As described, in paragraphs 36, 37, 38 and 39 above, Defendants Diaz and Strozier entered Plaintiffs cell without any provocation and maliciously beat Plaintiff, causing severe physical injury.

    b. As described in paragraphs 40, 41 above, Defendants Donovan, Moyer, Vazquez, and Cahill beat Plaintiff without provocation in his cell as he lay prone handcuffed behind his back.

    c. As described in paragraphs 44, 45 above, Defendant Cahill ordered Plaintiff placed in in-cell restraints despite Plaintiffs injury to his left hand.

97. As a result of Defendants' intentional acts, Plaintiffs rights were violated and he suffered physical and emotional injury and anxiety.

13

**Seventh Claim**
Deliberate Indifference, Failure to Provide Constitutionally Adequate Medical Care against defendant Carson Wright, Wendy Sanders, Ray Sayre, Barbara Savoe, and Nancy Hill pursuant to 8th and 14th amendments and 42 U.S.C. § 1983.

98.  Plaintiff re-alleges and incorporates by reference each and every allegation in Paragraphs I through 77.

99.  As described in paragraph 52, 55, 56 above, Plaintiff informed Wright of the pain on several occasions and only received Motrin in response. Wright failed to provide any prescription pain relief for Plaintiffs significant pain until more than two months after the injury. Even once a prescription was provided, Plaintiffs pain continued and Dr. Wright failed to take actions to address Plaintiffs pain.

100. By failing to provide Plaintiff with, and failing to ensure the provision of, constitutionally adequate medical care through his failure to provide meaningful pain relief, the defendant disregarded an excessive risk to Plaintiffs health and knowingly subjected him to pain, thereby violating Plaintiffs rights under the Eighth and Fourteenth Amendments to the United States Constitution.

    a. As described in paragraph 42, 45, 47, 49 and 50 above defendants Nurse Hill, Sanders, Sayre and Savoe violated Plaintiff's rights by railing to provide plaintiff with and failing to ensure the provision of constitutionally adequate medical care through their failure to provide meaningful pain relief. Defendants disregarded an excessive risk to plaintiff's health and knowingly subject him to pain, thereby violating plaintiff's rights under the eighth and fourteenth amendments of the United States Constitution.

**Eighth Claim**
Violation of Due Process, against Defendants Cahill, Salius, Lantz, Light, and Levesque in their individual capacities, pursuant to 42. U.S.C. § 1983.

101. Plaintiff re-alleges and incorporates by reference each and every allegation in Paragraphs 1 through 77.

102. The sanctions that Plaintiff received as a result of the disciplinary Reports for Assaults on November 12, 2006, included, among others:

    a. Placement on In-Cell Restraint Status for more than 48 hours;
    b. Placement in Administrative Segregation for indefinite confinement; and
    c. Reclassification of overall security risk level without proper procedures.

14

These sanctions constitute an atypical and significant hardship that is qualitatively different from punishment one normally suffers in prison, giving rise to a protected liberty interest. Plaintiff is essentially being further punished for the assault in which he was the victim, not the aggressor.

103.  Defendant Cahill violated the due process rights of Plaintiff by placing Plaintiff on In- Cell Restraint Status solely for punitive reasons, in violation of the procedures in Administrative Directives 6.5 and 9.4.

104.  Defendant Salis and McGill violated the due process rights of Plaintiff by:
   d.  Continuing to put Plaintiff in In-Cell Restraint Status for punitive reasons, in violation of Administrative Directives 6.5 and 9.4.
   e.  Failing to provide a hearing on the November 12, 2006 Disciplinary Reports 'for Assault within the time frame specified in the DOC Administrative Directive 9.5;
   f.  Not allowing Plaintiff to be present or otherwise rebut the false charges against him in a meaningful manner at the disciplinary hearings on November 22, 2006.
   g.  Failing to ensure a response to Plaintiffs administrative grievances within the specified time periods provided, in the DOC Administrative Directive 9.6.

105.  Defendant McGill violated the due process rights of Plaintiff by failing to provide a hearing for placement in Administrative segregation prior to the completion of Plaintiffs punitive segregation for the Disciplinary Reports for assault on November 12, 2006, in violation, of the DOC Administrative Directive 9.5.

106.  Defendant Levesque violated the due process rights of Plaintiff failing to provide him timely written notice of his overall security risk classification, decision, in violation of the DOC Administrative Directive 9.2 which resulted in Plaintiffs placement in Administrative Segregation.

107.  Defendant Lantz violated the due process rights of plaintiff by creating a policy that provides an inadequate appeal process to the placement of inmates on administrative segregation.

108.  Defendant Levesque violated the due process rights of the plaintiff by failing to provide a hearing for placement on administrative segregation prior to the completion of plaintiff's punitive segregation for disciplinary reports for assault on November 12th, 2006 in violation of DOC administrative directive 9.5. Furthermore Defendant Levesque violated Plaintiff's due process right by authorizing a hearing to be held after being aware that the timeframe in which to hold such hearing has expired and by authorizing plaintiff be placed on administrative segregation.

109. Defendant Light and McGill violated the Plaintiff's due process rights by failing to afford plaintiff the opportunity to be involved in every periodic review of his administrative segregation placement. Furthermore Defendant Light and McGill violated the Plaintiffs due process rights by failing to engage in every periodic review as required by law and DOC administrative directive 9.2 and 9.4 of the plaintiff administrative segregation placement whereas plaintiff administrative segregation confinement has been a pretext for indefinite confinement.

110. As a direct and proximate result of the acts and omissions of the defendants described herein Plaintiff suffer and depravation of his senses, psychological injury and physical injury as a resultant of defendants spiteful and malicious violation of plaintiff's constitutional rights.

**Ninth Claim for Relief**
Violation of the Fourteenth Amendment, Supervisory Liability, against Defendants McGill, Lantz, Rodriguez and. Levesque in their individual capacities, pursuant to 42 U.S.C. § 1983.

111. Plaintiff re-alleges and incorporates by reference each and every allegation in Paragraphs 1 through 77.

112. The sanctions that Plaintiff received as a result of the Disciplinary Reports for Assault on November 12, 2006, included, among others,:
    a. Placement on In-Cell Restraint Status for more than 48 hours;
    b. Sixty days of Punitive Segregation combined with a loss of other privileges available to the general population;
    c. Placement in Administrative Segregation for Indefinite confinement; and
    d. Reclassification of overall security risk level without proper procedure.

113. Upon information and belief, Defendants Lantz, Levesque, Rodriguez and McGill were aware of Plaintiff's claims through personal conversations with Plaintiff and Plaintiff's grievances and letters and yet he refused to investigate or correct the violations.

114. As a direct and proximate result of the acts and omissions of the Defendants described herein, Plaintiffs constitutional rights were violated and Plaintiff suffered physical and mental injury.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff, Ira Alston respectfully demands a jury trial, pursuant to Rule 38 of the Federal Rules of Civil Procedure, and requests for relief as follows:

1. A declaration that each of the Defendants violated. Plaintiffs Constitutional rights;
2. Issue an injunction ordering Defendants Cahill, Strozier, Diaz, Moyer, Donovan, Salius, Light, Rodriguez and Vasquez or their agents to;
    a. Immediately arrange for the plaintiff's left hand to be examined by a qualified physician at the UCONN health center with expertise and treatment;
    b. Immediately arrange for the plaintiff's need for physical therapy or other follow up medical treatment to be evaluated by a medical practitioner with expertise and function of plaintiff's left hand;
    c. Carry out without delay the treatment directed by such medical practitioner;
    d. Release the plaintiff from the unlawful restraint of administrative segregation placement.
3. Issue and injunction ordering all defendants to;
    a. Stay away from the plaintiff during the time of his incarceration;
    b. Order the Department of Corrections to take necessary measures regarding all defendants misconduct and violation of plaintiff's rights.
4. Compensatory damages;
5. Punitive damages;
6. Award Plaintiff such additional relief as may be deemed appropriate pursuant to Fed. Rule 54(d).
7. Award Attorney's fees pursuant to 42 USC Sect 1988.
8. Award any other relief, legal and equitable, as the Court deems appropriate.

Dated: June 3, 2008         PLAINTIFF, IRA ALSTON
                            BY _____
                            Frank P. Cannatelli, Esq.
                            2980 Whitney Ave., 2nd Floor
                            Hamden, CT 06518
                            Phone:  203-287-1207
                            Fax:  203-287-1012
                            Fed. # 04394

**CERTIFICATE OF SERVICE**

I hereby certify that on June 3, 2008, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's System.

Also, I hereby certify that a copy of the foregoing was mailed to the following on June 3, 2008:

Ira Alston, Inmate #275666
Northern Correctional Institution
287 Bilton Road, PO Box 665
Somers, CT 06071

Richard Biggar, Esq.
Attorney General's Office
110 Sherman Street
Hartford, Connecticut 06106

_____
Frank P. Cannatelli, Esq.
Commissioner of the Superior Court