UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| IRA ALSTON, | : | CIVIL ACTION NO.: |
| | : | 3:07 CV 00473 (RNC) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| JASON CAHILL, ET AL. | : | |
| | : | |
| Defendants. | : | OCTOBER 25, 2010 |

**JOINT TRIAL MEMORANDUM**

1.     **TRIAL COUNSEL**

    A.     **Plaintiff's Counsel**

        Thomas J. Finn
        Federal Bar No.: ct 20929
        tjf@jordenusa.com
        Paula Cruz Cedillo
        Federal Bar No.:  ct 23485
        pcc@jordenusa.com
        Liam S. Burke
        Federal Bar No.: ct 27739
        lsb@jordenusa.com
        Jorden Burt LLP
        175 Powder Forest Drive, Suite 301
        Simsbury, Connecticut 06089
        Tel.: (860) 392-5000

    B.     **Defendants' Counsel**

        Richard T. Biggar
        Federal Bar No.:  ct 05228
        richard.biggar@ct.gov
        Steven R. Strom
        Federal Bar No.: ct 01211
        steven.strom@ct.gov
        Attorney General's Office
        MacKenzie Hall, 110 Sherman Street
        Hartford, Connecticut 06105
        Tel.: (860) 808-5450

2.     **JURISDICTION**

The Court has jurisdiction pursuant to 42 U.S.C. §§ 1331(a), 1343, and 1983.  The Court

has supplemental jurisdiction over the plaintiff, Ira Alston's ("Plaintiff") state court tort claims

under 28 U.S.C. § 1367.  Venue is appropriate in the District of Connecticut pursuant to 28

U.S.C. § 1391(b) because the events giving rise to Plaintiff's claims occurred in Connecticut.

3.     **JURY TRIAL**

This matter is to be tried to a jury.

4.     **NATURE OF CASE**

This is a civil rights action by a prisoner seeking monetary damages under 42 U.S.C. §§

1983 and 1988.  Plaintiff alleges that he was subjected to excessive force, denied necessary

medical care, unlawfully placed into punitive and administrative segregation while incarcerated

at Northern Correctional Institution, and unfairly and unlawfully retaliated against in violation of

his First, Eighth, and Fourteenth Amendment Rights.  Plaintiff also claims a state law cause

action for assault and battery.  Declaratory and injunctive relief and punitive damages are also

sought.

Defendants claim that plaintiff, a violent assaultive prisoner, attacked a correction officer

by punching him, and when another officer came to assist, plaintiff placed the officer in a

headlock after punching the second officer in the head.  Defendants claim that at all times force

was authorized, reasonable and appropriate under the circumstances.

5.     **STIPULATIONS OF FACT AND LAW**

A.     **Stipulation of Facts:**

1.     In November 2006, Plaintiff was an inmate at Northern Correctional Institution.

2.      In November 2006, Defendants were employees and/or officials of the State of Connecticut Department of Corrections.

3.      On the morning of November 12, 2006, Defendant Diaz escorted Plaintiff's cellmate at the time, Mr. Anthony Nugent, back to Plaintiff's cell after having received a haircut.

**6.      PLAINTIFF'S CONTENTIONS**

On or about November 4, 2006, while cleaning his cell, Plaintiff requested additional cleaning supplies from Defendant Diaz.  Defendant Diaz threatened Plaintiff with abusive language when Plaintiff complained about the fact that Defendant Diaz had thrown the additional cleaning supplies into Plaintiff's cell.  On or about November 10, 2006, Plaintiff was denied recreation as a result of the verbal altercation between Plaintiff and Defendant Diaz, and Defendant Diaz and Defendant Strozier continued to threaten Plaintiff.

Subsequently, on the morning of November 12, 2006, Defendant Diaz and Defendant Strozier escorted Plaintiff's cellmate at the time, Mr. Anthony Nugent, back to Plaintiff's cell after having received a haircut.  No other inmates had been similarly escorted back to their respective cells.  Upon reaching Plaintiff's cell, Defendant Strozier rushed in the cell unprovoked and assaulted Plaintiff, followed by Defendant Diaz.  Defendants attacked Plaintiff, brought him to the ground, then handcuffed him behind his back.  In doing so, Defendant Diaz severely bent Plaintiff's wrist back towards his forearm and placed the handcuffs on unreasonably tight, causing Plaintiff extreme pain.  Upon being handcuffed and lying on the floor on his stomach, Defendant Strozier and Defendant Diaz continued to beat Plaintiff.  Only then did Defendant Strozier and Defendant Diaz summon additional correctional officers for assistance, falsely claiming that Plaintiff had attacked them.  Upon arriving at Plaintiff's cell, additional Defendants

3

continued to beat Plaintiff until Defendant Vasquez returned with a video camera to document the incident.

Plaintiff was improperly placed in in-cell restraints for an unreasonable and extended period of time for purely punitive reasons as a result of the incident. Also, Plaintiff's complaints of extreme pain and numbness in his wrist and hand as well the unduly tight handcuffs were ignored. Plaintiff was also placed on administrative segregation without basis or a proper hearing. Plaintiff further claims that he was and continues to be subjected to harassment, bullying, and threats by Defendants after filing complaints regarding the incident of November 12, 2006, and commencing this action. Plaintiff claims that Defendants acted in violation of the First, Eighth, and Fourteenth Amendments by unlawfully placing him in punitive and administrative segregation, denying him medical care, and acting in a retaliatory fashion.

## 7.     **DEFENDANTS' CONTENTIONS**

On November 12, 2006, when the cell door to 2E- #223 cell opened plaintiff stepped out of the cell on to the tier, which can be seen in the Northern CI security video provided to plaintiff's counsel. Plaintiff exited the cell, stepped into C/O Strozier's personal space, with clenched fists in an aggressive posture. This posed an immediate threat to both C/O Strozier and the safety of the housing unit. C/O Strozier instantly gave plaintiff a direct order to step back into the cell. C/O Strozier quickly pushed plaintiff back into the cell using open hands on the upper body area of plaintiff in an effort to be able to close the cell door to secure both the plaintiff and the safety of the housing unit. Plaintiff instantly began swinging his clenched fists striking C/O Strozier on the back of the head. When C/O Diaz attempted to come to the aid of C/O Strozier who was being violently assaulted by plaintiff, C/O Diaz was punched by plaintiff and then placed in a headlock, with plaintiff placing his arm around c/o Diaz's neck. In an effort

4

to get out of the headlock from plaintiff, C/O Diaz struggled to get free and the three people in the cell, C/O Strozier, C/O Diaz and the plaintiff, fell to the floor and C/O Diaz was able to break free and place plaintiff in handcuffs and call a code orange over his radio. Staff responded and upon entering the cell plaintiff was resisting and making threats, to all staff. The plaintiff stated, "I'm going to kill everyone." Plaintiff was escorted to medical for a medical examination and assessed by nursing staff who noted superficial abrasions. Nursing staff checked the application of restraints and noted on the Medical Incident Report "Ample Space to All Restraints."

Plaintiff was placed on in-cell restraint status to mange his violent behavior and to get him to calm down. Nursing staff periodically checked the restraints and found ample space at all relevant times, as well as normal physical exams, no injury noted to the wrist, good radial pulses, and all exams within normal limits.

## 8.    **LEGAL ISSUES**

### A.    **Plaintiff:**

1.    Whether Defendants' actions violated Plaintiff's civil rights pursuant to 42 U.S.C. § 1983.

2.    Whether Defendants' use of force was excessive, unreasonable, and/or unwarranted.

3.    Whether Plaintiff's constitutional rights were violated by being placed in punitive and administrative segregation.

4.    Whether Plaintiff's constitutional rights were violated by being denied necessary medical care.

5.    Whether Defendants' actions were the proximate cause of Plaintiff's injuries and resulting damages.

**B.    Defendants:**

1.      Whether the force that was used was used in a good faith effort to restore order and discipline, or maliciously and sadistically for the very purpose of causing harm?  Whitley v. Albers, 475 U.S. 312 (1986); Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.) (Friendly, J.), cert. denied sub nom. John v. Johnson, 414 U.S. 1033 (1973).

2.      Did the plaintiff prove by a preponderance of the evidence (1) that the medical condition alleged is "objectively sufficiently serious" such that the plaintiff was denied "the minimal civilized measure of life's necessities," and (2) that the defendant official was deliberately indifferent and possessed a "sufficiently culpable state of mind" associated with "the unnecessary and wanton infliction of pain." See Trammel v. Keane,  338 F.3d 1555 (2d Cir. 2003).[1]

3.      Whether plaintiff proved by a preponderance of the evidence, assuming there was a liberty interest in avoiding administrative segregation classification, that he was not provided "some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation." Hewitt v. Helms, 459 U.S. 460, 476, 74 L. Ed. 2d 675, 103 S. Ct. 864 (1983); accord Rodriguez v. Phillips, 66 F.3d 470, 480 (2d Cir. 1995). Taylor v. Rodriguez, 238 F.3d 188, 192 (2d Cir. 2001).

4.      Defendants object to any and all claims as to alleged  "retaliation." Plaintiff had to be restrained to prevent even more serious injuries from being caused to Officers Strozier and Diaz There is no evidence that anyone acted in "retaliation" for plaintiff having filed a grievance.

---

[1] "[A] prisoner's disagreement with his prescribed treatment does not afford a basis for relief under §1983." Tomarkin v. Ward, 534  F. Supp. 1224, 1230 (S.D.N.Y. 1982).  See Grimes v. Chernovetz, Civ. No. B-90-436 (WWE), 1991 U.S. Dist. LEXIS 14798 (D.Conn. 1991). Prisoners have no right to the medical treatment of their choice. See United States ex rel. Hyde v. McGinnis, 429 F.2d 864, 866 (2d Cir. 1970) (a prisoner's disagreement over doctor's judgment does not state a claim under §1983).

Further, there is no evidence that the DOC investigation into plaintiff's allegations of excessive force were in any way influenced by the fact that plaintiff had filed a lawsuit. In Dawes v. Walker, 239 F.3d 489 (2d Cir. 2001), the Second Circuit noted that courts must approach prisoner claims of retaliation with skepticism and particular care. See Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983). Thus, the question is whether any such charge of retaliation should be given to the jury at all, where, as here, there is no evidence to suggest that defendants had any prior knowledge of plaintiff's prior lawsuit, and where, as here, they had to react instantaneously to an unprovoked assault on staff by the plaintiff. The question, if given, would be whether plaintiff proved by a preponderance of the evidence that a substantial motivating factor in the use of force was to retaliate against the plaintiff for filing a lawsuit, rather than acting in response to plaintiff's assault on staff, in a good faith effort to restore order and discipline?

     5.     Defendants claim they are entitled to qualified immunity.

**9.**    <u>**VOIR DIRE QUESTIONS**</u>

     <u>See</u> Attachment A.

**10.**    <u>**WITNESSES**</u>

     <u>See</u> Attachment B.

**11.**    <u>**EXHIBITS**</u>

     <u>See</u> Attachment C.

**12.**    <u>**DEPOSITION TESTIMONY**</u>

     The parties will not use deposition testimony at trial given that no depositions were taken in this case.

**13.**    <u>**JURY INSTRUCTIONS**</u>

<u>See</u> Attachment D.  The Parties reserve the right to supplement their jury intructions

based on the Court's pretrial ruling at the time of the pretrial conference.

## 14.   <u>ANTICIPATED EVIDENTIARY PROBLEMS</u>

The parties anticipate there may be potential evidentiary problems concerning witnesses

and exhibits.  <u>See</u> Attachments B and C.  The parties anticipate filing motions *in limine* within

fourteen days of the filing hereof.

## 15.   <u>VERDICT FORM</u>

<u>See</u> Attachment E.

## 16.   <u>TRIAL TIME</u>

The parties anticipate that the trial will take approximately 6 to 8 days.

## 17.   <u>FURTHER PROCEEDINGS</u>

The parties do not anticipate any further proceedings at this time.

## 18.   <u>ELECTION FOR TRIAL BY MAGISTRATE JUDGE</u>

The parties have not consented to a trial by a magistrate judge.


The undersigned counsel certify that the foregoing Joint Trial Memorandum is the

product of consultation between the lawyers who will be trying the case.

Dated: October 25, 2010                    RESPECTFULLY SUBMITTED,

                                           THE PLAINTIFF,
                                           IRA ALSTON


                                  By: /s/ Thomas J. Finn
                                       Thomas J. Finn
                                       Federal Bar No.: ct 20929
                                       tjf@jordenusa.com
                                       Paula Cruz Cedillo
                                       Federal Bar No.: ct 23485
                                       pcc@jordenusa.com
                                       Liam S. Burke
                                       Federal Bar No.: ct 27739
                                       lsb@jordenusa.com
                                       JORDEN BURT LLP
                                       175 Powder Forest Drive
                                       Suite 301
                                       Simsbury, Connecticut 06089
                                       Tel.: (860) 392-5000
                                       Fax: (860) 392-5058



Dated: October 25, 2010                    RESPECTFULLY SUBMITTED,

                                           THE DEFENDANTS,


                                  By: /s/ Steven R. Strom
                                       Richard T. Biggar
                                       Federal Bar No.: ct 05228
                                       richard.biggar@ct.gov
                                       Steven R. Strom
                                       Federal Bar No.: ct 01211
                                       steven.strom@ct.gov
                                       Attorney General's Office
                                       MacKenzie Hall, 110 Sherman Street
                                       Hartford, Connecticut 06105
                                       Tel.: (860) 808-5450
                                       Fax: (860) 808-5591


233613

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| IRA ALSTON, | : | CIVIL ACTION NO.: |
| | : | 3:07 CV 00473 (RNC) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| JASON CAHILL, ET AL. | : | |
| | : | |
| Defendants. | : | OCTOBER 25, 2010 |

**ATTACHMENT  A**

**PLAINTIFF'S PROPOSED VOIR DIRE QUESTIONS**

1.      This is a lawsuit for civil rights violations brought by a prison inmate against Department of Corrections Officers.  Is there any reason why you would have difficulty being completely neutral and fair in deciding this case if you are chosen to serve on the jury?

2.      This case concerns allegations of use of force and violence in violation of a prisoner's constitutional rights.  Is there anyone here who would have difficulty sitting on a jury concerning a case of this kind?

3.      Does anyone here feel for any reason that prison inmates who believe they have been treated illegally and unfairly should not bring suit against prison officials?  If so, please explain.

4.      Have you or anyone close to you ever been employed as a policeman, correctional officer, or by any law enforcement agency in any capacity?  If so, please explain.

5.      Have you or anyone close to you ever been employed by any municipality or state agency in the State of Connecticut?

6.     Has anyone here or anyone close you ever been employed by any other Governmental unit in the State of Connecticut or elsewhere?

7.     Do you know or have you read anything involved in this case?

8.     Has anyone here ever served as an appointed or elected official of state, city, or local Government?

9.     has anyone here or anyone close to you ever been involved in any political campaigns or elections in the State of Connecticut?

10.    Has anyone here or anyone close to you ever been employed as an attorney?

11.    Would you for any reason tend to favor one side or the other in this case or in regard to the evidence which may be presented?

12.    Other things being equal, would you tend to trust or believe the testimony of a prison official more or less than that of a prison inmate merely because the testimony came from a prison official?

13.    Does anyone here have any feeling that the testimony of a prison official is entitled to greater or less weight or believability than that of a prison inmate?

14.    Have you or anyone close to you ever been the victim of a crime?

15.    Does anyone here belong to any club or organization which in any way is interested in the enforcement of the change of any law or laws or which is in any other way concerned with policemen or law enforcement?

16.    Have you or anyone close to you ever been arrested?

17.    Have you ever witnessed an arrest?

18.    Have you or has anyone close to you ever been a party to a lawsuit?  If so, please explain.

## DEFENDANTS' PROPOSED VOIR DIRE QUESTIONS

1.      The Court will instruct you that the plaintiff has the burden of proof by proving his case by a "preponderance of the evidence." Does anyone have any difficulty understanding that term and following the court's instruction in that regard?

2.      The Court will instruct you that plaintiff must prove that the force used in this case was used maliciously and sadistically for the very purpose of causing harm. Does anyone have any difficulty understanding that instruction and following the court's instruction in that regard?

3.      The Court will instruct you on the law which you are about to apply to the facts as you find them.   One of these instructions will be that the plaintiff must prove more than negligence—that is, that the defendants, with the requisite culpable state of mind were deliberately indifferent to a serious medical need?   Does anyone believe that they will have trouble accepting and following that instruction?

4.      Have you, or has any member of your family, ever filed a formal or informal complaint against a police officer?   Against a correction officer?   If so, please describe the circumstances surrounding the complaint and the outcome thereof.

5.      Have you, or has any member of your family ever felt that your or their constitutional rights were violated by a police officer or a correction officer?   If so, please explain the circumstances.

6.      Have you ever been in a prison or jail for any reason?  Why, when, where?

7.      Have you ever been arrested?    Held in jail?    Visited someone in jail? Corresponded with someone in jail?  If so, do you feel that this fact would influence your ability to render an impartial verdict in this case?

8.     Have you, or has any member of your family ever been employed as a law enforcement official? If so, please explain in what capacity and what the circumstances were, if any, which led to the termination of that employment.

9.     Do you believe that, in general, correction officers have a tendency to abuse their authority for no good reason?

10.    Do you or does anyone you know work for the State of Connecticut? If so, who? In what capacity?

11.    Do you feel that the State's prison officials routinely subject prisoners to inhumane treatment or excessive punishment?

12.    Have you or has any member of your family ever been sued by the State of Connecticut or any other governmental agency?

13.    Have you or has any member of your family ever brought suit against the State of Connecticut or any other governmental agency?

14.    Have you, or has any member of your family, ever been involved in what you consider to be a negative or unpleasant experience with the Department of Correction or any employee of the Department of Correction? If so, explain.

15.    Have any of you heard or read anything about the Department of Correction or its employees which would in any way interfere with your ability to be objective and impartial in this case?

16.    Are you now or were you ever in the position of supervising others in an employment context?

17.     Did you ever participate in any fashion in a civil lawsuit -- as a plaintiff, a defendant or a witness? [what were the details, including, how did you feel about the process, did you feel the monetary award, if any, was fair?]

18.     Do you feel that if a prisoner has been provided an attorney by the court, or if the plaintiff is proceeding pro se and sued someone that the person sued must have done something wrong?

19.     Do you feel that if plaintiff has been given a lawyer that there must be some merit or value in plaintiff's case?

20.     Is there any reason that you could not give your full attention to this trial?

21.     Do you have any particular feeling about prisoner lawsuits?

22.     Do you have any particular feelings about prisoners generally?

23.     Do you have any feeling about law enforcement personnel, police officers or correction officers?

24.     Do you have any view about the University of Connecticut Health Center (UCHC) or Correctional Managed Health Care (CMHC) or about prison doctors and nurses that would lead you to believe that they are less than competent or that they are unable to provide appropriate and adequate care?

25.     Have you ever had a complaint about a health care professional? Have you been involved in any medical issues involving neck, back, shoulder or hand pain? Would you be able to put aside your own experiences and judge this case solely on the evidence and without any previously held ideas or notions about what is or is not appropriate treatment?

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| IRA ALSTON, | : | CIVIL ACTION NO.: |
| | : | 3:07 CV 00473 (RNC) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| JASON CAHILL, ET AL. | : | |
| | : | |
| Defendants. | : | OCTOBER 25, 2010 |

**ATTACHMENT  B**

**WITNESS LIST**

**A.    Plaintiff's Witnesses:**

1.     The plaintiff, Ira Alston, Northern Correctional Facility, 287 Bilton Road, Somers, Connecticut, will testify as to the allegations asserted in the complaint and the circumstances surrounding the incidents at issue.

2.     Anthony Nugent, Corrigan-Radgowski Correctional Facility, 986 Norwich-New London Turnpike, Uncasville, Connecticut, will testify as to the circumstances surrounding the incident at issue.

3.     Steven Gary, Cheshire Correctional Institution, 900 Highland Avenue, Cheshire, Connecticut, will testify as to the harassing behavior and threats made towards Plaintiff by the defendants leading up to the incident at issue.

4.     Angel Calo, Northern Correctional Facility, 287 Bilton Road, Somers, Connecticut, will testify as to the harassing behavior and threats made towards Plaintiff by the defendants leading up to the incident at issue.

5.      Duwayne Marquis Whitehead, Bridgeport Correctional Center, 1106 North

Avenue, Bridgeport, Connecticut, will testify as to the harassing behavior and threats made

towards Plaintiff by the defendants leading up to the incident at issue.

**B.    Defendants' Witnesses:**

1. **Captain Cahill**, Northern CI (NCI), Somers, CT. He will testify as to his observations of plaintiff, plaintiff's conduct at NCI, the need to use force in this case and the reasonableness of defendants' response to plaintiff's attack on C/O Strozier and C/O Diaz. He will testify as to policies and procedures of NCI and DOC as they apply to this case, and his duties and first hand knowledge, as well as the relevant reports and records. He will deny and defend against any and all allegations of wrongdoing.

2. **Correction Officer Diaz**, NCI. He will testify as to his observations of plaintiff, plaintiff's conduct at NCI, the need to use force in this case and the reasonableness of defendants' response to plaintiff's attack on C/O Strozier and him. He will testify as to policies and procedures of NCI and DOC as they apply to this case, and his duties and first hand knowledge, as well as the relevant reports and records. He will deny and defend against any and all allegations of wrongdoing.

3. **Correction Officer Donovan**, NCI. He will testify as to his observations of plaintiff, plaintiff's conduct at NCI, the need to use force in this case and the reasonableness of defendants' response to plaintiff's attack on C/O Strozier and C/O Diaz. He will testify as to policies and procedures of NCI and DOC as they apply to this case, and his duties and first hand knowledge, as well as the relevant reports and records. He will deny and defend against any and all allegations of wrongdoing.

4. **Nancy Hill, RN**; NCI. She will testify as to her observations of plaintiff. She will testify as to policies and procedures of NCI and DOC as they apply to this case, and her duties and first hand knowledge, as well as the relevant reports and records. She will deny and defend against any and all allegations of wrongdoing.

5. **Theresa Lantz**, former Commissioner of Correction; Connecticut Department of Correction, 24 Wolcott Hill Road, Wethersfield. Commissioner Lantz will testify as an expert witness in adult corrections. She will testify as to the need to use force in this case and the reasonableness of the defendants' response to plaintiff's attack on C/O Strozier and the other officers. She will testify as to the correctional policies and procedures at issue in this case, the DOC investigation of plaintiff's allegations of alleged excessive force, the conclusions of that investigation, and her opinion that the plaintiff is an extremely dangerous individual. The Commissioner's expert opinion will be based in part on her observations of the videos, her knowledge of plaintiff, based on a file review, as well as her review of all evidence in connection with this case, together with her experience training and background. The Commissioner will also testify that all proper policies of DOC were followed and that all due process, and other procedural steps were

taken in accord with DOC policies. She will deny and defend against any and all allegations of wrongdoing.

6. **Fred Levesque**, former Director of Classification and Population Management; 24 Wolcott Hill Road, Wethersfield. Director Levesque will testify as an expert witness in inmate classification and population management. He will testify as to plaintiff's classification as an Administrative Segregation inmate and reasons therefore. He will testify as to policies and procedures of NCI and DOC as they apply to this case, and his duties and first hand knowledge, as well as the relevant reports and records. The Director will also testify that all proper policies of DOC were followed and that all due process, and other procedural steps were taken in accord with DOC policies. He will deny and defend against any and all allegations of wrongdoing.

7. **Valerie Light**, Warden, Brooklyn CI; Former Deputy Warden of Northern CI, she will testify as to her duties and responsibilities at Northern CI. She will testify as to plaintiff's classification as an Administrative Segregation inmate and reasons therefore. She will testify as to policies and procedures of NCI and DOC as they apply to this case, and her duties and first hand knowledge, as well as the relevant reports and records. She will deny and defend against any and all allegations of wrongdoing.

8. **Jeffery McGill**, former Warden Northern CI; He will testify about NCI, its role in the DOC, and the kinds of inmates that NCI manages, and the reason for being at NCI. He will testify as to his observations of plaintiff, plaintiff's conduct at NCI, the need to use force in this case and the reasonableness of defendants' response to plaintiff's attack on C/O Strozier and C/O Diaz. He will testify as to policies and procedures of NCI and DOC as they apply to this case, and his duties and first hand knowledge, as well as the relevant reports and records. He will deny and defend against any and all allegations of wrongdoing.

9. **Correction Officer Moyer**; NCI. He will testify as to his observations of plaintiff, plaintiff's conduct at NCI, the need to use force in this case and the reasonableness of defendants' response to plaintiff's attack on C/O Strozier and C/O Diaz. He will testify as to policies and procedures of NCI and DOC as they apply to this case, and his duties and first hand knowledge, as well as the relevant reports and records. He will deny and defend against any and all allegations of wrongdoing.

10. **Deputy Warden Neftali Rodriquez**, MacDougall CI, Suffield, Ct; Deputy Warden Rodriguez will testify as to his duties and responsibilities at NCI during the time of the events at issue in this case. He will testify about NCI, its role in the DOC, and the kinds of inmates that NCI manages, and the reason for being at NCI. He will testify as to his observations of plaintiff, plaintiff's conduct at NCI, the need to use force in this case and the reasonableness of defendants' response to plaintiff's attack on C/O Strozier and C/O Diaz. He will testify as to policies and procedures of NCI and DOC as they apply to this case, and his duties and first hand knowledge, as well as the relevant reports and records. He will deny and defend against any and all allegations of wrongdoing.

11. **Terrence Rose**, former Deputy Warden. Deputy Warden Rose will testify as to his duties and responsibilities at NCI during the time of the events at issue in this case. He will testify about NCI, its role in the DOC, and the kinds of inmates that NCI manages, and the reason for being at NCI. He will testify as to his observations of plaintiff, plaintiff's conduct at NCI, the need to use force in this case and the reasonableness of defendants' response to plaintiff's attack on C/O Strozier and C/O Diaz. He will testify as to policies and procedures of NCI and DOC as they apply to this case, and his duties and first hand knowledge, as well as the relevant reports and records. He will deny and defend against any and all allegations of wrongdoing.

12. **Captain Scott Salius**, Northern CI (NCI), Somers, CT. He will testify as to his observations of plaintiff, plaintiff's conduct at NCI, the need to use force in this case and the reasonableness of defendants' response to plaintiff's attack on C/O Strozier and C/O Diaz. He will testify as to policies and procedures of NCI and DOC as they apply to this case, and his duties and first hand knowledge, as well as the relevant reports and records. He will deny and defend against any and all allegations of wrongdoing.

13. **Wendy Sanders, RN**; NCI. She will testify as to her observations of plaintiff. She will testify as to policies and procedures of NCI and DOC as they apply to this case, and her duties and first hand knowledge, as well as the relevant reports and records. She will deny and defend against any and all allegations of wrongdoing.

14. **Barbara Savoie, RN;** ; NCI. She will testify as to her observations of plaintiff. She will testify as to policies and procedures of NCI and DOC as they apply to this case, and her duties and first hand knowledge, as well as the relevant reports and records. She will deny and defend against any and all allegations of wrongdoing.

15. **Lt. Saylor** , Northern CI (NCI), Somers, CT. He will testify as to his observations of plaintiff, plaintiff's conduct at NCI, the need to use force in this case and the reasonableness of defendants' response to plaintiff's attack on C/O Strozier and C/O Diaz. He will testify as to policies and procedures of NCI and DOC as they apply to this case, and his duties and first hand knowledge, as well as the relevant reports and records. He will deny and defend against any and all allegations of wrongdoing.

16. **Correction Officer Strozier**, , Northern CI (NCI), Somers, CT. He will testify as to his observations of plaintiff, plaintiff's conduct at NCI, the need to use force in this case and the reasonableness of defendants' response to plaintiff's attack on himself and C/O Diaz. He will testify as to policies and procedures of NCI and DOC as they apply to this case, and his duties and first hand knowledge, as well as the relevant reports and records. He will deny and defend against any and all allegations of wrongdoing.

17. **C/O Vazquez;** NCI. He will testify as to his observations of plaintiff, plaintiff's conduct at NCI, the need to use force in this case and the reasonableness of defendants' response to plaintiff's attack on C/O Strozier and C/O Diaz. He will testify as to policies and procedures of NCI and DOC as they apply to this case, and his duties and first hand

knowledge, as well as the relevant reports and records. He will deny and defend against any and all allegations of wrongdoing.

18. **Dr. Carson Wright** NCI. He will testify as to his observations of plaintiff, plaintiff's conduct at NCI, the medical incident reports and examination of plaintiff after the response to plaintiff's attack on C/O Strozier and C/O Diaz. He will testify as to policies and procedures of NCI and DOC as they apply to this case, and his duties and first hand knowledge, as well as the relevant reports and records. He will testify as both an expert and treating physician and will opine that plaintiff's subjective complaints of pain were not supported or corroborated by any objective findings. He will deny and defend against any and all allegations of wrongdoing.

## Defendants' Additional Witnesses

19. **Dr. Edward A. Blanchette**, DOC, 24 Wolcott Hill Rd., Wethersfield, CT. He will testify as to his observations of plaintiff, plaintiff's conduct at NCI, the medical incident reports and examination of plaintiff after the response to plaintiff's attack on C/O Strozier and C/O Diaz. He will testify as to policies and procedures of NCI and DOC as they apply to this case, and his duties and first hand knowledge, as well as the relevant reports and records. He will testify as an expert physician, and expert in correctional medicine and will opine that plaintiff's subjective complaints of pain were not supported or corroborated by any objective findings. He will base his testimony on his review of the videos, plaintiff's records and his knowledge of DOC, NCI, his training and experience. He will deny and defend against any and all allegations of wrongdoing.

20. **Dr. Suzanne Ducate**, DOC, 24 Wolcott Hill Rd., Wethersfield, CT. Dr Ducate will testify as to her observations of plaintiff, plaintiff's conduct at NCI, the medical incident reports and examination of plaintiff after the response to plaintiff's attack on C/O Strozier and C/O Diaz. She will testify as to policies and procedures of NCI and DOC as they apply to this case, and her duties and first hand knowledge, as well as the relevant reports and records. She will testify as an expert physician, forensic psychiatrist and expert in correctional medicine, and mental health care and will opine that plaintiff's subjective complaints of pain were not supported or corroborated by any objective findings. She will testify as to the correctional and mental health reasons and objectives of the policies and procedures at issue in this case. She will base her testimony on her review of the videos, plaintiff's records and her knowledge of DOC, NCI, her training and experience. She will deny and defend against any and all allegations of wrongdoing.

21. **Stephen Clapp**, Counselor Supervisor, Bergin CI; Mr. Clapp will testify as both an expert and fact witness in inmate classification and population management. He will testify as to plaintiff's classification as an Administrative Segregation inmate and reasons therefore. He will testify as to policies and procedures of NCI and DOC as they apply to this case, and his duties and first hand knowledge, as well as the relevant reports and records. Mr. Clapp will also testify that all proper policies of DOC were followed and that all due process, and other procedural steps were taken in accord with DOC policies. He will deny and defend against any and all allegations of wrongdoing.

22. **John Aldi**, Counselor Supervisor; DOC, 24 Wolcott Hill Rd., Wethersfield, CT. Mr. Aldi will testify as an expert witness in inmate classification and SRG and SRGTM management. He will testify as to plaintiff's classification as an Administrative Segregation and SRG inmate and reasons therefore. He will testify as to policies and procedures of NCI and DOC as they apply to this case, and his duties and first hand knowledge, as well as the relevant reports and records. He will also testify that all proper policies of DOC were followed and that all due process, and other procedural steps were taken in accord with DOC policies. He will deny and defend against any and all allegations of wrongdoing.

23. **Wayne Choinski**, former District Administrator; 24 Wolcott Hill Rd. Wethersfield, CT. will testify as to his duties and responsibilities at NCI and the North District office during the time of the events at issue in this case. He will testify as an expert witness in adult corrections, about NCI, its role in the DOC, and the kinds of inmates that NCI manages, and the reason for being at NCI. He will testify as to his observations of plaintiff, plaintiff's conduct at NCI, the need to use force in this case and the reasonableness of defendants' response to plaintiff's attack on C/O Strozier and C/O Diaz. He will testify as to policies and procedures of NCI and DOC as they apply to this case, and his duties and first hand knowledge, as well as the relevant reports and records. His expert opinion will be based in part on his observations of the videos, her knowledge of plaintiff, based on a file review, as well as his review of all evidence in connection with this case, together with his experience training and background. He will also testify that all proper policies of DOC were followed and that all due process, and other procedural steps were taken in accord with DOC policies. He will deny and defend against any and all allegations of wrongdoing.

24. **Brian Murphy**, former Commissioner of Correction, 24 Wolcott Hill Rd. Wethersfield, CT. He will testify as to his duties and responsibilities at DOC central office during the time of the events at issue in this case. He will testify as an expert witness in adult corrections, about NCI, its role in the DOC, and the kinds of inmates that NCI manages, and the reason for being at NCI. He will testify as to his observations of plaintiff, plaintiff's conduct at NCI, the need to use force in this case and the reasonableness of defendants' response to plaintiff's attack on C/O Strozier and C/O Diaz. He will testify as to policies and procedures of NCI and DOC as they apply to this case, and his duties and first hand knowledge, as well as the relevant reports and records. His expert opinion will be based in part on his observations of the videos, his knowledge of plaintiff, based on a file review, as well as his review of all evidence in connection with this case, together with her experience training and background. He will also testify that all proper policies of DOC were followed and that all due process, and other procedural steps were taken in accord with DOC policies. He will deny and defend against any and all allegations of wrongdoing.

25. **James Dzurenda**, Deputy Commissioner; Deputy Commissioner of Correction, 24 Wolcott Hill Rd. Wethersfield, CT. He will testify as to his duties and responsibilities at

DOC central office. He will testify as an expert witness in adult corrections, about NCI, its role in the DOC, and the kinds of inmates that NCI manages, and the reason for being at NCI. He will testify as to his observations of plaintiff, plaintiff's conduct at NCI, the need to use force in this case and the reasonableness of defendants' response to plaintiff's attack on C/O Strozier and C/O Diaz. He will testify as to policies and procedures of NCI and DOC as they apply to this case, and his duties and first hand knowledge, as well as the relevant reports and records. His expert opinion will be based in part on his observations of the videos, his knowledge of plaintiff, based on a file review, as well as his review of all evidence in connection with this case, together with her experience training and background. He will also testify that all proper policies of DOC were followed and that all due process, and other procedural steps were taken in accord with DOC policies. He will deny and defend against any and all allegations of wrongdoing.

26. **Leo Arnone**, Commissioner of Correction, 24 Wolcott Hill Rd. Wethersfield, CT. He will testify as to his duties and responsibilities at DOC central office. He will testify as an expert witness in adult corrections, about NCI, its role in the DOC, and the kinds of inmates that NCI manages, and the reason for being at NCI. He will testify as to his observations of plaintiff, plaintiff's conduct at NCI, the need to use force in this case and the reasonableness of defendants' response to plaintiff's attack on C/O Strozier and C/O Diaz. He will testify as to policies and procedures of NCI and DOC as they apply to this case, and his duties and first hand knowledge, as well as the relevant reports and records. His expert opinion will be based in part on his observations of the videos, his knowledge of plaintiff, based on a file review, as well as his review of all evidence in connection with this case, together with her experience training and background. He will also testify that all proper policies of DOC were followed and that all due process, and other procedural steps were taken in accord with DOC policies. He will deny and defend against any and all allegations of wrongdoing.

27. **Mary Jane Steele**, Records Specialist II, or designee from records; MacDougall Walker CI, Suffield, CT. She will testify as to policies and procedures of DOC as they apply to this case, and her duties and knowledge of plaintiff's inmate file and computerized records, as well as the relevant reports and records. She will deny and defend against any and all allegations of wrongdoing.

28. **Captain Marinelli** – Northern CI. Captain Marinelli will testify as to his duties on 11-12-06 and 11-13-06, and as to his observations of plaintiff, the in-cell restraints and check sheets, and the continuing threats being made by plaintiff. He will testify as to his incident report and the need to protect the safety of staff and the facility by the continued application of in-cell restraints. He will also testify that all proper policies of DOC were followed and that all due process, and other procedural steps were taken in accord with DOC policies. He will deny and defend against any and all allegations of wrongdoing.

29. **Captain Butkiewicus -** Northern CI. Captain Butkiewicus will testify as to his duties on 11-12-06 through 11-14-06, and as to his observations of plaintiff, the in-cell restraints and check sheets, and the continuing threats being made by plaintiff. He will testify as to

his incident report and the need to protect the safety of staff and the facility by the continued application of in-cell restraints. He will also testify that all proper policies of DOC were followed and that all due process, and other procedural steps were taken in accord with DOC policies. He will deny and defend against any and all allegations of wrongdoing.

30. **Sgt. Seth Mancini or Trooper Russell Longo,** will testify as to his duties on 11-12-06 through 3-1-07, and as to his affidavit for the arrest of plaintiff for assault on DOC personnel by plaintiff, the CSP report and application for a warrant. He will testify as to his investigation and report. He will testify as to the plaintiff's statement admitting that he assaulted staff by punching them and that plaintiff admitted he had C/O Diaz in a headlock.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| IRA ALSTON, | : | CIVIL ACTION NO.: |
| | : | 3:07 CV 00473 (RNC) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| JASON CAHILL, ET AL. | : | |
| | : | |
| Defendants. | : | OCTOBER 25, 2010 |

**ATTACHMENT  C**

**EXHIBIT LIST**

**A.**    **Plaintiff's Exhibits:**

1.    Portions of Plaintiff's health record.

2.    Department of Correction Administrative Directives.

3.    Department of Corrections videotapes concerning the events alleged in the Complaint.

4.    Department of Corrections photographs concerning the events alleged in the Complaint.

5.    State of Connecticut, Department of Public Safety Investigation Report package, dated February 3, 2006.

6.    Incident Report Package, dated November 12, 2006.

7.      State of Connecticut, Department of Public Safety, Division of State Police statement of Ira Alston.

8.      State of Connecticut, Department of Public Safety, Division of State Police statement of Miguel A. Diaz.

9.      State of Connecticut, Department of Public Safety, Division of State Police statement of Wilbur L. Strozier.

10.      Portions of Plaintiff's Inmate Master File relating to the allegations set forth in the Complaint.

11.      Portions of Plaintiff's Administrative Segregation File relating to the allegations set forth in the Complaint.

12.      Records of Administrative Segregation Hearings since the date of the incident giving rise to the Complaint, including but not limited to, the hearing held on February 13, 2007.

13.      Restrictive Status Report of Hearing for Placement or Removal, dated February 13, 2007.

14.      Connecticut Department of Correction Reclassification Form, dated February 15, 2007.

15.      State of Connecticut, Department of Correction, Classification Review Sheets relating to the allegations set forth in the Complaint.

16.      Connecticut Department of Correction Reclassification Form, dated March 27, 2007.

17.      University of Connecticut Health Center Consultation Form, dated April 13, 2007.

18.     Inmate Grievances filed by Plaintiff relating to the allegations set forth in the Complaint.

19.     Inmate Request Forms filed by Plaintiff relating to the allegations set forth in the Complaint.

20.     Inmate Administrative Remedy Forms relating to the allegations set forth in the Complaint.

21.     Correspondences between and among Plaintiff and Department of Corrections officials relating to the allegations set forth in the Complaint.

22.     Letter from Wayne Choinski to Ira Alston, dated July 22, 2007.

23.     Letter from Brian Murphy to Ira Alston, dated July 26, 2007.

24.     Letter from Ira Alston to Brian Murphy, dated August 6, 2007.

25.     Letter from David Strange to Ira Alston, dated September 6, 2007.

26.     Letter from Ira Alston to Theresa Lantz, dated September 9, 2007.

27.     Letter from Fred Levesque to Ira Alston, dated September 28, 2007.

28.     Request for Removal from Administrative Segregation Program, dated October 8, 2007.

29.     Response to Inmate Request, dated October 16, 2007.

30.     Appeal to Denial of Phase Progression, dated November 25, 2007.

31.     Appeal to Administrative Segregation Placement records relating to the allegations set forth in the Complaint, including but not limited to those dated February 23, 2009.

32.     Lost/Damaged Property Investigation Form, dated July 21, 2009.

33.     Alston submission to Facility Classification Committee, dated October 20, 2009.

34.     Inmate Grievance Appeal Forms relating the allegations set forth in the Complaint including but not limited to those dated June 2, 2010.

35.     Records relating to Disciplinary Reports issued against Plaintiff concerning the allegations set forth in the Complaint.

36.     Northern Correctional Institution Administrative Segregation Phase Program Facility Classification Committee Program Review records relating to the allegations set forth in the Complaint.

Plaintiff respectfully reserves the right to submit additional exhibits to rebut Defendants' testimony and/or exhibits and to amend this exhibit list as the parties meet and confer for purposes of stipulating to a list of exhibits.

**B.     Defendants' Exhibits:**

**Defendants respectfully reserve the right to supplement and amend this exhibit list as they meet and confer with plaintiff's counsel, so as to achieve an agreed upon and stipulated list of exhibits.**

1.     Plaintiff's Inmate Master file

2.     Plaintiff's Disciplinary History

3.     Plaintiff's Administrative segregation hearing reports and records

4.     Plaintiff's Medical file

5.     DOC Incident reports related to the dates in question

6.     DOC in-cell check sheets

7.     Medical Incident reports

8.     Plaintiff's Inmate Health record

9.     Plaintiff's criminal conviction record

10.     Plaintiff's mittimuses

11.    DOC Administrative Directives as they relate to this case

12.    DOC videos of the events in question

13.    DOC photos related to the events in this case, and of NCI

14.    State Police Report of 11-12-06 Assault on staff

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| IRA ALSTON, | : | CIVIL ACTION NO.: |
| | : | 3:07 CV 00473 (RNC) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| JASON CAHILL, ET AL. | : | |
| | : | |
| Defendants. | : | OCTOBER 25, 2010 |

**ATTACHMENT  D**

**PLAINTIFF'S PROPOSED JURY INSTRUCTIONS**

**I.**   **General Instructions**

1.      You are not to single out one instruction alone as stating the law, but you must consider the instructions as a whole.[2]

2.      You are not to be concerned with the wisdom of any rule of law.  Regardless of any opinion you may have as to what the law ought to be, it would be a violation of your sworn duty to base a verdict upon any other view of the law than that given in the instructions of the Court; just as it would be a violation of your sworn duty, as judges of the facts, to base a verdict upon anything but the evidence of the case.

3.      It is your duty as a jury, to deliberate on this case and arrive at a decision based upon the evidence and the law.

---

[2] Paragraphs 1-22 and 26-31 are based primarily on jury instructions given by the court in the case of Coleman v. Siedel, 533 F. Supp. 593 (D. Conn. 1980).  Authority for remaining paragraphs appears as footnotes to each paragraph or was utilized by the court in Weber v. Perez, Civ. No. B-90-426 (WWE) (D. Conn. Mar. 1995).

4.      Nothing I say in these instructions is to be taken as an indication that the Court has any opinion about the facts of the case.  It is not my function to determine the facts, but rather it is yours.

5.      Justice through trial by jury must always depend upon the willingness of each individual juror to seek the truth as to the facts from the same evidence presented to all the jurors; and to arrive at a verdict by applying the same rules of law, as given to you in my instructions.

6.      As the sole judges of the facts, you, the jury, must determine which of the witnesses you believe and what portion of their testimony you accept, and what weight you attach to it.  At times during the trial the court has sustained objections to questions asked without permitting the witness to answer or, where an answer has been made, has instructed that it be stricken from the record and that you disregard it and dismiss it from your minds.

7.      You may not draw inferences from unanswered questions, nor may you consider testimony that has been stricken in reaching your decision.  The law requires that your decision be made solely upon the competent evidence before you.  The items that I have excluded from your consideration have been excluded because they are not legally admissible.

8.      The Court will first direct your attention to certain general principles, which will guide your consideration of the matters which are in litigation, before discussing the specific facts of this case and the law applicable thereto.

9.      You, ladies and gentlemen, are the sole judges of the facts.  You are to find the truth as to the facts and in so doing, to recollect the testimony, and from that recollection of the testimony, including the weighing of that testimony and passing upon the credibility of the witnesses, draw your own conclusions as to what the ultimate facts of the case are.  In so doing,

you are not to be governed by what counsel for either of the parties in their arguments may say the testimony was, or even what the Court might say the evidence in the case was; for if your recollection of the factual evidence is different, it is your recollection that must govern.

10.     If you wish to have the courtroom testimony of any witness repeated or verified, you may request the Court, by a written note from your foreperson, to have that part of any witness' testimony read back to you by the court reporter.

11.     In weighing the evidence, you are allowed to draw logical inferences from facts which you find to have been proved; but you must not go outside the evidence to find the facts, or resort to guesswork or conjecture.

12.     You should accept the law as stated by the Court in this charge; and you should do this without regard to any claims as to the law, which may have been made by counsel for either side during the trial or during the summation arguments; also without regard to any personal convictions you may have yourself as to what the law ought to be, as it applies to the kind of case that has been presented before you.

13.     When you retire to the jury room, for your deliberations, you will have with you the pleadings, which consist of the plaintiffs complaint and the defendants' answer.

14.     The rights of the parties, whether the plaintiffs or the defendants', are to be determined within the framework of the statements they have set out in these papers, the pleadings.

**Multiple Defendants:**

15.     In his complaint, the plaintiff alleges various acts or omissions with regard to each of the defendants.  The plaintiff has the burden of proving by a fair preponderance of the evidence with regard to each defendant that the individual defendant against whom these acts or

omissions are alleged did in fact engage in such conduct and that these acts or failure to act violated the plaintiff's rights as alleged in the complaint and were the proximate cause of the plaintiff's injury.

16.     There are numerous defendants in this action and although the claims against each are being tried in one case for the convenience of everyone, you must remember that each defendant is being sued individually and is responsible only for his own acts.

17.     You must therefore consider the plaintiff's allegations against each of the defendants and decide whether the plaintiff has proven by a fair preponderance of the evidence that the individual defendant has committed the acts or omissions which the plaintiff has alleged and that this was the proximate cause of the plaintiff's injury.  By the term "proximate cause" I mean whether or not the individual conduct of the defendants as you find it was a substantial factor in causing the plaintiff's injury.

**Burden of Proof:**

18.     Before you can find for the plaintiff against any of the defendants, you must find that the plaintiff has carried his burden of proof by proving his allegations against the defendants by a fair preponderance of the evidence.

19.     A fair preponderance of the evidence means that the plaintiff has the burden of proving by the better evidence, the weightier evidence, that the proposition or propositions which he advances are true.  Of course, you cannot literally weigh evidence on an imaginary pair of scales, although we use that term.  But, if you could weigh evidence on an imaginary pair of scales for, or against a proposition, if it were in balance, that is, equal balance, then the burden that the plaintiff is required to meet would not be met.

20.      If the plaintiff proves by a preponderance of the evidence, meaning that the evidence produced by the plaintiff meets the burden of proof ever so slightly in his favor, then that burden has been met.  If he fails to do so, then you should find for the defendants.  To "establish by a preponderance of the evidence" means to prove that something is more likely so than not so.  In other words, a preponderance of the evidence in the case means such evidence as, when considered and compared with that opposed to it, has more convincing force, and produces in your minds belief that what is sought to be proved is more likely true than not true.  The rule in a civil case does not require that the proof must be beyond a reasonable doubt; that is only the rule in criminal cases.  In civil cases, such as this one, the burden of proof is a preponderance of the evidence.  "Establishing something by a preponderance of the evidence" means that you are convinced that what is claimed to have happened, most likely did so.  It is the plaintiff s burden to produce evidence, if he can, that will convince you that the actions of a defendant as applied to the plaintiff, violated the law.

21.      All of the testimony must be weighed by you, including that which is brought out on cross-examination and that which the plaintiff himself has presented and all the facts admitted in the pleadings and the other evidence in the case, in determining whether or not the plaintiff has established his claims, by a fair preponderance of the evidence.

22.      In this case, in determining whether or not the plaintiff has established and proved by a fair preponderance of the evidence the allegations of his complaint, the Court makes reference to the words "prove" or "find" with reference to the burden which rests upon the plaintiff here.  However, throughout this jury charge you will understand, when I say the plaintiff has to prove a fact to you or that you may find a fact based upon the proof in this case, I mean

that he must prove to you with this degree of proof that I have just defined; that is by a fair preponderance of the evidence, even through I simply use the word "prove" or the word "find."

**Direct/Circumstantial Evidence:**

23.     The jury may find the facts in a case from two types of evidence. Direct evidence, as in the testimony of an eyewitness or a participant, is evidence given by a person who was there or who saw or heard something. Indirect evidence, often referred to as circumstantial evidence, is the chain of circumstances pointing to the existence or nonexistence of certain facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but it does require that the jury find the facts in accordance with a fair preponderance of all the evidence you find credible in the case, both direct and circumstantial.

24.     The party upon whom rests the burden of proving a fact or issue has sustained that burden if all of the evidence, including both that presented by the plaintiff and that presented by the defendant, considered fairly and impartially, induces in your mind a reasonable belief that it is more probable than otherwise that such fact or issue is true.

25.     In this connection, however, I must caution you that while you may make deductions and draw conclusions from proven facts, you may not draw inferences from other inferences. Likewise, you must not resort to speculation, conjecture, or guesswork in order to determine critical facts in the case. This rule applies to the liability and damages issues in the same manner as it applies to the remainder of the factual issues.

**Witnesses:**

26.     The credibility of witnesses and the weight to be given to their testimony are matters that are to be determined by the jury. However, the testimony of a prison official is entitled to no special or exclusive sanctity. An official who takes the witness stand subjects his

testimony to the same examination and the same tests that any other witness does. People employed by the government, including prison officials, do not stand in any higher station in the community than other persons, and their testimony is not entitled to any greater weight. Wright Havanich, Conn. Jury Instructions § 667 (2d ed. 1993).

27.     In weighing the testimony of a witness you should consider his or her appearance upon the witness stand; you should try to size the witness up; you should have in mind all those little circumstances which point up to his truthfulness or untruthfulness. You should consider any possible bias or prejudice he may have, whether for or against the plaintiff or the defendants; his interest or lack of interest in the case; his ability to observe the facts correctly and to remember and relate them truly and accurately and not exaggerate them.

28.     You should test the evidence the witness gives by your own knowledge of human nature and of the motives which influence and control human action. If any facts are admitted or otherwise proved to you, you may well bring them into relation with the witness' testimony and see if they fit together with it. In short, you are to bring to bear upon such testimony the same conditions and use the same sound judgment you apply to the questions of truth and veracity which are daily presenting themselves for your decision in your everyday life.

29.     The credit that you will give to the testimony offered by the various witnesses is something which you must determine. When a witness testifies inaccurately and you do not think that the inaccuracy was consciously dishonest, you should bear in mind, and scrutinize the whole testimony of that witness. Thus, if you find that there has been inaccuracy in one respect on the part of a witness, remember it in judging the rest of his testimony, and give it that weight which your common sense leads you to think it ought to have, and which you would attach to it in ordinary affairs of life.

30.    If you conclude that a witness has not only testified falsely but that he had done so intentionally or willfully, the fact casts a very serious doubt upon all his testimony, and you might well conclude that you cannot accept any of it.

31.    The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions.  An exception to this rule exists as to "expert witnesses." Expert witnesses are persons who, by education and experience, have become expert in a profession or in some area of art, science or a calling.  Expert witnesses may state an opinion as to relevant and material matter, in which they profess to be expert, and may also state their reasons for the opinion.

## II.    Federal Claims

### Instructions on 42 U.S.C. § 1983

32.    The law to be applied in this case is the federal civil rights law which provides a remedy for individuals (or other entities) who have been deprived of their constitutional (or statutory) rights under color of state law. Section 1983 of Title 42 of the United States Code provides:

"Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction therefore to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ." 42 U.S.C. § 1983; Lugar v. Edmondson Oil Co., 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); Mitchum v. Foster, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972); Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

**Burden of Proof:**

33.     The plaintiff has the burden of proving each and every element of his § 1983

claim by a preponderance of the evidence.  If you find that any one of the elements of the

plaintiff's § 1983 claim has not been proven by a preponderance of the evidence, you must return

a verdict for the defendants.  Gomez v. Toledo, 446 U.S. 635, 100 S.Ct. 1920,64 L.Ed.2d 572

(1980).

34.     The defendants have the burden of proving each element of their affirmative

defenses.  If you find that any one of the elements of the defendants' defenses has not been

proven by a preponderance of the evidence, you must disregard the defense.  Gomez v. Toledo,

446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980).

**Elements of a § 1983 Claim:**

35.     To establish a claim under § 1983, the plaintiff must establish, by a

preponderance of the evidence, each of the following three elements:

First, that the conduct complained of was committed by a person acting under color of

state law.  The phrase "under color of state law" is a reference to the words of § 1983, which

means action that is made possible only because the actor is cloaked in the authority of the state.

It is not disputed in this case that each of the defendants, as employees of the Department of

Corrections, acted under color of state law, so this is not an issue for you to decide.

Second, that the conduct deprived the plaintiff of rights, privileges, or immunities secured

by the Constitution or laws of the United States.  In order to show a deprivation of a federal

right, the plaintiff must show: (1) that a defendant committed the acts alleged by the plaintiff; (2)

that those acts caused the plaintiff to suffer the loss of a federal right; (3) that in performing the

acts alleged, the defendant acted intentionally or recklessly.  All three elements must be proven by a preponderance of the evidence.

Third, that the defendants' acts were the proximate cause of the injuries and consequent damages sustained by the plaintiff. Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

36.     To establish a claim under § 1983, the plaintiff must show that the defendants acted intentionally or recklessly.  An act is intentional if it is done knowingly, meaning if it is done voluntarily and deliberately and not because of mistake, accident, negligence, or other innocent reason.  An act is reckless if it is done in conscious disregard of its known probable consequences.  It is not necessary to find that the defendant had any specific intent to deprive the Plaintiff of his civil rights in order to find in favor of the plaintiff.  The plaintiff is entitled to relief if the defendant intended the actions which resulted in the violation of the plaintiff's rights or if the defendant acted in reckless disregard of the plaintiff's rights.  Reckless disregard of the plaintiffs rights simply means not caring whether or not those rights were being violated.  See, e.g., Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); Davidson v. Cannon, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); Merriwether v. Coughlin, 879 F.2d 1037 (2d Cir. 1989); Bordanaro v. McLeod, 871 F.2d 1151, 1164 (1st Cir. 1989); Stengel v. Belcher, 522 F.2d 438 (6th Cir. 1975); Modern Fed. Jury' Instructions, § 87-03, Instruction 87-78.

**Eighth Amendment: Claim for Relief due to Cruel and Unusual Punishment**

37.     The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in a their custody.  Hayes v. New York City Dep't of Corrections, 84 F.3d 614, 620 (2d Cir. 1996).

38.    As a sentenced prisoner serving out his sentence, the plaintiff had a federally protected right arising from the portion of the Eighth Amendment to the Constitution of the United States which prohibits the infliction of cruel and unusual punishment. "Cruel and unusual punishment" in the context of a guard's use of force against a prisoner refers to any unnecessary and wanton infliction of pain upon an inmate. Whitley v. Albers, 475 U.S. 312, 106 S.Ct. 1078 (1986).

39.    The unnecessary and wonton infliction of pain constitutes cruel and unusual punishment that is forbidden by the Eighth Amendment. In order to find cruel and unusual punishment, the plaintiff must prove that the defendants inflicted pain upon him; that the defendant's action was unnecessary; and that the defendants' actions were wanton. Whitley v. Albers, 475 U.S. 312, 106 S.Ct. 1078, 1084 (1986). Whether conduct is wanton is determined not from the effect of the conduct upon the prisoner, but from a determination of the guard's state of mind. Whether the defendants' conduct was wanton can be determined by asking yourself whether the force that they used was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the purpose of causing harm to the prisoner. See, e.g., Davidson v. Flynn, 32 F.3d 27, 29-20 (2d Cir. 1994) (Newman, C.J.); Hathaway v. Coughlin, 99 F.3d 550 (2d Cir. 1996); Pelfrey v. Chambers, 43 F.3d 1034 (6th Cir. 1995).

40.    The prohibition against the infliction of cruel and unusual punishment under the Eighth Amendment also extends to the provision of medical care. Thus, prison officials cannot be deliberately indifferent to an inmate's medical needs and may be liable to the plaintiff if they were aware of and disregarded a risk of harm to the plaintiff's health or safety. Farmer v. Brennan, 511 U.S. 825, 836-38, 114 S.Ct. 1970, 128 L.Ed. 811 (1994); Caiozzo v. Koreman, 581 F.3d 63, 69 (2d Cir. 2009).

41.     To prevail on a claim, the plaintiff must show that the defendant was deliberately indifferent to a sufficiently serious medical condition of the plaintiff. There is no definitive test to determine whether the plaintiff has made a sufficient showing of the existence of a serious medical need. However, the following factors can be used to determine the severity of the denial of medical care in this particular case:

First, whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of comment or treatment.

Second, whether the medical condition significantly affects daily activities.

Third, the existence of chronic and substantial pain. Brock v. Wright, 315 F.3d 158, 162-63 (2d Cir. 2003); Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998).

42.     To prove deliberate indifference to the medical need, the plaintiff must show that the defendant knew of and disregarded an excessive risk to the plaintiff's health or safety, and that the defendant was both aware of the facts from which an inference could be drawn that a substantial risk of serious harm existed and also that the defendant drew that inference. Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed. 811 (1994); Caiozzo v. Koreman, 581 F.3d 63, 69, 72 (2d Cir. 2009).

43.     The plaintiff has also claimed that the defendants improperly placed him on in-cell restraint status for an extended period of time because it was unnecessary and solely for punitive purposes. The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment under the Eighth Amendment. Among such prohibited unnecessary and wanton inflictions of pain are those totally without penological justification and are punitive in nature. Hope v. Pelzer, 536 U.S. 730, 738 (2002); Rhodes v. Chapman, 452 U.S. 337, 346 (1981). Placement into in-cell restraints for extended periods after the termination of his resistance or

time necessary to quell a threat or restore order violates the Eighth Amendment. Hope v. Pelzer, 536 U.S. 730 (2002); Caballero v. Lantz, No. 3:05CV140, 2008 WL 638397, at *4-*5 (D. Conn. Mar. 5, 2008).

44.    Unsanitary conditions also constitute cruel and unusual punishment. LaReau v. MacDougall, 473 F.2d 974, 978 (2d Cor. 1972); Caballero v. Lantz, No. 3:05CV140, 2008 WL 638397, at *3 (D. Conn. Mar. 5, 2008). Whether an inmate was deprived of the minimal civilized measure of hygiene is to be determined by the totality of the conditions of confinement and their duration. Wilson v. Seiter, 501 U.S. 294, 304 (1991); Caballero v. Lantz, No. 3:05CV140, 2008 WL 638397, at *3 (D. Conn. Mar. 5, 2008). Leaving an inmate in a restricted position and denying him an opportunity to relieve himself hygienically for an extended period of time is unconstitutional in the absence of sufficiently extenuating circumstances. Hope v. Pelzer, 536 U.S. 730 (2002); Caballero v. Lantz, No. 3:05CV140, 2008 WL 638397, at *5 (D. Conn. Mar. 5, 2008).

45.    To prevail on such a claim, the plaintiff must show, first, that the deprivation alleged is objectively sufficiently serious such that the plaintiff was denied the minimal civilized measure of life's necessities. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Caballero v. Lantz, No. 3:05CV140, 2008 WL 638397, at *3 (D. Conn. Mar. 5, 2008). Secondly, the plaintiff must show that the defendant possessed a sufficiently culpable state of mind. In the context of a claim based on prison conditions, this means that the defendant acted with deliberate indifference in that he knew of and disregarded an excessive risk to the plaintiff's health or safety. This may be inferred from the fact that the risk of harm is obvious. Hope v. Pelzer, 536 U.S. 730, 738 (2002); Farmer v. Brennan, 511 U.S. 825, 834 (1994); Caballero v. Lantz, No. 3:05CV140, 2008 WL 638397, at *3 (D. Conn. Mar. 5, 2008).

**Fourteenth Amendment: Claim for Deprivation of Life & Liberty
without Due Process of Law**

46.     A person must not be deprived of life, liberty, or property without due process of

law. U.S. Const., amend. XIV, § 1; McNatt v. Parker, No. 399CV1397AHN, 2000 U.S. Dist.

WL 307000, at *8 (D. Conn. Jan. 18, 2000).

47.     To state a claim for procedural due process, the plaintiff must first show that he

had a protected liberty interest and, secondly, that he was deprived of that interest without being

afforded due process of law. Tellier v. Fields, 230 F. 3d 502, 522 (2d Cir. 2000).

48.     An inmate has a protected liberty interest where the deprivation is "atypical and

significant" and where "the state has created the liberty interest by statute or regulation." Sandin

v. Conner, 515 U.S. 472, 115, S.Ct. 2293, 132 (1995).

49.     Prison discipline decisions affecting an inmate's liberty interest cannot be

imposed arbitrarily, but must be supported by evidence in the record. Superintendent v. Hill, 472

U.S. 445, 105 S.Ct. 2768 (1985).

**First Amendment: Claim for Retaliation**

50.     The plaintiff alleges that he was retaliated against by the defendants for filing

grievances and complaints, including this lawsuit, against them as a result of their conduct.

Prison officials are prohibited from retaliating against inmates who exercise the right to petition

for redress of grievances. Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2009).

51.     To state a claim for retaliation in violation of the First Amendment, an inmate

must prove the following elements: First, that the speech or conduct at issue was protected;

secondly, that the defendants took adverse action against the plaintiff; and third, that there was a

causal connection between the protected speech and the adverse action. Espinal v. Goord, 558

F.3d 119, 128 (2d Cir. 2009); Gill v. Pidlypchak, 389 F.3d 379, 380-81 (2d Cir. 1994).

52.     In determining whether the defendants' conduct was "adverse," it is not necessary to find that the defendants' conduct ultimately dissuaded or had a chilling effect on the plaintiff from exercising his rights under the First Amendment. Rather, you must determine whether, objectively, whether the defendants' conduct would deter a person of ordinary firmness from exercising his rights. Gill v. Pidlypchak, 389 F.3d 379, 380-81 (2d Cir. 1994).

**Claim for Relief due to Supervisory Liability**

53.     Plaintiff claims that supervisors of correctional personnel should also be held liable for cruel and unusual punishment, failure to provide adequate medical care, and retaliation under the Eighth, Fourteenth, and First Amendments to the United States Constitution. Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising officials and the alleged constitutional deprivation. In order to prove a violation under the Eighth Amendment, the Plaintiff must prove each of the following elements by a preponderance of the evidence:

First, the defendant was in some way responsible for the supervision of the plaintiff.

Second, the plaintiff's constitutional rights were violated during the period of time that the defendant was employed by the Department of Correction.

Third, the defendant was either personally involved in the unconstitutional conduct that caused the plaintiff's injury or that the deprivation of constitutional rights took place at the direction of the defendant or with his knowledge and acquiescence.

A supervisor may be personally involved in a prisoner's constitutional deprivation in several ways. For example, the supervisor may have directly participated in the infraction, or after learning of the violation through a report or appeal, failed to remedy the wrong. The

supervisor may have created a policy or custom under which unconstitutional practices occurred

or allowed such a policy or custom to continue.  Additionally, the supervisor may have been

grossly negligent in his supervision or exhibited deliberate indifference to the rights of an inmate

by failing to act on information indicating that unconstitutional acts were occurring.  City of

Oklahoma v. Tuttle, 471 U.S. 808, 818, 105 S.Ct. 2477, 2433 (1985); Colon v. Coughlin, 58

F.3d 865, 873 (2d Cir. 1995); Horowitz v. Anker, 437 F. Supp. 504 (E.D.N.Y. 1977), aff'd.

mem., 578 F.2d 1368 (2d Cir. 1978); McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977),

cert. denied, 434 U.S. 1087 (1977); Williams v. Vincent, 508 F.2d 541, 546 (2d Cir. 1974);

Williams v. Smith, 781 F.2d 313, 323 (2d Cir. 1986).

## III.    State Law Claim

54.    The plaintiff alleges that the Defendants committed an actionable assault and

battery as defined by state law.  Assault and battery exists where a defendant exerts a harmful,

unlawful force which causes an injury that is the direct and immediate consequence of the force.

An actionable assault and battery may be committed willfully or voluntarily and therefore

intentionally, or done under circumstances showing a reckless disregard of consequences or

negligence.  1 Restatement (Second) Torts, § 13; Russo v. Porga, 141 Conn. 706, 708, 109 A.2d

585 (1954).

## Individual Liability:

55.    You must consider the actions of each defendant individually in determining

whether or not to find liability under any of the plaintiff's theories.  You must find a tangible

connection between the acts of the defendant and any injuries suffered.  In other words, you must

consider the case against each defendant and make a determination against each defendant.  See,

e.g., Gill v. Mooney, 824 F.2d 192, 196 (2d Cir. 1987); McKinnon v. Paterson, 568 F.2d 930,

934 (2d Cir. 1977), cert. denied 434 U.S. 1087 (1978); Alfaro Motors, Inc. v. Ward, 814 F.2d

883, 886 (2d Cir. 1987).

56.    If you find that the plaintiff has proven his claims, then he is entitled to recover

damages for each and every element of damage and injury which he has proven by a fair

preponderance of the evidence.  The plaintiff is entitled to recover the amount of his actual

damages.  You may award actual damages only for those injuries that you find are a direct result

of the actions taken by the defendant and by which you find that plaintiff has proven by a

preponderance of the evidence presented at trial.  Additionally, with respect to the state law

claim, if you find the defendants liable, you may award damages for any pain and suffering the

plaintiff has proven he has suffered. Nettles v. Griffith, 883 F. Supp. 136 (E.D. Tex. 1995);

Morrison v. Stepanski, 839 F. Supp. 1130 (M.D. Pa. 1993); Ryan v. DuPage City, Jury Comm'n,

837 F. Supp. 898 (N.D. Ill. 1993).

**IV.    Damages**

**Compensatory Damages:**

57.    If you find that a defendant is liable to the plaintiff on any of the grounds

advanced in this lawsuit, you should then consider the question of damages.  Compensatory and

punitive damages can be awarded in a lawsuit.  Compensatory damages are designed to

compensate the plaintiff for injuries suffered by the plaintiff that were caused by the defendant.

These injuries include money actually spent or debts incurred as a result of the injury; emotional

anguish; impairment of reputation; personal humiliation; or other suffering.

58.    Actual loss is not limited to expenses or debts incurred.  Injuries of any kind are

to be fully and fairly compensated if they are proximately caused by the constitutional violation.

The damages you award should be proportional to the actual loss sustained, whether that loss is

physical or mental or emotional or another type of loss.  See, e.g., Memphis Cmty. Sch. Dist. v.

Stachura, 477 U.S. 299 (1986); Wheatley v. Beeter, 637 F.2d 863, 865-69 (2d Cir. 1981); Ellis v.

Blum, 643 F.2d 68, 82-84 (2d Cir. 1981).

59.     In fixing the amount of compensatory damages you should determine the amount

of money which will in your judgment reasonably and fairly compensate the plaintiff for any

harm of any kind which was proximately caused by the wrongful conduct of the defendant.

Among the elements of injury and harm for which compensation may be awarded are: the

physical harm to the plaintiff during and after the impairment or injury received; and, the

emotional harm to the plaintiff during and after the impairment or injury received, including

emotional distress or pain, humiliation, personal indignity, embarrassment, fear, anxiety and/or

anguish which the plaintiff has suffered or may with reasonable certainty be expected to suffer in

the future. Douglass B. Wright & William L. Ankerman, Connecticut Jury Instructions, § 226

(4th ed. 1993); Robert B. Yules & John R. Fitzgerald, App. 4 (2000).

**Punitive Damages**

60.     Punitive damages may be awarded if it is determined that the acts or omissions of

one or more of the defendants were so serious that the defendants should pay a penalty so that in

the future they or others will be deterred from engaging in the same conduct.  You should award

punitive damages if you find: willful or malicious violation of the plaintiffs Constitutional rights;

an intentional act by the defendants in gross disregard of the plaintiff s rights; or, a reckless or

wanton disregard by the defendants as to whether or not they were violating the plaintiffs rights.

Punitive damages may also be awarded even if the violation of plaintiffs rights resulted only in

nominal compensatory damages.  If defendants' actions were willful or made with reckless

disregard of the plaintiffs' rights, punitive damages are appropriate, even if the plaintiff can only

show limited damages or injury. <u>Smith v. Wade,</u> 461 U.S. 30 (1983); <u>Stobler v. Board of</u>

<u>Trustees,</u> 474 F.2d 485 (2d Cir. 1973).

61.     The purpose of the punitive damages awards is both punishment and deterrence,

and in deciding whether to award punitive damages and, if so, fixing the amount of such

damages, the jury acts as the conscience of the community.  In fixing the amount of punitive

damages, it is appropriate for the jury to consider all of the same factors which a trial judge

would consider in imposing sentence in a criminal case.  These factors include the behavior of

the defendant at trial and his apparent lack of genuine repentance for the misconduct in question,

if you find such to be the case. <u>See, e.g.,</u> <u>Hall v. Ochs,</u> 817 F.2d 920 (1st Cir. 1987); <u>Rowlett v.</u>

<u>Anheuser-Busch, Inc.,</u> 832 F.2d 194 (1st Cir. 1987).

62.     If you find that the damages suffered by the plaintiff were partly the result of

conduct by the defendants that was legal and partly the result of conduct by them that was illegal,

you must apportion the damages between the legal and the illegal conduct.

**Punitive Damages under State Tort Law:**

63.     In this action, the plaintiff also seeks punitive damages on his state law claim.

The plaintiff must prove that the defendants' actions constituted willful or wanton misconduct.

This amount may be granted above and beyond any amounts for compensatory damages.  Under

state law, punitive damages consist of reasonable expenses properly incurred by the plaintiffs in

litigation, less taxable costs.  If, when considering the plaintiff's state law claim, you find by a

fair preponderance of the evidence that the defendants, or anyone of them, acted either

intentionally or wantonly against the rights of the plaintiff, you should indicate that punitive

damages should be awarded, however, the court in a separate proceedings will determine the

amount to be awarded under state law.

## DEFENDANTS' PROPOSED JURY CHARGES

### EXCESSIVE FORCE

1.      You should understand that not every push or shove by a correctional officer violates an inmate's constitutional rights even if in hindsight, it may seem to have been unreasonable or unnecessary.[3]  Only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment.[4]

2.      To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interest or safety.[5]  20. It is intentional cruelty and wantonness that violates the Eighth Amendment.  Thus, if a prison official makes a good faith error or mistake in judgment, even if it results the infliction of pain and suffering upon a prisoner, the prison official has *not* violated the Eighth Amendment.[6]

3.      I emphasize:  It is intentional cruelty and wantonness, not mistake or good faith error, that characterizes the conduct prohibited by the Eighth Amendment.[7]

4.      The infliction of pain by correctional staff upon a prisoner in the course of maintaining prison security, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable and hence unnecessary in the strict sense.  In making and carrying

---

[3]   Hudson v. McMillan, 503 U.S. 1, 112 S.Ct. 995, 1000 (1992) quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.) cert. denied, John v. Johnson, 414 U.S. 1033 (1973).

[4]   Whitney, 106 S.Ct. at 1084.

[5]   Whitney, 106 S.Ct. at 1084.

[6]   Whitney, supra, at 1084.

[7]   Whitney, supra, at 1084.

out decisions involving the use of force to maintain security and order in a prison, correction officials clearly must take into account the very real threats to security present to inmates and correction staff alike.[8]

5.      Where prison security measures are undertaken to resolve disturbances that clearly pose significant risks to the safety of inmates and prison staff, as the defendants contend is the case here, you can not find liability against the defendants unless you conclude that the force applied was done _maliciously and sadistically *for the very purpose* of causing harm_.[9]

6.      The application of force by prison officials in a good faith effort to maintain or restore discipline is perfectly lawful and proper.[10]  To determine whether defendants acted maliciously or wantonly, a court must examine several factors including:  the extent of the injury and the mental state of the defendant, as well as "the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response." _Romano v. Howarth_, 998 F.2d 101, 105 (2d Cir. 1993) (citing _Hudson_, 503 U.S. at 7).

7.      Indeed, the citizens of the State of Connecticut, through their legislature, have enacted a statute Connecticut General Statute Section 53a-18, which provides, in part, that, correctional officials may, in order to maintain order and discipline within a correctional facility,

---

[8]  _Id_.

[9]  _Whitney, supra_, at 1084. _Johnson v. Glick_, 481 F.2d 1028, 1033 (2d Cir.) (Friendly, J.), _cert. denied sub nom. John v. Johnson_, 414 U.S. 1033 (1973).

[10]  _Id_.

use such physical force as is reasonable.  Any action taken pursuant to this statute is entirely lawful and proper.[11]

8.      In making any judgments with respect to plaintiff's Eighth Amendment claims, you shall not base your decision upon 20/20 hindsight.  You must put yourselves in the place of the defendants during the very moments when these events were occurring and judge their actions as of that time and under those circumstances.[12]

9.      Keep in mind that corrections officials must make their decisions "in haste, under pressure, and frequently without the luxury of a second chance."[13]  Keep in mind also that prison life and relations "between the inmates and prison officials or staff, contain the ever-present potential for violent confrontation and conflagration."[14]  Responsible prison officials must be permitted to take reasonable steps to forestall such a threat, and they must be permitted to act in a timely fashion so as to maintain safety and security.[15]  Keep in mind, "we are considering a large, confined population of convicted felons, not a nursery school."[16]  If you find that the defendants acted in a good-faith effort to maintain and restore discipline, no constitutional violation has occurred.[17]  Therefore, if you make such a finding you should find for the

---

[11]   C.G.S. Sec. 53a-18.

[12]   Graham v. Connor, 490 U.S. 392, 396, 109 S.Ct. 1865, 1872 (1989); Johnson v. Glick, 481 F. 2d 1028, 1034 (2d. Cir.), cert. denied, 414 U.S. 1033, 94 S.Ct. 462 (1973).

[13]   Hudson v. McMillian, 503 U.S. at 6, 7, 112 S.Ct. at 999.

[14]   Wolf v. McDonnell, 418 U.S. 539, 561-62, 94 S.Ct. 2963, 2977-78 (1974).

[15]   Jones v. North Carolina Prisoners' Union, 433 U.S. 119, 132-33, 97 S.Ct. 2532, 2541 (1977).

[16]   Battle v. Anderson, 788 F.2d 1421, 1426 (10th Cir. 1986).

[17]   Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993).

defendants. If you conclude that a defendant used force maliciously and sadistically for the very purpose of causing harm, then you shall find that individual defendant liable and find against that defendant and for the plaintiff.

## DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS (defendants do not agree there is a basis for such a charge – but if one is given, then the following is suggested)

10. Did the plaintiff prove by a preponderance of the evidence (1) that the deprivation alleged is "objectively sufficiently serious" such that the plaintiff was denied "the minimal civilized measure of life's necessities," and (2) that the defendant official possessed a "sufficiently culpable state of mind" associated with "the unnecessary and wanton infliction of pain." See Trammel v. Keane, 338 F.3d 1555 (2d Cir. 2003).

11. An inmate must rely upon prison authorities to treat his serious medical needs; if the authorities deliberately fail to do so, those needs will not be met, and arguably the eighth amendment cruel and unusual punishment clause has been violated, as I will explain further.

12. Deliberate indifference to serious medical needs of prisoners may constitute the unnecessary and wonton infliction of pain proscribed by the Eighth Amendment. [18] This is true whether the indifference is manifested by prison doctors or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with treatment, once it is prescribed.[19] However, inadvertent failure to provide adequate medical care is not an unnecessary and wanton infliction of pain.[20]

---

[18] Estelle v. Gamble, supra, 429 U.S. at 104-05
[19] Estelle v. Gamble, supra, 429 U.S. at 104-05

[20] Id., at 105.

13.     In order for the plaintiff to prevail on his claim of a deliberate indifference by the defendants to the plaintiff's serious medical needs, plaintiff bears the burden of proof and must meet both prongs of a two-prong standard.

> (1)  First, the alleged deprivation must be, in objective terms, "sufficiently serious."[21]
>
> (2)  Second, the charged employee or official must be personally involved, as I explained before, and also must act with a sufficiently culpable state of mind.[22] Deliberate indifference requires more than negligence.  "A prison official does not act in a deliberately indifferent manner unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he  must also draw the inference."[23]

14.     "[A] prisoner's disagreement with his prescribed treatment does not afford a basis for relief under §1983."[24]  Prisoners have no right to the medical treatment of their choice, so long as the prescribed treatment is based on applicable medical standards.[25]  A prisoner's disagreement over doctor's judgment or course of treatment does not state a claim under §1983.

---

[21]  Hathaway v. Coughlin, 37 F.3d 63 (2d Cir. 1994); Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 2324, 115 L. Ed. 2d 271 (1991).

[22]  See Wilson v. Seiter, supra, 501 U.S. at 298.

[23]  Farmer v. Brennan, 511 U.S. 825, 838, 114 S. Ct., 1970, 1978-79, 128 L. Ed.2d 811 (1994). Hathaway v. Coughlin, supra, 37 F.3d 63 (2d Cir. 1994).

[24]  Tomarkin v. Ward, 534  F. Supp. 1224, 1230 (S.D.N.Y. 1982).  See Grimes v. Chernovetz, Civ. No. B-90-436 (WWE), 1991 U.S. Dist. LEXIS 14798 (D.Conn. 1991).
[25]  McCloud v. Delaney, 677 F. Supp. 230, 232 (S.D.N.Y. 1988). See also, United States ex rel. Hyde v. McGinnis, 429 F.2d 864, 866 (2d Cir. 1970).

If you find that plaintiff was seen and treated the night of the incident, and at repeated intervals thereafter, you may conclude that plaintiff was not subjected to deliberate indifference.[26]

## NEGLIGENCE IS NOT A GROUNDS TO FIND FOR PLAINTIFF

15.     An act is negligent if the defendant was under a duty or obligation, recognized by law, that required him to adhere to a certain standard of conduct to protect others against unreasonable risks, and he breached that duty or obligation.  Again, you may not find for the plaintiff against the defendants if you find that the defendants' actions were merely negligent.  I emphasize:  the defendants must have been more than negligent in order for you to find them liable.  They must have acted sadistically and maliciously for the very purpose of causing harm to the plaintiff or they must have acted with the requisite culpable state of mind as explained above.[27]

## IMPEACHMENT BY FELONY CONVICTION - Rule 609 FRE

16.     You have heard testimony that several witnesses were each previously convicted of one or more felonies.  A felony is an offense punishable by more than one year in jail.  These prior convictions were put into evidence only for you to consider in evaluating those witnesses' credibility.  You may consider the fact that a witness has been convicted of a felony in deciding how much of his testimony to accept and what weight, if any, it should be given.

Mr. Alston is not on trial in this case for the crimes he has committed.  He did not lose all of his constitutional rights when he was sentenced to prison.

---

[26] See Wells v. Franzen, 777 F.2d 1258, 1264 (7th Cir. 1985)(treatment of a prisoner's medical condition "generally defeats a claim of deliberate indifference.").  Perez v. Hawk, 302 F.Supp. 2d 9, 21 (E.D. NY 2004).

[27] Authority:  Modern Federal Jury Instructions, ¶ 87.03, Instruction 87-78.

## **RETALIATION – DEFENDANTS OBJECT TO ANY CHARGE ON RETALIATION**

17.     There is no evidence of any retaliation, and plaintiff's claims are wholly conclusory.   If any charge is given, it should include the following:

"Claims by prisoners that particular administrative decisions have been made for retaliatory purposes are prone to abuse.  Virtually every prisoner can assert such a claim as to every decision which he or she dislikes." Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. N.Y. 1983).

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

IRA ALSTON,                          :        CIVIL ACTION NO.:
                                     :        3:07 CV 00473 (RNC)
        Plaintiff,                   :
                                     :
v.                                   :
                                     :
JASON CAHILL, ET AL.                 :
                                     :
        Defendants.                  :        OCTOBER 25, 2010


**ATTACHMENT E**


**PLAINTIFF'S PROPOSED VERDICT FORM**

I.      **LIABILITY**

        A.      **Constitutional Claims under 42 U.S.C. § 1983; Cruel and Unusual
                Punishment, Retaliation, and Deprivation of Due Process Rights**

                1.      Has the plaintiff, Ira Alston ("Plaintiff"), proven by a preponderance of

                the evidence that on November 12, 2006, any of the following defendants used

                excessive for against him for the purpose of causing him harm?

|                   |          |         |
|-------------------|----------|---------|
| Miguel Diaz       | Yes ____ | No ____ |
| Wilbur Strozier   | Yes ____ | No ____ |
| Jason Cahill      | Yes ____ | No ____ |
| Jon Donovan       | Yes ____ | No ____ |
| Bruce Moyer       | Yes ____ | No ____ |
| Adam Vasquez      | Yes ____ | No ____ |

Scott Salius          Yes _____       No_____

2.      If you found that Plaintiff's constitutional right to be free from excessive force was violated by any defendant, has Plaintiff proven, by a preponderance of the evidence, that any of the following defendants were deliberately indifferent to the violation of his constitutional right by failing to intervene to prevent the use of excessive force against him or providing him necessary medical care?

Miguel Diaz           Yes _____       No_____

Wilbur Strozier       Yes _____       No_____

Jason Cahill          Yes _____       No_____

Jon Donovan           Yes _____       No_____

Bruce Moyer           Yes _____       No_____

Adam Vasquez          Yes _____       No_____

Scott Salius          Yes _____       No_____

Melvin Saylor         Yes _____       No_____

3.      Has Plaintiff proven, by a preponderance of the evidence, that any of the following defendants were deliberately indifferent to Plaintiff's serious injury or condition which required medical attention?

Wendy Sanders         Yes _____       No_____

Barbara Savoie        Yes _____       No_____

Ray Sayre             Yes _____       No_____

Carson Wright         Yes _____       No_____

55

Nancy Hill          Yes _____     No_____

4.      Has Plaintiff proven by a preponderance of the evidence that any of the following defendants violated Plaintiff's constitutional rights in connection with his placement in in-cell restraints for a prolonged period of time for solely punitive reasons?

Jeffrey McGill               Yes _____     No_____

Jason Cahill                 Yes _____     No_____

Scott Salius                 Yes _____     No_____

Correction Officer Rose      Yes _____     No_____

5.      Has Plaintiff proven by a preponderance of the evidence that any of the following defendants retaliated against Plaintiff for exercising his right to file grievances or complaints against the defendant to address his conduct, or for filing this lawsuit?

Miguel Diaz          Yes _____     No_____

Scott Salius         Yes _____     No_____

Melvin Saylor        Yes _____     No_____

6.      Has Plaintiff proven by a preponderance of the evidence that any of the following defendants deprived him of life, liberty, and property without due process of law in connection with his placement in in-cell restraints for a

prolonged period of time for solely punitive reasons, or placement on administrative segregation status, or overall security risk classification?

| | | |
|---|---|---|
| Jason Cahill | Yes _____ | No_____ |
| Jeffrey McGill | Yes _____ | No_____ |
| Scott Salius | Yes _____ | No_____ |
| Theresa Lantz | Yes _____ | No_____ |
| Valerie Light | Yes _____ | No_____ |
| Frederick Levesque, Jr. | Yes _____ | No_____ |

If you answered "YES" as to any defendant in response to Question 1, 2, 3, 4, 5, or 6, please answer Question 8. If you answered "NO" as to ALL defendants in response to Question 1, 2, 3, 4, 5, and 6, skip Questions 7 and 8, and proceed to Question 9.

7.     Has Plaintiff proven by a preponderance of the evidence that any of the following defendants (1) directly participated in the violation of his constitutional rights; or (2) after learning of the violation through report or appeal failed to remedy the wrong; or (3) exhibited deliberate indifference to Plaintiff's rights by failing to act on information indicating that unconstitutional acts were occurring; or (4) was grossly negligent in supervising subordinates who caused the violation; or (5) created a policy or custom under which constitutional violations occurred or allowed such policies or customs to continue?

| | | |
|---|---|---|
| Theresa Lantz | Yes _____ | No_____ |
| Jeffrey McGill | Yes _____ | No_____ |

| | | |
|---|---|---|
| Valerie Light | Yes _____ | No_____ |
| Frederick Levesque, Jr. | Yes _____ | No_____ |
| Correction Officer Rodriguez | Yes _____ | No_____ |

If you answered "YES" to ANY defendant in response to Question 1, 2, 3, 4, 5, 6, or 7, you have found that the defendants violation Plaintiff's constitutional rights. You should then answer Question 8. If you answered "NO" as to ALL the defendants in response to Question 1, 2, 3, 4, 5, 6, and 7, then skip Question 8, and proceed to Question 9.

8.   Has Plaintiff proven by a preponderance of the evidence that he suffered injuries that were proximately caused by any defendant's violation of his constitutional rights?

   Yes _____   No_____

**B.   State Law Claim:  Assault and Battery**

9.   Has Plaintiff proven by a preponderance of the evidence that any of the following individual defendants assaulted and battered him wantonly, recklessly, and/or maliciously using unauthorized force against him?

| | | |
|---|---|---|
| Miguel Diaz | Yes _____ | No_____ |
| Wilbur Strozier | Yes _____ | No_____ |
| Jason Cahill | Yes _____ | No_____ |
| Jon Donovan | Yes _____ | No_____ |
| Bruce Moyer | Yes _____ | No_____ |
| Adam Vasquez | Yes _____ | No_____ |

If you answered "YES" as to any defendant in response to Question 1, 2, 3, 4, 5, 6, or 8, you may consider the question of damages. If you answered "NO" as to ALL defendants in response to Question 1, 2, 3, 4, 5, 6, 7, and 9, your deliberations are complete. The Foreperson should sign and date the Verdict Form.

## II.   DAMAGES

### A.   <u>Compensatory Damages</u>

1.   If you found any of the defendants liable for a violation of Plaintiff's constitutional rights (by answering "YES" to any defendant in Question 1, 2, 3, 4, 5, 6, or 9 in Section I. "Liability") and that Plaintiff sustained injuries as a proximate cause of such violation (by answering "YES" to Question 8), or if you found any of the defendants liable to Plaintiff for assault and battery (by answering "YES" as to any defendant in Question 9), what amount of compensatory damages, if any, do you award Plaintiff, to reasonably compensate him for his injuries proximately caused by the defendant's unlawful conduct?

$_____

If you awarded compensatory damages to the plaintiff, answer the questions on punitive damages. If you did not award compensatory damages, you have finished your deliberations. The Foreperson should sign and date the Verdict Form.

**B.**     **Punitive Damages**

2.     Do you find Plaintiff has proven by a preponderance of the evidence that punitive damages should be assessed against any of the individual defendants for violating his constitutional rights?

Miguel Diaz          Yes _____      No_____

Wilbur Strozier      Yes _____      No_____

Jason Cahill         Yes _____      No_____

Jon Donovan          Yes _____      No_____

Bruce Moyer          Yes _____      No_____

Adam Vasquez         Yes _____      No_____

Scott Salius         Yes _____      No_____

Melvin Saylor        Yes _____      No_____

Wendy Sanders        Yes _____      No_____

Barbara Savoie       Yes _____      No_____

Ray Sayre            Yes _____      No_____

Carson Wright        Yes _____      No_____

Defendant Hill       Yes _____      No_____

Theresa Lantz        Yes _____      No_____

Jeffrey McGill       Yes _____      No_____

Valerie Light        Yes _____      No_____

Frederick Levesque, Jr.     Yes _____      No_____

Correction Officer Rose     Yes _____      No_____

Correction Officer Rodriguez     Yes _____      No_____

60

3.      If you found that Plaintiff has proven by a preponderance of the evidence that punitive damages should be assessed against one or more of the individual defendants for a violation of Plaintiff's constitutional rights, enter the amount of punitive damages, if any, you award Plaintiff against the individual defendant(s).

Miguel Diaz                    $_____

Wilbur Strozier                $_____

Jason Cahill                   $_____

Jon Donovan                    $_____

Bruce Moyer                    $_____

Adam Vasquez                   $_____

Scott Salius                   $_____

Melvin Saylor                  $_____

Wendy Sanders                  $_____

Barbara Savoie                 $_____

Ray Sayre                      $_____

Carson Wright                  $_____

Defendant Hill                 $_____

Theresa Lantz                  $_____

Jeffrey McGill                 $_____

Valerie Light                  $_____

Frederick Levesque, Jr.        $_____

Correction Officer Rose        $_____

Correction Officer Rodriguez       $_____

C.      **Punitive Damages:  State Law Claim for Assault and Battery**

4.      Do you find that Plaintiff has prove by a preponderance of the evidence

that punitive damages should be assessed against any of the individual defendants

on Plaintiff's state law claim of assault and battery?  (If you answer "YES" as to

any defendant, the Court will determine the amount of punitive damages to be

awarded in a separate proceeding.)

| | | |
|---|---|---|
| Miguel Diaz | Yes _____ | No_____ |
| Wilbur Strozier | Yes _____ | No_____ |
| Jason Cahill | Yes _____ | No_____ |
| Jon Donovan | Yes _____ | No_____ |
| Bruce Moyer | Yes _____ | No_____ |
| Adam Vasquez | Yes _____ | No_____ |

You have completed your deliberations.  The Foreperson should sign and date the Verdict Form.

_____          _____
Date                                                                    Foreperson Signature

## DEFENDANTS' PROPOSED VERDICT FORM

**A.**   **LIABILITY**

1.     Has the plaintiff, Ira Alston ("Plaintiff"), proven by a preponderance of the evidence that on November 12, 2006, any of the following defendants used excessive force against him, maliciously and sadistically for the purpose of causing him harm?

| | | |
|---|---|---|
| Miguel Diaz | Yes ____ | No____ |
| Wilbur Strozier | Yes ____ | No____ |
| Jason Cahill | Yes ____ | No____ |
| Jon Donovan | Yes ____ | No____ |
| Bruce Moyer | Yes ____ | No____ |
| Adam Vasquez | Yes ____ | No____ |

**If NO,** to all questions, then go to the end, have the foreperson sign the verdict form, and notify the Judge that you have reached a verdict. **If YES,** then you should proceed to the question of damages below.

**B.**   **DAMAGES**

2.     Did plaintiff prove by a preponderance of evidence that he sustained damages which were proximately caused by the defendants  for which he should be given **compensatory damages**?     Yes_____   No_____.  If YES, what amount do you award?

_____

3.     . If NO, is the plaintiff entitled to an award of **nominal damages** for the symbolic value of violating his constitutional right to be free from excessive force against him, maliciously and sadistically for the purpose of causing him harm? Yes_____   No_____.  If YES, what

amount do you award? _____(nominal damages not to exceed ten dollars).

    4.    If you answered Yes, to questions 2 or 3, is the plaintiff entitled to an award of **punitive damages,** for the willful or malicious violation of the plaintiff's constitutional right, in order to punish a defendant and to deter others from the same conduct?   Yes_____

No_____.  If YES, what amount do you award as to each defendant?

PUNITIVE DAMAGES

| | | | |
|---|---|---|---|
| Miguel Diaz | Yes ____ | No____ | _____ |
| Wilbur Strozier | Yes ____ | No____ | _____ |
| Jason Cahill | Yes ____ | No____ | _____ |
| Jon Donovan | Yes ____ | No____ | _____ |
| Bruce Moyer | Yes ____ | No____ | _____ |
| Adam Vasquez | Yes ____ | No____ | _____ |

TOTAL AMOUNT OF PUNITIVE DAMAGES = _____


You have completed your deliberations.  The Foreperson should sign and date the Verdict Form.


_____
Date

_____
Foreperson Signature