UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| IRA ALSTON | : | CIVIL NO. 3:07CV473 (RNC) |
| v. | : | |
| JASON CAHILL, ET AL. | : | OCTOBER 25, 2010 |

### DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S TWO MOTIONS IN LIMINE (Doc. #198 and #200)

A trial is the legal system's greatest generator for producing the truth, with all the procedural safeguards of confrontation and cross examination. "The Supreme Court has stated that: 'Confrontation: (1) insures that the witness will give his statements under oath -- thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the 'greatest legal engine ever invented for the discovery of truth'. . . .*California v. Green*, 399 U.S. 149, 150, 26 L. Ed. 2d 489, 90 S. Ct. 1930 (1970) (quoting 5 J. Wigmore, Evidence § 1367 (3d ed. 1940)).'" *Howard v. Walker*, 406 F.3d 114, 128 (2nd Cir. 2005). Plaintiff's pending motions seek to hide the truth from the jury and present this case in a sanitized, unrealistic courtroom world. The Court should not allow the jury to view this case without hearing all of the facts, and precluding relevant, admissible evidence would deny the defendants their constitutional right to due process and a fair trial.

Here, defendants acted in an objectively reasonable manner and they are entitled to qualified immunity. "The objective reasonableness test is met if 'officers of reasonable competence could disagree' on the legality of the defendant's actions. *Malley v. Briggs*, 475 U.S. 335, 341, 89 L. Ed. 2d 271, 106 S. Ct. 1092 (1986). The Supreme Court has made it clear that an **officer's actions are not to be assessed with 20/20 hindsight**. Rather, 'qualified immunity

serves to protect police from liability and suit when they are required to make on-the-spot judgments in tense circumstances.' *Lennon*, 66 F.3d at 424." *Salim v. Proulx*, 93 F.3rd 86, 91 (2nd Cir. 1996)(emphasis added) (reversing Judge Squatrito's denial of summary judgment on qualified immunity grounds and remanding with direction to dismiss the complaint against the police officer.) Plaintiff's efforts to keep critical evidence from the jury would remove this case from the tense, on-the-spot judgments the defendants had to make in the context of managing an extremely dangerous inmate in the context of a maximum security prison. Further, plaintiff's *in limine* motions invite the jury to view this case with an eye toward plaintiff as being a model citizen, with 20/20 hindsight from the calm comfort of soft cushioned chairs in a United States District Courtroom.  Such a view of the case distorts the truth and denies the defendants their right to  a fair trial based on all of the evidence. For these reasons, and the reasons discussed below, plaintiff's two motions *in limine* should be denied.

      **I.**     **DEFENDANTS ARE ENTITLED TO INTRODUCE PLAINTIFF'S PRIOR CONVICTIONS UNDER RULE 609 FED. R. EVID.**

The District Court for the District of Connecticut has consistently  allowed prior conviction information to be introduced in prisoner civil rights cases. *See James v. Tilghman*, 194 F.R.D. 402, 405 (D. Conn. 1999); *Martino v. Korch*, 131 F. Supp. 2d 313, 315 (D. Conn. Nov. 1, 2000). "Under Fed. R. Evid. 609, defendants **<u>are entitled</u>** to inquire for impeachment purposes into the nature of the crime plaintiff was convicted of, the date of disposition and the sentence imposed, if the conviction meets certain criteria. *See James v. Tilghman*, 194 F.R.D. 402, 405 (D. Conn. 1999) (citing, *Gora v. Costa*, 971 F.2d 1325, 1330 (7th Cir. 1992))" (emphasis added). Rule 609(a)(1) allows prior convictions to be used for impeachment purposes

2

where the "crime was punishable by death or imprisonment in excess of one year," subject to the balancing test of Rule 403 Fed. R. Evid. 609(a)(1)." "The court finds that, by limiting defendants' inquiry into this conviction to the nature of the charge, the date of disposition and the sentence imposed, any prejudicial effect of the information will be minimized." *Martino v. Korch*, 131 F. Supp. 2d 313, 315 (D. Conn. Nov. 1, 2000).

Plaintiff, Ira Alston #275666, was convicted of Manslaughter in the First Degree with a Firearm, C.G.S. § 53a-55a, and sentenced to thirty-five (35) years. Also on November 1, 2002, Plaintiff was convicted of Carrying a Pistol without a Permit, C.G.S. § 29-35(a), and sentenced to three (3) years, to run concurrently (Plaintiff's convictions for Manslaughter in the First Degree with a Firearm, C.G.S. § 53a-55a, and Carrying a Pistol without a Permit, C.G.S. § 29-35(a) are collectively referred to as the "2002 Convictions"). See Plaintiff's Memorandum in Support of Motion in Limine (Doc. #199 at 2).

Thus, while defendants acknowledge it would be improper under *James v. Tilghman* and *Martino v. Korch*, to inquiry into the "gory details" of plaintiff's past manslaughter and firearm convictions, this District Court has found that limiting the information to (1) the nature of the charge, i.e. manslaughter with a firearm and carrying a pistol without a permit; (2) the date of disposition i.e. November 1, 2002; (3) the sentence imposed i.e. 35 years, then the prejudicial impact will be minimized. As noted by Magistrate Judge Margolis in *James v. Tilghman*, the jury will already know that plaintiff is an incarcerated prisoner, housed at the state's highest security prison, Northern CI, so any additional prejudice would be minimal. Further as Magistrate Judge Margolis noted in her opinion, relying on *Gora,* "As the Seventh Circuit reasoned in *Gora v. Costa*, 971 F.2d 1325, 1330 (7th Cir. 1992): 'The idea underlying Rule 609, whether right or wrong, is that criminals are more likely to testify untruthfully.' (citation omitted). See also *Young*

3

*v Calhoun*, 1995 U.S. Dist. LEXIS 4555, 85 CIV. 7584 (SWK), 1995 WL 169020, at *4 (S.D.N.Y. Apr. 10, 1995)("In the case at bar [§ 1983 action by prisoner against correctional officer], plaintiff's murder conviction is probative of his credibility since it removes any misperceptions that plaintiff is a model citizen.)(citing *Gora*). *James v. Tilghman*, 194 F.R.D. at 405.  The jury will be the finders of fact in this case and credibility, especially  credibility with regard to plaintiff's allegations of excessive force  where the parties have diametrically opposing positions, will be at the heart of the jury's determinations. It is only reasonable and makes complete sense for the jury to consider whether a person who commits a crime of manslaughter with a firearm, and who is capable of committing such a crime, is also capable of lying under oath. This is for the jury to decide when making its credibility determinations.

Plaintiff was also convicted on May 14, 2003,  of Larceny in the Third Degree, C.G.S. § 53a-124, and Failure to Appear in the First Degree, C.G.S. § 53a-172. (the "2003 convictions"). Plaintiff was sentenced to two (2) years, to run concurrently, for both of these offenses. Both of these convictions are felony convictions and fall within the purview of Rule 609 Fed. R. Evid. Defendants intend to offer these convictions in addition to the 2002 convictions for manslaughter and possession of a firearm without a permit. These two latter convictions, larceny 3rd and failure to appear, are especially probative of plaintiff's lack of veracity and lack of trustworthiness, as they go right to the core of being an honest and trustworthy person. When a judge gives a criminal defendant a Promise to Appear (PTA) the judge, in essence, is saying to the defendant: "I trust you to show up and be present in court on your next court date." The PTA is an affirmation by the Court that a person will be reliable and will, in fact,  honor the court's trust by appearing at the next court appearance date. When a person fails to appear, it is a strong

4

statement of lack of reliability and trustworthiness, which this jury should be allowed to consider in making their credibility determinations.

Similarly, larceny 3rd degree, as defined by Conn. Gen. Stat. §53a-119 and §53a-124, may entail stealing property from another, use of fraud or dishonest dealings. Such a conviction is also highly relevant to the credibility determinations of the jury and should be admitted into evidence to impeach the plaintiff. The larceny and failure to appear convictions are admissible under Rule 609 (a)(2) because they involve "dishonesty or false statement, regardless of the punishment." It is not sufficient to simply tell the jury that plaintiff was convicted of two, or in this case four, "unnamed" felonies. Such a statement to a jury only invites confusion and speculation, and fails to give the jury the type of truthful information it needs to make its critical credibility assessments. This Court should find, as the Court did in both *James v. Tilghman* and *Martino v. Korch*, that the felony convictions are admissible, and names of the crimes should be disclosed to the jury, together with the date of conviction, and the length of sentence. "The court finds that, by limiting defendants' inquiry into this conviction to the nature of the charge, the date of disposition and the sentence imposed, any prejudicial effect of the information will be minimized." *Martino v. Korch*, 131 F. Supp. 2d 313, 315 (D. Conn. Nov. 1, 2000).

Plaintiff argues that the felony convictions should be precluded under Rule 404(b) Fed. R. Civ. P. because they are likely to show "propensity" for violence and that plaintiff was the initial aggressor in this case. The defendants do not intend to use the prior convictions for such purpose. This precise evidence, who was the aggressor and who was doing the punching, will be the subject of live testimony from, among others, Correction Officer Strozier, who will testify that plaintiff stepped out of his cell, in violation of institutional rules, ignored direct verbal orders to step back in the cell, and that plaintiff stepped into Correction Officer Strozier's

5

personal space, in very close proximity to the officer with a hostile intent and clenched fist. The felony convictions of the plaintiff go to plaintiff's credibility when plaintiff alleges that Correction Officer (CO) Strozier " rushed in" plaintiff's cell and immediately slammed plaintiff against his bunk bed and storage locker and started choking him." Third Amended Complaint (Doc. #100) at ¶¶37, 38.

Similarly, plaintiff alleges that CO Diaz rushed in and kicked plaintiff's feet out from under him. CO Diaz, on the other hand, will testify that he rushed in after plaintiff began violently, and repeatedly punching CO Strozier. CO Diaz will also testify that plaintiff placed CO Diaz in a headlock, choking him and that plaintiff admitted to placing CO Diaz in a choke hold when CO Diaz and the plaintiff were both interviewed by Connecticut Sate Police.

The Court can give express, limiting instructions that the felony convictions have absolutely no bearing on the issue of who was the aggressor or who did what on November 12, 2006. The Court can clearly instruct the jury that the prior convictions are only to be used to impeach the plaintiff's credibility and it is up to the jury to determine what weight, if any weight at all, should be given to the convictions, and only insofar as the convictions may bear on truthfulness.

## II.   PLAINTIFF'S DISCIPLINARY HISTORY AND GANG HISTORY IS AT ISSUE AND IS CRITICALLY RELEVANT

One of plaintiff's claims in this case is that he does not belong in Administrative Segregation, and that he is improperly classified as an Administrative Segregation inmate. Further, plaintiff seeks in one of his prayers for relief, to be released from Administrative Segregation. These claims of the plaintiff squarely put into issue in this case plaintiff's entire

6

disciplinary history. It is undisputed that the present classification of the plaintiff is Administrative Segregation.

Administrative Segregation ("AS")  is defined as :

> Administrative Segregation. Placement of an inmate on a restrictive housing status that results in segregation of the inmate whose behavior or management factors pose a threat to the security of the facility or a risk to the safety of staff or other inmates and that the inmate can no longer be safely managed in general population.

See Admin. Dir 9.4 at http://www.ct.gov/doc/LIB/doc/PDF/AD/ad0904.pdf

Plaintiff challenges in this case  his classification, and classification and placement decision which have been made concerning his placement in AS at Northern CI. Classification is an on-going process of evaluating all available information about an offender, which includes a review of plaintiff's inmate master file, his disciplinary record and incident reports concerning plaintiff's behavior. Admin Dir. 9.2 defines classification as follows:

> Classification. The ongoing process of collecting and evaluating information about each inmate to determine the inmate's risk and need level for appropriate confinement location, treatment, programs, and employment assignment whether in a facility or the community.

See Admin, Dir. 9.2 at http://www.ct.gov/doc/LIB/doc/PDF/AD/ad0902.pdf.

It would be literally impossible for the defendants to explain why plaintiff is at Northern CI,  how he has been classified, and why he is classified as an AS inmate without being able to go into detail about plaintiff's institutional history and his disciplinary record. Not only would any such effort be impossible, but also it would deny the defendants their constitutional right to defend themselves, would deny them due process and would deny them their right to a fair trial.

Plaintiff relies on *Hynes v. Coughlin*, 79 F.3d 285, 291 (2d Cir. 1996), plaintiff's memo in support of motion *in limine* (Doc. # 201) at 2-3, for the proposition that it is error to admit an inmate's disciplinary record to show he has a propensity toward violence. This might be true if the only issue in this case, like the *Hynes* case, is as the Court phrased it in its question to defendants' counsel, "It is really who struck John, isn't it?" *Hynes*, 79 F.3rd at 288. This case has many, many more issues that the singular issue in *Hynes* as to who struck who. Plaintiff's Third Amended Complaint has nine distinct and separate claims for relief. Among plaintiff's claims is a claim that he was denied due process in connection with his hearing and placement on Administrative Segregation. See Eighth Claim, (Doc. #100) at p. 17 of 21, ¶¶ 101- 110. Indeed, plaintiff named former Director of Classification and Population Management, Fred Levesque as a defendant in this case, precisely because he is challenging his classification. At the time, Mr. Levesque was the Department of Correction official who approved placement of an inmate into AS at Northern CI.

Mr. Levesque will testify that the classification process includes a review of the entire inmate file, including criminal history as well as institutional history. He will testify about his actual review of the plaintiff's inmate file and his disciplinary history. Plaintiff has also named former Deputy Warden of Northern CI, Valerie Light. Ms. Light will testify about the on-going periodic classification reviews that take place at Northern CI to determine whether an inmate's behavior is such that he might be recommended for advancement out of Phase I to Phase II, and eventually to Phase III, of the Northern CI AS program. Plaintiff complains in ¶109 that the defendant, Ms. Light failed to conduct these periodic reviews. The defendant Light, on the other hand, will testify as to how she conducted the reviews, which necessarily involves the on-going assessment of the plaintiff's institutional behavior. Since plaintiff claims, as part of the relief

sought in this case, that he should be released from AS, it is entirely relevant and precisely, critically necessary to delve into the details of all of plaintiff's institutional history, even up to the present. Plaintiff seeks as part of his damages, monetary relief for his confinement in AS at Northern. Thus, plaintiff's institutional record, his inmate master file, gang affiliation, and disciplinary history is not only relevant to the issue of his classification and placement, and whether damages are appropriate, but also is relevant as to issue of causation. Plaintiff is the sole person who caused himself to be placed at Northern, based on his institutional behavior and management issues, and he alone is responsible for his placement, and length of time he has spent at Northern CI. Thus, this case is really nothing at all like the *Hynes* case on which plaintiff relies. It also bears no resemblance to the other case plaintiff relies on, *Holloway*, where the primary issue was who initiated the interaction between plaintiff and defendants. See Plaintiff's memo (Doc. #201 at 3-4). In neither *Hynes* nor *Holloway* was there a due process claim at issue nor did the prisoner plaintiff in those cases challenge his classification or seek damages for being classified in Administrative Segregation.

Thus, this case is much more closely on point with *James v. Tilghman*, 194 F.R.D. 402, 405 (D. Conn. 1999). In *James,* Magistrate Judge Margolis did not rule one way or the other in her Ruling on the Motion *in limine* because at the time she did not have enough information to determine if the defendants had knowledge of the plaintiff's prior disciplinary record, and if the prior disciplinary record was relied upon in making classification decisions and housing or cell assignments. Magistrate Judge Margolis held that "plaintiff's disciplinary history would be admissible only to the extent that defendants had knowledge of such history and such knowledge could have played a factor in plaintiff's cell assignment by defendants…" *James*, 194 F.R.D. at 406. At trial, a number of disciplinary reports were, in fact, admitted as full exhibits. This

housing assignment is precisely the heart of the issue in this case, especially with regard to plaintiff's due process and classification claims.

Plaintiff also moves to preclude any reference to plaintiff's gang affiliation. However, plaintiff's classification at Northern CI, his cell and program assignments have been and are based on his SRG affiliations and activities. In her Ruling in *James*, Magistrate Judge Margolis, relied in part on *Withers v. Riley*, 1994 U.S. Dist. LEXIS 3202 (N.D. Ill. 1994). In *Withers*, the prisoner also moved *in limine* to preclude evidence of his gang affiliation. The Court denied the motion citing to the Supreme Court's opinion, stating, "[i]n *United States v. Abel*, 469 U.S. 45, 83 L. Ed. 2d 450, 105 S. Ct. 465 (1984), the Supreme Court held that it was proper to receive evidence that a witness and the criminal defendant were members of a prison gang sworn to perjury and self-protection, because such testimony tended to show bias on the part of the witness favorable to the defendant. That such evidence might also impeach the witness' veracity directly did not make the evidence inadmissible. In *Clark v. O'Leary*, 852 F.2d 999 (7th Cir. 1988), the court held it was error to exclude all reference to gang affiliation to attack the credibility of government witnesses…" *Withers* at *9 -*10.

In a recent Second Circuit case, *United States v. Whitten*, 610 F.3rd 168 (2nd Cir. 2010), a capital case, the Court of Appeals found that the admission of testimony about the Bloods gang was a proper exercise of discretion. *Id.* at 192, n. 16. The Second Circuit discussed that "the prosecution established that Wilson was a member of the Bloods gang, stayed a member while in prison, and had (on at least two occasions) told fellow gang members to "pop off" (i.e., attack the guards). To testify about the Bloods' structure and organization, and how acts of violence move a member up within the gang hierarchy, the government put on a cooperating witness, Shabucalik Geralds, a former Bloods member who was still to some extent affiliated with the gang at the

time he testified. Geralds, who encountered Wilson in prison while Wilson was detained following the murders, also testified to statements made by Wilson…" *United States v. Whitten*, 610 F.3d 168, 177 (2d Cir. N.Y. 2010).

In this case, the defendants propose to offer testimony that the plaintiff, Ira Alston, is a Blood gang member, who is classified as a Security Risk Group Safety Threat Member (SRGSTM). See Admin Dir. 6.14.[1] Plaintiff challenges his classification and placement at Northern CI. Defendants have listed in the Joint Pretrial Memorandum as one of their witnesses, John Aldi, an expert recognized by state and federal courts in Connecticut, who will testify about plaintiff's designation as an SRGSTM, and the SRGSTM program at Northern CI. See Joint Trial Memo (Doc. #194) at p. 20 of 64, ¶22.  In *United States v. Whitten* the Second Circuit found it was appropriate to allow expert testimony stating, in relevant  part,"Romine was competent to testify about the nature of that threat, based on his long administrative experience at several prisons and in the Bureau of Prisons - experience that included examining prisoners' records to determine their threat level. The district court did not abuse its discretion in allowing Geralds's and Romine's testimony regarding the Bloods. *See United States v. Kaplan*, 490 F.3d 110, 117 (2d Cir. 2007)."*United States v. Whitten*, 610 F.3d 168, 192 (2d Cir. N.Y. 2010).

The defendants respectfully claim that it would not only be an abuse of discretion to preclude testimony about plaintiff's institutional history, his inmate master file, his disciplinary record, and his gang affiliation, but also it would deny the defendants their fundamental right to

---

[1]  DOC Admin Dir. 6.14 governs the management of gangs, known as security risk groups, and defines SRGSTM as follows:"Security Risk Group Safety Threat Member (SRGSTM). An inmate whose activity, behavior, status as a recognized Security Risk Group leader, and/or whose activity, behavior or involvement in an event associated with a Security Risk Group jeopardizes the safety of the public, staff or other inmate(s) and/or the security and order of the facility."
See  http://www.ct.gov/doc/LIB/doc/PDF/AD/ad0614.pdf  (viewed Nov. 29, 2010).

due process and a fair trial. It is the plaintiff who has opened the door to this line of inquiry by putting his classification and housing assignment at Northern at issue in this case. The evidence will show that once plaintiff completes the AS program, he will then have to participate in the SRGSTM program at Northern. The evidence will also show that plaintiff's housing assignment and classification is based on evidence of disciplinary reports, including reports of SRG affiliation. The evidence will show that as recently as June 21, 2010, plaintiff was found guilty of Security Risk Group Affiliation, and that his continued placement at Northern CI is based on record evidence of plaintiff's documented behavior. It would be fundamentally unfair to disallow the very evidence on which plaintiff's classification, risk assessment and housing assignment is based.

## CONCLUSION

For all the foregoing reasons, and for the additional reasons which will be discussed at the pre-trial conference, defendants respectfully claim their motion in line should be granted.

                                              DEFENDANTS
                                              Jason Cahill, Et Al.

                                              RICHARD BLUMENTHAL
                                              ATTORNEY GENERAL

                                        BY:__/s/_____
                                              Steven R. Strom
                                              Assistant Attorney General
                                              110 Sherman Street
                                              Hartford, CT 06105
                                              Federal Bar #ct01211
                                              E-Mail:  steven.strom@ct.gov
                                              Tel.:  (860) 808-5450
                                              Fax:  (860) 808-5591

**CERTIFICATION**

I hereby certify that on November 29, 2010, a copy of foregoing defendants' memorandum in opposition to plaintiff's two motions in limine (doc. #198 and #200) was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System. I hereby certify that a copy of the foregoing was mailed to the following on this 29th day of November, 2010:

    Thomas J. Finn
    Paula Cruz Cedillo
    Jorden Burt-Simsbury
    175 Powder Forest Drive
    Suite 201
    Simsbury, CT 06089

                                                       /s/
                                        Steven R. Strom
                                        Assistant Attorney General