United States District Court
District of Connecticut


Ira Alston
   Plaintiff                          Case No.:
                                      3:07cv473(RNC)

V

                          Jury trial demanded

Lieutenant Cahill
Lieutenant Baylor
Deputy Warden Rose
Deputy Warden Light
Deputy Warden Powers
Deputy Warden Cyr
Deputy Warden Rodriguez
Warden McGill
Warden Quiros
Warden Maldonado
Director Fredrick Levesque
Commissioner Lantz
Commissioner Murphy
Commissioner Arnone.



Continue on next page

1.

07cv473amdcmp
FILED

2011 DEC 23 P 1: 19

US DISTRICT COURT
HARTFORD CT

Correctional officer Strozier ✓
Correctional officer Diaz ✓
Correctional officer Oonovan ✓
Correctional officer Vasquez ✓
Correctional officer Moyers
physician Doctor Wright ✓
Correctional nurse Hill ✓
Correctional nurse Banders ✓
Correctional nurse Sayre ✓
Correctional nurse Savioe ✓
Captian Darryl Little ✓
Captain Scott Salius ✓
Captain Dennis Marinelli            December 21, 2011
                DEFendants.

## Fourth Amended Complaint

Introduction

#1. Plaintiff, Ira Alston, was beaten on November 12, 2006, by at least six(6) correctional officers (C/Os) at Northern Correctional Institution. Plaintiff was then maliciously placed in chains for two(2) days and six(6) hours where Plaintiff limbs were bound together by handcuffs, leg irons, and a tether chain that left plaintiff bent at the waist for the entire time.
                Plaintiff was also assigned to

Administrative Segregation without a timely and adequate hearing and lack of or adequate periodic reviews of the continued appropriateness of his administrative segregation assignment.

Plaintiff have been retaliated against for engaging in protected activity such as filing grievances, complaints and this instant lawsuit. Plaintiff has since been denied adequate medical treatment for his injuries.

Jurisdiction

#2. This action arises under the first, eighth, and fourteenth amdts. to the U.S. constitution, the civil rights act of 1871, 42 U.S.C. §1983 and §1988., and the constitution, statutes and laws of the state of Connecticut. This court has original jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

This court have jurisdiction over plaintiff's claims for injunctive and declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202

Parties

#3. Plaintiff, Ira Alston, is/was at all times relevant to this action a state of Connecticut citizen, committed to the state of Connecticut Department of Corrections to serve a sentence.

3

#4. Defendant Jason Cahill is/was at all times relevant to this action employed by the Connecticut Department of Corrections assigned to Northern Correctional Institution with the rank of Lieutenant.

#5. Defendant Melvin Saylor is/was at all times relevant to this action employed by the Connecticut Department of Corrections assigned to Northern Correctional Institution with the rank of Lieutenant

#6. Defendant Terrance Kose was at all times relevant to this action employed by the Connecticut Department of Corrections assigned to Northern Correctional Institution with the rank of Deputy Warden.

#7. Defendant Lauren Powers was at all times relevant to this action employed by the Connecticut Department of Corrections assigned to Northern Correctional Institution with the rank of Deputy Warden

#8. Defendant Cyr is/was at all times relevant to this action employed by the Connecticut Department of Corrections assigned to Northern Correctional Institution with the rank of Deputy Warden.

4

#9. Defendant Valerie Light was at times relevant to this Action Employed by the Connecticut Department of Corrections Assigned to Northern Correctional Institution with the Rank of Deputy Warden

#10. Defendant Jeffrey McGill was at times relevant to this Action Employed by the Connecticut Department of Corrections Assigned to Northern Correctional Institution with the Rank of Warden

#11. Defendant Angel Quiros was at times relevant to this Action Employed by the Connecticut Department of Corrections Assigned to Northern Correctional Institution with the Rank of Warden.

#12. Defendant Edward Maldonado is/was at times relevant to this Action Employed by the Connecticut Department of Corrections Assigned to Northern Correctional Institution with the Rank of Warden

#13. Defendant Fredrick Levesque was at times relevant to this Action Employed by the Connecticut Department of Corrections with the Rank of Director of Offender Classification and Population Management.

5

#14. Defendant Theresa Lantz was at times relevant to this Action was Employed by the Connecticut Department of Corrections with the Rank of Commissioner

#15. Defendant Brian K. Murphy was At times relevant to this Action Employed by the Connecticut Department of corrections with the Rank of Acting Commissioner.

#16. Defendant Leo Amone is/was At times relevant to this Action Employed by the Connecticut Department of Corrections with the Rank of Commissioner.

#17. Defendants Wilbur Strozier, Miguel Diaz, Jon Donovan, Adam Vasguez, And Bruce moyer is/was At All times relevant to this Action Employed by the Connecticut Department of corrections Assigned to Northern Correctional Institution As Security Line Officers.

#18. Defendant Carson Wright is/was At All times relevant to this Action Retain or Employed by the Connecticut Department of corrections Assigned to Northern Correctional Institution As the Facility Physician.

#19. Defendant Wendy Sanders, Barbara Savoie, Nancy Hill And Kay Bayre is or was a nurse employed or retained by the Connecticut Department of Corrections Assigned to Northern Correctional Institution.

#20. Defendant Darryl Little was At times relevant to this action employed by the Connecticut Department of Corrections Assigned to Northern Correctional Institution with the rank of Unit Manager / Captain

#21. Defendant Scott Salius was At times relevant to this action Employed by the Connecticut Department of Corrections Assigned to Northern Correctional Institution with the rank of Captain / Unit manager

#22. Defendant Dennis Marinelli is/was At All times relevant to this action Employed by the Connecticut Department of Corrections Assigned to Northern Correctional Institution With the rank of Captain / Unit manager

#23. Each of the defendants is Sued on All Claims for Damages in his or her individual / Personal Capacity.

#24. EACh of the defendants is sued on AEl claims for declaratory And Enjunctive relief in his or Her official capacity.

#25. At All time relevant to this Action, the defendants were Acting under color of Law And/or under the Authority of the Constitution, Statutes, Laws, Regulations, Custom And Usages of the State of Connecticut

#26. EAch Defendant have A duty to Refrain from Violating the Constitutional Rights of Enmates And had both the duty And opportunity to Prevent other Law Enforcement officers from Violating the Plaintiff rights.

#27. The Defendants EAch Acted with Either Intentionally, Reckessly or with callous Endifference to Plaintiff's constitutional Rights And to his dignity, integrity And morale And decency As A human being.

○       ○       ○

## FACTS OF CASE

RETALIATORY ASSAULT And PRECEDING Events.

8

#28. On November 4, 2006, Defendant C.O. Miguel Diaz threatened Plaintiff with abusive language after Plaintiff complained about cleaning supplies being thrown into his cell. After Plaintiff stated he would report Diaz to a shift supervisor Diaz threatened to "whoop Plaintiff's ass."

#29. These threats was overheard by inmates Dewayne Whitehead, Angel Calo, Steven Gary, Anthony Nugent and inmate Lugo.

#30. On the morning of November 10, 2006, Defendant Diaz and Strozier were responsible for conducting inmate recreation within the two (2) East housing unit top tier where Plaintiff cell was locate at the Northern Correctional Institution "NCI." Diaz and Strozier refused to allow Plaintiff and his cellmate, Anthony Nugent, to leave their cells to go out for recreation although other inmates on their tier were allowed to go out.

#31. On November 11, 2006, when C.O. Gurmond and Defendant Strozier came to Plaintiff's cell to bring breakfast, Plaintiff asked why he and Mr. Nugent were denied recreation the previous day. Defendant Strozier told Plaintiff that it was because of Plaintiff's earlier argument

with Defendant Diaz, saying, "you could have gotten it yesterday if you hadn't gotten it fuck'd up with my boy Diaz". After breakfast on November 11, 2006, during cell clean-up plaintiff sought to trade the spray bottle in his cell for a broom and dustpan to continue cleaning his cell, Defendant Strozier summoned Defendant Lieutenant Baylor who radioed for a cell extraction team and a handheld video camera to document the planned use of force to retrieve the spray bottle from plaintiff's cell. Plaintiff handed over the spray bottle and force was not use.

#32. This incident was witnessed by inmates Anthony Nugent, Dewayne Whitehead, Angel Calo, Steven Gary, Johnny Johnson and inmate Lugo.

#33. Instead of curbing his subordinate's threats to "Beat plaintiff up the first chance they get" Defendant Lieutenant Baylor encouraged Defendant Strozier telling him to "make sure you fuck him up". Strozier replied, "Oh we will", referring to himself and Diaz. Later in the morning of November 11, 2006, while passing by plaintiff's cell conducting a unit tour, Defendant Diaz told

Plaintiff that he was going to "fuck him up."
That same day, Diaz accused Plaintiff of
threatening him and issued Plaintiff a disciplinary
report.

#34. Directly after the dispute on November 12,
2006, Defendant Strozier threatened the
Plaintiff by telling him to "get ready" when
Mr. Nugent was out of their cell that morning
to get a haircut.

#35. When Mr. Nugent and other inmates on the
tier who had received haircuts returned to
their cells, Corrections Officers Defendant Diaz
and Strozier only escorted only Mr. Nugent. Mr.
Nugent was not usually escorted back to his cell
from receiving a haircut. Defendant Diaz
escorted Mr. Nugent back to the cell he shared
with Plaintiff, which was located on the top tier
, although upon information and belief Diaz was
not working on the top tier that day.

#36. Defendant Strozier, who was working on
the top tier, saw Defendant Diaz approaching
with Mr. Nugent; Defendant Strozier took
the lead towards Plaintiffs cell, with Mr. Nugent
and Defendant Diaz following a few yards behind.

#37. As Defendant Strozier Approached Plaintiff's Cell, Plaintiff went to the door only to see what was going on. As soon as the door to the Cell opened Strozier rushed in After throwing A punch At the Plaintiff which can be seen on the NCI Security Nice vision Security Footage.

#38. Defendant Strozier immediately slammed Plaintiff Against his bunk bed And Storage Locker And Started Choking The Plaintiff. Defendant Diaz then rushed into the Cell And kicked Plaintiff's feet out from under him.

#39. While Plaintiff was lying Face down on the ground, Defendant Diaz placed Plaintiff in hand-cuffs behind his back. Defendant Diaz intentionally bent Plaintiff's wrist back toward his forearm, causing severe pain And injury to the Plaintiff wrist And hand. Defendant Strozier smashed his handheld Radio into Plaintiff's Forehead several times, causing bleeding And Leaving A visible imprint of the Radio pattern on the plaintiff Forehead. Defendant Strozier then began to punch Plaintiff Repeatedly with his Fist.

#40. Only then did DEFENDANTS DIAZ And Strozier CAll for ASSISTANCE, FALSELY CLAIMING that PlAintiff hAd AssAulted them. DEFENDANTS Lieutenant jASon CAhill And C.O.'s Jon DONOVAN, BRuce MOYERS, And AdAm VASQUEZ rushed into PlAINtiff's CEll, where PlAintiff AlreAdy lAy Prone On the ground in hAndcuffs. DEFENDANT MOYERS jumped On PlAintiff's BACk cAusing pAin And injury And DEFENDANT CAhill begAn to kick the PlAintiff in his ribs. DEFENDANTS DUNOVAN VASQUEZ And DIAZ EAch punched the PlAmtiff several times before VASQUEZ left the cell to retrieve A handheld CAMERA. the remAining five officers continued to beat PlAintiff until VAZQUEZ returned with the handheld security CAMERA.

#41. PlAintiff remAined in hAndcuffs And was placed in leg irons to be escorted to the medicAl unit. When the PlAintiff Arrived At the medicAl unit, he hAd swollen And bruised ribs, A cut lower lip, swelling And bruising to his right eye, A swollen And bruised left jAw, And bleeding from A swollen AbrAsion to his forehead As well As A bruised And injury bAck. PlAintiff's left hAnd was injured from being bent bACk toward his wrist And was numb becAuse the hAndcuffs placed by DEFENDANT DIAZ were excessively too tight.

#42. Defendant Nurse Hill And Defendants Cahill, Donovan, Moyers And Vasquez who was present in the Medical unit ignored Plaintiff's repeated Complaints that his handcuffs were too tight And that his Left hand was numb.

Corporal Punishment / Unconstitutional Conditions Of Confinement

#43. Plaintiff was escorted from the Medical Unit to the one (1) East housing unit – Administrative Segregation – At the Northern Correctional Institution by three (3) of the officers who had Assaulted him, Defendant Moyers, Defendant Donovan And Defendant Cahill.

#44. While escorting the Plaintiff to the one (1) East Administrative Segregation – housing unit here At the Northern Correctional Institution Defendant Jon Donovan, who knew of Plaintiff Injury to Plaintiff's Left hand by virtue of his (Donovan) Present while the Plaintiff was speaking to Defendant Nurse Nancy Hill, Maliciously exerted Additional Pressure on Plaintiff injured Left wrist for the sole purpose of causing pain And Suffering.

#45. Defendant Donovan was Aware of the Plaintiff's Injury because he had been Present when Plaintiff complained to Defendant Nancy Hill That the handcuffs were too tight And that his Left hand was numb.

#46. Defendant Cahill, The custody Supervisor, Immediately Arranged And ordered That The Plaintiff be Placed in Chains.

#47. Plaintiff was brought to The one (1) east housing Unit At Northern Correctional Institution cell #102 by Defendant Cahill, Defendant Moyers, Defendant Donovan And Correctional officer gary Spillane where defendant Cahill ordered Defendant Donovan, defendant moyers And C.O. gary Spillane To Place Plaintiff in Chains.

#48. Plaintiff was Placed in chains by These officers where his hands And Leg Where bound together by handcuffs, leg Irons And A tether chain Affixed to The handcuffs And Leg Irons wrapped Around in Three (3) Universals To Leave The Plaintiff bent At the waist in An Awkward Position.

#49. Defendant Cahill ordered Defendant Moyers, Defendant Donovan And Correctional officer gary Spillane To Place Plaintiff in Chains due to Plaintiff Allegedly Continuous threats towards Staff Which is A Punitive Purpose in Violation of Department of

15

Corrections Administrative directive 6.5 use of Force.

#50. After Plaintiff was Placed in chains he Informed Defendant nurse Hill That the chains were too tight And Causing un-necessary Pain, That Plaintiff is in Real bad Pain From his left hand Injury And Requested Pain Relief medication.

#51. At no time did Defendant nurse Hill cause for Plaintiff chains to be Adjusted or Provide Plaintiff with Any Pain Relief medication or even Attempt to Investigate Plaintiff's Complaints of Pain And Suffering

#52. After Plaintiff was plaint Placed in chains he informed Defendant cahill that the chains were too tight And causing un-necessary pain And suffering.

#53. Defendant cahill ignored the Plaintiff And exited the cell with defendant Donovan, moyers And C.O. Gary Spillane And Defendant nurse Hill.

#54. At no time did Defendant cahill Investigate Plaintiff's complaints of pain And suffering or that the Restraints were too tight.

#55. At no time did defendant cahill cause for The chains to be Adjusted.

16

#56. Throughout the rest of the 1st shift hours (7am to 3pm) on November 12, 2006, Plaintiff was kept in chains inside cell #102 within the one (1) east housing unit.

#57. Despite Plaintiff having been in total compliance with all rules since being placed in chains at 10am to 12:30pm, as recorded on the Restraint Checklist generated in connection with Plaintiff's placement in chains, when Plaintiff was escorted to speak to the Conn. State Police regarding the attack on Plaintiff (by Defendant Strozier and Defendant Diaz) Defendant Cahill refused to remove Plaintiff from the chains.

#58. Defendant Cahill continued Plaintiff in chains after Plaintiff spoke to the Conn. State Police and escorted back to cell #102 within the one (1) east housing unit.

#59. Despite Plaintiff being in total compliance with all Rules and Regulations of the Department of Corrections at 12:25pm on November 12, 2006, Lieutenant Brian Jackson, a custody floor supervisor, refused to remove the chains from Plaintiff, but continued Plaintiff in chains.

#60. While Plaintiff was kept in chains Lieutenant Brian Jackson on Nov. 12, 2006, at 12:25pm ordered continued confinement of Plaintiff in chains as recorded on the Restraint Checklist generated in connection with

17

plaintiff Placement in chains.

#61. Throughout The Rest of the 1st Shift hours on nov. 12, 2006, Plaintiff was kept in chains. Despite Plaintiff being in Total compliance with All Rules And Regulations of The Department of Corrections (hereinafter "D.O.C.") As Recorded on The Restraint Checklist generated in connection with Plaintiff's Placement in chains, Plaintiff was not Removed from The chains.

#62 Throughout the first Shift hours on nov. 12, 2006, Plaintiff continued to experience excruciating pain from the tightness And Improper Imposition of The Chains.

#63. On nov. 12, 2006, during the second 2nd Shift hours Plaintiff was denied his evening meal by correctional officer mark Pease.

#64. While Plaintiff was kept in chains during the 2nd Shift hours on nov. 12, 2006, Lieutenant Timothy Riordan At 5:20pm ordered continued confinement of Plaintiff in chains As Recorded on the Restraint Checklist generated in connection with Plaintiff placement in chains.

#65. On nov. 12, 2006, during the 2nd Shift hours Plaintiff Informed Defendant Bayre that the chains were too tight And causing pain And Suffering, That the Plaintiff is in excruciating pain And would like Some pain Relief medication And that Plaintiff need

18

ASSISTANCE with the toilet.

#66. DEFENDANT BAYRE told the Plaintiff to "Shit on yourself Nigger" And Exited the tier.

#67. At no time did DEFENDANT NURSE BAYRE cause for the chains to be Adjusted, Provided Plaintiff with Any pain relief medication or investigate Plaintiff complaints that the chains were too tight causing pain, injury, And suffering.

#68. During the first and second Shift hours while Plaintiff was kept in chains he suffered from Excruciating bodily pain from his back, Left wrist And shoulders. Plaintiff suffered recurring headaches, dizziness And Acid reflexes.

#69. During the 3rd Shift hours on Nov. 13, 2006, Nov. 14, 2006, while Plaintiff was kept in chains Lieutenant Smith At 12:45 Am ordered continued confinement of Plaintiff in chains As recorded on the in cell restraint checklist generated in connection with Plaintiff placement in chains.

#70. During the 3rd Shift hours on Nov. 14, 2006, while Plaintiff was kept in chains Lieutenant Smith At 4:30 Am Again ordered continued confinement of Plaintiff in

Chains As Recorded on the restraint checklist generated in connection with Plaintiff's Placement in Chains.

#71. Despite Plaintiff being in Total compliance with All Rules And Regulations of The D.O.C. during The entire 3rd Shift hours on Nov. 13, 2006, As Recorded On the Restraint Checklist generated In Connection With Plaintiff Placement in Chains Lieutenant Smith order Continued Placement And /or Failed To remove The Chains.

#72. Throughout the entire 3rd Shift hours Plaintiff Suffered excruciating Pain, Dizziness, headAches, And Sleep deprivations From his placement in Chains.

#73. After being in Chains For 24 hours (1 Day), on November 13, 2006, during The First 1st Shift hours After Defendant Salius, The one (1) east housing unit manager, was Conducting A unit tour.

#74. Plaintiff Spoke to Defendant Salius during The unit tour. Plaintiff informed defendant Salius that the restraints were too tight, That Plaintiff is in Severe Pain, That Plaintiff need to be Provided With Some Pain Relief medication And That Plaintiff Could not use The toilet. Plaintiff Also Asked for The Chains To be Removed.

20

#75. Defendant Salius told Plaintiff that Plaintiff was being kept in chains "for assaulting his officers" which is a punitive purpose in violation of Administrative directive 6 5 use of force.

#76. At no time did defendant Salius cause for the chains to be removed or adjusted.

#77. At no time did defendant Salius cause for Plaintiff to be evaluated by any medical personnel.

#78. At no time did defendant Salius investigate Plaintiff complaints of pain and suffering.

#79. Despite the Plaintiff being in total compliance with all Rules and Regulations of the D.O.C. As Recorded on the Restraint Checklist generated in connection with the Plaintiff's placement in chains he was ordered continued confinement in chains and not removed by defendant Salius.

#80. At no time during the first 1st shift hours on Nov. 13, 2006, was Plaintiff ever evaluated by any medical staff in violation of Administrative directive 6.5 use of force.

#81. Consequently, Plaintiff continued to suffer from excruciating pain in his general bodily area from the imposition of the chains throughout the

1st Shift hours on Nov. 13, 2006.

#82. On Nov. 13, 2006, during The 2nd Shift hours white
Plaintiff was Kept in Chains Lieutenant timothy
fiordan At 4:55pm ordered continued confinement of
Plaintiff in chains As Recorded on The Restraint
Checklist generated in connection with Plaintiff
Placement in chains.

#83. Although it is Purportedly Record by Lieutenant
Riordan That Plaintiff was making Threats and
hostile At 4:55pm As Recorded on The Restraint
Checklist generated in connection with Plaintiff
Placement in chains plaintiff was never issued any
disciplinary Report for Threats or Disruptive
behaviur In Accordance with Administrative
Directive 9.5 code of Penal Discipline.

#84. At no time did Plaintiff make Any Threats
Towards Any staff member.

#85. On October 31, 2007, At 6:55pm Plaintiff spoke To
Lieutenant Riordan About The False entry on The
Restraint Checklist generated in connection with
Plaintiff continued Placement in chains And why
did he Report that Plaintiff was making Threats
When Plaintiff did not.

#86 Lieutenant Riordan informed Plaintiff that, That is not his handwriting on The Restraint Checklist And That Someone change his #20 into A #28 which Reflect making Threats / hostile

#87. While Plaintiff was kept in chains during The 2nd Shift hours on Nov. 13, 2006, Lieutenant Riordan At 7:40pm Again ordered continued placement of Plaintiff in Chains. Despite Plaintiff being in Total Compliance with The Rules And Regulations of The D.O.C. He Recorded on The Restraint Checklist generated in connection with Plaintiff Placement in Chains.

#88. On Nov. 13, 2006, during The 2nd Shift hours Plaintiff informed defendant nurse Sanders That the Chains were too tight And Causing Pain And Suffering, That The Plaintiff was in excruciating Pain And would like Some Pain Relief medication.

#89. Plaintiff was in So much Pain he had difficulty Talking in Clear Sentences. Despite his complaints of excruciating Pain Defendant nurse Sanders Told Plaintiff "yeah, we know Already. Stop crying you big Pussy"!!

#90. At no time did Defendant Wendy Sanders Cause for the Chains to be Adjusted.

23

#91. At no time did defendant nurse Sanders Investigate Plaintiff complaints that The chains were too tight causing Pain And suffering.

#92. At no time did Defendant nurse Sanders Provide Plaintiff with Any Pain Relief Medication

#93. Despite Plaintiff being in total compliance with The Rules And Regulations of The D.O.C. As Recorded on The Restraint checklist generated in Connection with Plaintiff Placement in Chains, Plaintiff continued To be held in Chains Through-out The entire Second 2nd Shift hours on Nov. 13, 2006.

#94. Throughout the 2nd Shift hours on Nov. 13, 2006, Plaintiff Continued To Suffer excruciating bodily Pain Un-necessarily.

#95. During the Third Shift hours on Nov. 14, 2006, While Plaintiff was in Chains, Lieutenant Ames At 1 Am And Lieutenant Ramos At 5 Am ordered Continued Confinement of Plaintiff in Chains As Recorded on The Restraint checklist generated in Connection with Plaintiff placement in Chains.

#96. Throughout The 3rd Shift hours Plaintiff Suffered from Sleep deprivation, muscle strains, general bodily Pains And Recuring headaches And Dizziness

24

#97. Despite Plaintiff Being in total Compliance with All Rules And Regulations of The D.O.C. As Recorded on The Restraint Checklist generated in Connection with Plaintiff Placement in chains Plaintiff was ordered continued placement in chains And was not Removed during The 3rd Shift hours on Nov. 14, 2006.

#98. During The first 1st Shift hours on Nov. 14, 2006, while Plaintiff was kept in chains Lieutenant Brian Butkiewicus At 8 am ordered continued confinement of Plaintiff in chains As Recorded on The Restraint Checklist generated in connection with Plaintiff Placement in chains.

#99. Despite Plaintiff being in total compliance with All Rules And Regulations of The D.O.C. As Recorded on The Restraint Checklist generated in Connection with Plaintiff Placement in chains he was ordered continued Phacement in chains And was not Removed.

#100. During The 1st Shift hours on Nov. 14, 2006, Lieutenant Brian Butkiewicus At 10 am Removed The chains off The Plaintiff.

#101. At that time defendant Savoie was present to evaluate the Plaintiff for Any Injuries.

25

#102. Plaintiff Informed defendant Savoie That Plaintiff's Left hand is in extreme pain, That Plaintiff general bodily Area is in Severe pain, That Plaintiff have been Chained-up For 2 1/2 days And That Plaintiff would like Some Pain medication.

#103. Defendant Savoie Told Plaintiff "Custody will take care of him." At that time Defendant Savoie exited The cell Along with Lieutenant Brian Butkiewicus.

#104. At no time was The Plaintiff provided with Any pain relief medication for his pain And Suffering endured from the Punitive Placement And Arbitrary And Capricious Continuances in chains.

#105. Because The Position of the Chains Plaintiff was unable to defecate without soiling himself.

#106. At no time was Plaintiff While in chains Permitted to take a Shower

#107. At no time was Plaintiff while in chains Provided with Any of The basic hygiene Products To perform daily hygienic tasks.

#108. At no time while Plaintiff was in chains was he Provided Any eating utensil to Consume

≥6

his "modified meal plan" when such meal(s) was provided and not refused by a staff member of the D.O.C. The denial of any eating utensil constructively worked to deny the plaintiff or prevented the plaintiff his daily meals.

#109. At no time while plaintiff remained in chains was he observed or reviewed By Defendant Rose within five (5) hours of such placement As required by Administrative directive 9.4 Restrictive housing status Attachment A-12.

#110. At no time while plaintiff remained in chains was he observed or reviewed every (24) hours by Defendant McGill as required by Administrative directive 9.4 Restrictive housing status Attachment A-12.

#111. As a proximate result of Defendant Rose and Defendant McGill failure to afford the plaintiff adequate peroi periodic reviews of the plaintiff placement in chains, it cause for the chains to remain on plaintiff longer than necessary.

#112. As a proximate result of Defendant Rose and Defendant McGill omission(s) to afford the plaintiff adequate periodic reviews of the plaintiff placement in chains, after both Defendants was made aware of plaintiff placement in chains, these Defendants have tactically authorized and acquiesce in the

27

PROlonged confinement in chains That Plaintiff was Subjected to on Nov. 12, 2006, to November 14, 2006.

#113. Defendant Lantz, As Commissioner of The Department of Corrections, Have final Policy making Decision.

#114. Defendant Lantz have created Policy or have Allowed the Continuation of Policy by which Plaintiff Placement in chains And The Prolonged continuances in chains was Authorized by And in Contravention of Said Policy.

#115. Defendant Lantz had Sufficient Knowledge of The Serious Risk to inmates Safety Stemming From the PRActice of Chaining inmates UP For Prolonged Periods And did not do Anything to correct or Protect inmates From being Subjected to the Serious Risk of harm to their Safety.

Injuries And Denial of Medical Care.

#116. Plaintiff had Abrasions on his forehead from Repeatedly being hit with A Radio by Defendant Strozier And Substained bruised And Swollen Right eye, Lip, Ribs And Jaw. Plaintiff Suffered back And neck Injury And daily Pain from Those injuries From The Attack. Plaintiff Suffered Nerve damage To his Left Wrist with Possible dissociation of the Joint.

28

#117. Plaintiff had suffered for 2 1/2 days from stomach pains, muscle aches and pains, recurring headaches and dizziness, and sleep deprivation, compounded with the injuries and pain from the correctional officers attack, while plaintiff remained in chains.

#118. Despite plaintiff complaints about his pain and injuries while in chains, Defendant nurse Saure, Defendant nurse Hill, Defendant nurse Sanders and Defendant nurse Savoie did nothing.

#119. Despite plaintiff complaints about pain and numbness in his left hand from Nov. 12, 2006, throu Nov. 14, 2006, plaintiff was not permitted to see a Dr. until Nov. 19, 2006

#120. Despite requests for plaintiff to receive pain relief medication, in the form of 600 mg of motrin, plaintiff did not receive any pain relief medication until a month and one half days after the incidents of November 12, 2006, to November 14, 2006.

#121. Despite repeated verbal and informal request via informal request system plaintiff did not receive an X-ray of his left wrist until December 1, 2006.

#122. On December 5, 2006, Doctor Dalal, the personnel who created the X-ray, reported widening