UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| IRA ALSTON | : | 3:07-CV-473(RNC) |
| V. | : | |
| CAPTAIN CAHILL, ET. AL. | : | JANUARY 6, 2012 |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF AND IN RESPONSE TO ORDER TO SHOW CAUSE (Doc. #234)**

On December 27, 2011, undersigned counsel received an email and electronic Order to Show Cause, (Doc. #234) ordering a response "by means of a memorandum" by Friday, January 6, 2012, as to why the relief sought should not be granted.[1] In response, Correction Officer Blais provides his affidavit and attests under oath that Captain Marinelli brought into the housing unit five (5) boxes of legal materials held in storage for plaintiff. The plaintiff, Mr. Alston, went through them on December 27, 2011, and retrieved the few items he needed. Blais aff. ¶ 4.

Because Mr. Alston is not assigned to Captain Cahill's block, the present Unit Manager, Captain Marinelli made the arrangements. Correction Officer Blais was able to observe the plaintiff while he reviewed his boxes, and the issue appears to have been resolved. The defendants respectfully submit that the motion (Doc. #233) should be denied as moot. For the additional reasons set forth in the affidavit of Correction Officer Blais, and discussed below, the motion should also be denied.

---

[1] It is respectfully submitted it should be obvious to the Court that the motion (Doc. #233) is moot. The motion appears to allege that plaintiff wrote multiple requests to Captain Cahill, to obtain access to his legal documents. It cannot be ascertained if plaintiff did so, or if Captain Cahill received them. However, upon receipt of this Court's Order, on December 27, 2011, Warden Maldonado immediately directed staff to provide plaintiff access to his boxes. See affidavit of Correction Officer Blais ( Doc. #240-1). Thus, plaintiff has obtained the relief he sought, has suffered no actual injury, is not in danger of imminent injury, and his motion should be denied as moot.

## **STANDARD FOR PRELIMINARY INJUNCTION**

### **A. Case Law Standard**

This Court is familiar with the well established standard for the issuance of a preliminary injunction, especially here, where the alleged harm is remote and speculative. The Supreme Court has long held that injunctive relief is an "extraordinary remedy". Weinberger v. Romero-Barcelo, 456 U.S. 305, 311-12 (1982).  In order to grant either a preliminary injunction the plaintiff must demonstrate:

> [N]ot only that he is likely to suffer irreparable injury if relief is denied but that there is either (1) a likelihood of success on the merits or (2) a sufficiently serious question going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the plaintiff's favor.

Proctor & Gamble Co. v. Cheesborough-Pond's, Inc., 747 F.2d 114, 118 (2d Cir. 1984).

A showing of irreparable harm is "an absolute requirement for an award of injunctive relief." Stewart v. U.S. Immigration and Naturalization Service, 762 F.2d 193, 199 (2d Cir. 1985). "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough to justify injunctive relief." Id. The plaintiff must establish that "the alleged threats of irreparable harm are not remote or speculative but are actual and imminent." New York v. Nuclear Regulatory Commission, 550 F.2d 745, 775 (2d Cir. 1977).

In Vega v. Lantz, 3:04Cv1215(DFM) Ruling and Order (Doc. #73)(D.Conn. March 21, 2006) this Court stated as follows:

> The court construes the plaintiff's request as one requesting interim injunctive relief. "[I]nterim injunctive relief is an 'extraordinary and drastic remedy which should not be routinely granted.'" Buffalo Forge Co. v. Ampco-Pittsburgh Corp., 638 F.2d 568, 569 (2d Cir. 1981) (quoting Medical Society of New York v. Toia, 560 F.2d 535, 538 (2d Cir. 1977)). In addition, a federal court should grant injunctive relief against a state or municipal official "only in situations of most compelling necessity." Vorbeck v. McNeal, 407 F. Supp. 733, 739 (E.D. Mo.), aff'd, 426 U.S. 943 (1976). In this

circuit the standard for injunctive relief is well established. To warrant preliminary injunctive relief, the moving party "must demonstrate (1) that it will be irreparably harmed in the absence of an injunction, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make them a fair ground for litigation, and a balance of hardships tipping decidedly in its favor." Brewer v. West Irondequoit Central Sch. Dist., 212 F.3d 738, 743-44 (2d Cir. 2000). Although a hearing is generally required on a properly supported motion for preliminary injunction, oral argument and testimony are not required in all cases. See Drywall Tapers &Pointers Local 1974 v. Local 530, 954 F.2d 69, 76-77 (2d Cir.1992). Where, as here, "the record before a district court permits it to conclude that there is no factual dispute which must be resolved by an evidentiary hearing, a preliminary injunction may be granted or denied without hearing oral testimony." 7 James W. Moore, et al., Moore's Federal Practice ¶ 65.04[3] (2d ed.1995). Upon review of the record, the court determines that oral testimony and argument are not necessary in this case.

In the absence of an immediate, irreparable injury, plaintiff's motion for an injunction regarding claims which have already been addressed and resolved, should be denied. There can be no practical relief, because the relief requested has already been provided. Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc. 596 F.2d 70, 72 (2d Cir. 1979)(As to the kind of irreparable harm that the party seeking an injunction must show, the claimed injury must be actual and imminent, not "remote or speculative.") The Second Circuit has held that requests for injunctive relief become moot when an inmate is released or transferred to a different correctional facility, or when the relief sought is no longer needed. See Mawhinney v. Henderson, 542 F.2d 1, 2 (2d Cir. 1976). See also Martin-Trigona v. Shiff, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed"). Taylor v. Rowland, 2004 U.S. Dist. LEXIS 1556 (D. Conn. Feb. 2, 2004).

"Moreover, '[t]o prevail on a motion for preliminary injunctive relief, the moving party must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint." Candelaria v. Baker, No. 00-CV-0912E(SR), 2006 U.S. Dist. LEXIS 13238, 2006 WL 618576 at *3 (W.D.N.Y. Mar. 8, 2006)  (citation omitted); accord, Taylor v. Rowland, No.

3

3:02CV229(DJS)(TPS), 2004 U.S. Dist. LEXIS 1556, 2004 WL 231453 at *2-3 (D.Conn. Feb. 2, 2004)." Mitchell v. N.Y. State Dep't of Corr. Servs., 2011 U.S. Dist. LEXIS 127415, 8-9 (W.D.N.Y. Nov. 2, 2011). This the plaintiff has not done.

**B. Statutory Standard Under the PLRA**

In addition, the Prison Litigation Reform Act (PLRA) limits the Court in regard to ordering injunctive relief. See 18 U.S.C. § 3626(a)(1)(A). Section 802 of the PLRA, 18 U.S.C. § 3626(a)(1)(A), provides that "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." Handberry v. Thompson, 446 F.3d 335 (2nd Cir. 2006)(injunction was evaluated as necessary to ensure the PLRA's "need-narrowness-intrusiveness" requirements were satisfied.) With respect to remedies of federal law violations, the PLRA provides that "[t]he court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. §3626(a)(1); see also Benjamin v. Fraser, 343 F.3d 35, 56 (2d Cir. 2003)

Plaintiff's request for injunctive relief is not warranted by case law, and is overly intrusive on the day to day operations of the state's prisons. Plaintiff has no irreparable injury, nor can he show likely success on the merits. His motion should be denied.

**I. PLAINTIFF'S ACCESS TO HIS BOXES OF LEGAL PAPERS HAVE RENDERED THE REQUEST FOR INJUNCTIVE RELIEF MOOT**

The provision of access to plaintiff's five boxes of legal papers, and plaintiff's exchanging and/or retrieving the few items he needed requires that the motion for injunctive relief be denied,

because the injunctive relief has now become moot. Prins v. Coughlin, 76 F.3d 504, 506 (2d Cir. 1996) (per curiam) Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991); See e.g., Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (holding that inmate's claims for injunctive and declaratory relief concerning prison conditions were moot where prisoner had been moved to another prison unit). Mawhinney v. Henderson, 542 F.2d 1, 2 (2d Cir. 1976) ("In view of the fact that appellant is no longer incarcerated at Auburn, his request for an injunction restraining the officials at Auburn from violating his civil rights is moot."); Martin-Trigona v. Schiff, 702 F.2d 380, 386 (2d Cir. 1983). Hanton v. Savoie, 2004 U.S. Dist. LEXIS 12766, No. 3:03CV1643SRU, 2004 WL 1553613, at *2 (D. Conn. Jul. 8, 2004) ("The Second Circuit has held that requests for injunctive relief become moot when an inmate is released or transferred to a different correctional facility."); Batts v. Bogdanoff No. 3:04CV1191 (MRK) 2004 U.S. Dist. LEXIS 26344 (D. Conn. December 22, 2004). Plaintiff has no immediate, irreparable injury; his claims are remote and speculative, and therefore he fails to meet the prerequisite for the issuance of a preliminary injunction.

Plaintiff Alston disagrees that the issue is moot. When he signed his acknowledgement form that he had retrieved his boxes, reviewed them, and signed the form acknowledging in part "I retrieved the documents I needed," he added the following handwritten notation: " To: AAG Storm [sic], This do [sic] not mean that the issue is moot." Plaintiff then went on to cite a Tenth Circuit case, Seneca-Cayuga Tribe of Okla. v. Nat'l Indian Gaming Comm'n, 327 F.3d 1019, 1028 (10th Cir. Okla. 2003), presumably for the proposition that "it is not 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" Seneca-Cayuga Tribe of Okla. v. Nat'l Indian Gaming Comm'n, 327 F.3d 1019, 1028 (10th Cir. Okla. 2003).

Second Circuit case law has a similar discussion with regard to mootness, relying in part on Preiser v. Newkirk, 422 U.S. 395, 402 (1975). At least one court has stated, "An action does not

become moot simply because defendants voluntarily cease the allegedly unlawful practice, as there is no assurance that defendants will not re-institute that practice sometime in the future. See, Preiser v. NewKirk, 422 U.S. 395, 402, 95 S. Ct. 2330, 45 L. Ed. 2d 272 (1975) (citations omitted); Seidemann v. Bowen, 499 F.3d 119, 2007 WL 2416533, at *7 (2d Cir. 2007) (quoting N.Y. Pub. Interest Research Group v. Whitman, 321 F.3d 316, 327 (2d Cir. 2003)). Defendants' voluntary cessation of their allegedly unlawful acts will only moot an action where defendants establish: (1) there is no reasonable expectation that their challenged conduct will recur; and (2) interim relief or events have completely and irrevocably eradicated the effects of the acts of which the plaintiffs complain. See, Seidemann, 499 F.3d 119, 2007 WL 2416533, at *7 (quoting Granite State Outdoor Adver., Inc. v. Town of Orange, Conn., 303 F.3d 450, 451 (2d Cir. 2002));  see also, Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1,     U.S.    , 127 S. Ct. 2738, 2751, 168 L. Ed. 2d 508 (June 28, 2007); Van Wie v. Pataki, 267 F.3d 109, 113 (2d Cir. 2001) (quoting Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 647 (2d Cir. 1998)). '[A] party claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.' Seidemann, 499 F.3d 119, 2007 WL 2416533, at * 7 (internal quotation marks and citations omitted); see also, Adarand Constructors, Inc. v. Slater, 528 U.S. 216, 222, 120 S. Ct. 722, 145 L. Ed. 2d 650 (2000)." Byrd v. Goord, 2007 U.S. Dist. LEXIS 71279, 10-11 (S.D.N.Y. Sept. 26, 2007).

 Here, there is no "allegedly unlawful practice or conduct" at issue. What has occurred is that the plaintiff presumably has made repeated requests to Captain Cahill, who is not his unit manager at present. He then wrote to the Warden, on October 27, 2011. See Motion, Doc. #233 at p. 7 of 12, ¶ 5. The warden promptly, the next day,  on October 28, 2011, referred the matter to the Deputy Warden. Id. ¶ 6,  Pltf's Motion, Exhibit A. Deputy Warden Cyr stated he had not received the request. Id ¶ 11.

This is not intentional conduct. It is simply an inadvertent miscommunication. Additionally, Plaintiff has utterly failed to follow proper procedure in the prison. He is attempting to use the injunction procedures of this court in lieu of first addressing his issues to his Unit Manager, Captain Marinelli, and then, if his request is unsuccessful, he can file a grievance or a request for an administrative remedy under the Department of Correction (DOC) A.D. 9.6.[2]

Under A.D. 9.6, plaintiff must first make an attempt to informally resolve the issue, by doing the following:

> An inmate must attempt to seek informal resolution prior to filing an inmate grievance. The inmate may attempt to resolve the issue verbally with the appropriate staff member or with a supervisor/manager. If the verbal option does not resolve the issue, the inmate shall submit a written request via CN 9601, Inmate Request Form. The inmate must clearly state the problem and the action requested to remedy the issue.

A.D. 9.6, ¶ 6.A.  At most, plaintiff's motion and moving papers supports the claim that plaintiff attempted to informally resolve his issue of not getting prompt access to his legal boxes to exchange certain papers or documents. What plaintiff utterly failed to do, however, was take the next step and file a formal request for an Administrative Remedy, under A.D. 9.6. ¶6.C, which provides:

> Filing a Grievance. An inmate may file a grievance if the inmate is not satisfied with the informal resolution offered. The inmate shall attach CN 9601, Inmate Request Form, containing the appropriate staff member's response, to the CN 9602, Inmate Administrative Remedy Form. If the inmate was unable to obtain a blank CN 9601, Inmate Request Form, or did not receive a timely response to the inmate request, or for a similar valid reason, the inmate shall include an explanation indicating why CN 9601, Inmate Request Form, is not attached. The completed CN 9602, Inmate Administrative Remedy Form, along with any relevant documents, shall be deposited in the Administrative Remedies box. The grievance must be filed within 30 calendar days of the occurrence or discovery of the cause of the grievance.

---

[2] http://www.ct.gov/doc/LIB/doc/PDF/AD/ad0906.pdf, copy attached.

In Porter v. Nussle, 534 U.S. 516, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002), the Supreme Court observed that PLRA's exhaustion requirement affords corrections officials the opportunity to address complaints internally, take administrative action when necessary, filter out potentially frivolous claims, and establish "an administrative record that clarifies the contours of the controversy." Id. at 524-25. Plaintiff has circumvented this grievance process by filing his motion, and if entertained by this Court, and granted, would not only embroil this court in hundreds of day-to-day informal administrative actions or decisions with which hundreds, indeed thousands of inmates held in the DOC might feel dissatisfied, but also it would encourage inmates to circumvent the grievance procedures, because inmates might view the Court's injunction process as a faster way to get administrative relief for a variety of day-to-day prison issues.

PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Id at 532. Moreover, "[e]ven when the prisoner seeks relief not available in grievance proceedings, notably monetary damages, exhaustion is a prerequisite to suit." Id. at 524 (citing Booth v. Churner, 532 U.S. 731, 741, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001)). Additionally, an inmate must properly exhaust administrative remedies. Woodford v. Ngo, 548 U.S. 81, 90, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006). (emphasis added). This requires "compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91.The Second Circuit has made clear that "the alleged ineffectiveness of the administrative remedies that are available does not absolve a prisoner of his obligation to exhaust such remedies when Congress has specifically mandated that he do so." Giano v. Goord, 250 F.3d 146, 150-51 (2001). Where, as here, there is an established administrative remedy procedure, and plaintiff has failed to

exhaust properly by following proper procedures, he cannot, in good faith, claim that the challenged conduct, the alleged denial of access to his legal boxes, is likely to recur.

Plaintiff's motion is improper, circumvents established procedures, and attempts to engage the Court in the daily administration of the Northern CI.  Since there is no case or controversy, and no likelihood of on-going recurring conduct, plaintiff's motion should be denied as moot.

## II. THE COURT SHOULD NOT MICROMANAGE THE MINUTIAE OF PRISON LIFE

The limitation on prisoners' privileges and rights follows from the need to grant necessary authority and capacity to federal and state officials to administer the prisons. See, e.g., Turner v. Safley, 482 U.S. 78 (1987). "Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." Id., at 84-85. To respect these imperatives, courts must exercise restraint in supervising the minutiae of prison life. Ibid. Where, as here, a state penal system is involved, federal courts have "additional reason to accord deference to the appropriate prison authorities." Ibid. McKune v. Lile, 536 U.S. 24, 39 (2002). The plaintiff's demand for the Court to become involved in the minutia of the day to day running of the Northern Correctional Institution, seeking an injunction concerning speculative future alleged "denial" of access to his boxes of legal materials in storage, is exactly what the United States Supreme Court described as "the ne plus ultra of what our opinions have lamented as a court's 'in the name of the Constitution, becoming . . . enmeshed in the minutiae of prison operations.' Bell v. Wolfish, 441 U.S. 520, 562, 60 L. Ed. 2d 447, 99 S. Ct. 1861 (1979)." Lewis v. Casey, 518 U.S. 343, 362 (1996). The entry of such an order as sought by the plaintiff would be, "inordinately --indeed, wildly -- intrusive." Id. [3]

---

.

## CONCLUSION

For all the foregoing reasons, and for the reasons set forth in the affidavit of Correction Officer Blais, the motion for injunctive relief (Doc. #233) should be denied.

          DEFENDANTS
          Captain Cahill, et. al.

          GEORGE JEPSEN
          ATTORNEY GENERAL

BY: _____
          Steven R. Strom
          Assistant Attorney General
          110 Sherman Street
          Hartford, CT  06105
          Federal Bar #ct01211
          E-Mail: steven.strom@ct.gov
          Tel.: (860) 808-5450
          Fax: (860) 808-5591

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed to the following on this 16th day of April, 2007:

Ira Alston,  #275666
Northern  Correctional Institution
P.O. Box 665
Somers, CT 06071

          _____
          Steven R. Strom
          Assistant Attorney General