UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| IRA ALSTON | : | CIVIL NO. 3:07CV473 (RNC) |
| v. | : | |
| JASON CAHILL, ET AL. | : | FEBRUARY 9, 2012 |

### DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE Re: DEFENSE WITNESSES (Doc. # 253)

Plaintiff's motion *in limine* to preclude all of defendants' witnesses (Doc. #253) need not detain this Court very long. Quite frankly it is absurd to claim that the Court should, as plaintiff asserts, "exclude all the defense fact and expert witnesses from testifying in the upcoming trial in this matter." Plaintiff's motion *in limine* (Doc. #253 at 1). Alternately, plaintiff claims that the Court should exclude expert testimony about, inter alia, use of force or correctional policies and procedures, precisely the core issues in this case.

Defendants properly disclosed these witnesses in the Joint Trial Memorandum (JTM) (Doc. #194) signed by plaintiff's prior counsel of record. Prior to signing the JTM there were numerous discussions with Attorney Finn and prior counsel from McCarter & English concerning the witnesses, and a lengthy pretrial conference was held with this Court on December 2, 2010, at which time the question of expert witnesses was also discussed with the Court. Prior counsel agreed to these defendants' witnesses testifying as experts, and offered no objection at that pretrial conference. For example, with regard to the medical issues in this case, the Court itself pointed out that plaintiff had only listed five witnesses, all inmates, and that no expert of any kind had been listed by the plaintiff. For the additional reasons discussed below, plaintiff's motion (Doc. #253) should be denied.

1

I. **DEFENDANTS' WITNESSES ARE CORRECTIONAL EXPERTS AND SHOULD BE ALLOWED TO TESTIFY ABOUT DEPARTMENT OF CORRECTION POLICIES, PROCEDURES AND PROFESSIONAL CORRECTIONAL STANDARDS**

The admission of expert testimony is governed by Fed. R. Evid. 702. Under this rule:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Fed. R. Evid. 701, which governs opinion testimony by lay witnesses, currently provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

There can be no doubt that prisons, especially a maximum security prison like Northern CI, is "a unique place fraught with serious security dangers." Bell v. Wolfish, 441 U.S. 520, 559 (1979). The United States Supreme Court, in Bell v. Wolfish, and in numerous important cases following Bell, repeatedly admonish District Courts to carefully consider and to defer to the judgment of expert correctional officials.

> We think that the District Court and the Court of Appeals have trenched too cavalierly into areas that are properly the concern of MCC officials. It is plain from their opinions that the lower courts simply disagreed with the judgment of MCC officials about the extent of the security interests affected and the means required to further those interests. But our decisions have time and again emphasized that this sort of unguided substitution of judicial judgment for that of the **expert prison administrators** on matters such as this is inappropriate. *See Jones v. North Carolina Prisoners' Labor Union; Pell v. Procunier; Procunier v. Martinez.*

Bell v. Wolfish, 441 U.S. 520, 554 (1979) (emphasis added). The questions that will confront the jury take place, in a "unique place, fraught with serious security dangers," and further, as described by the Supreme Court in Procunier, present "Herculean obstacles," and

2

the problems of prisons are "complex and intractable." These unique security concerns all present specialized knowledge beyond the ken of the average juror, and necessitate the testimony of correctional experts to assist the trier of fact to understand the issues in the case.

> Prison administrators are responsible for maintaining internal order and discipline, for securing their institutions against unauthorized access or escape, and for rehabilitating, to the extent that human nature and inadequate resources allow, the inmates placed in their custody. The Herculean obstacles to effective discharge of these duties are too apparent to warrant explication. Suffice it to say that the problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree. Most require expertise, comprehensive planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. For all of those reasons, courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform. n9 Judicial recognition of that fact reflects no more than a healthy sense of realism. Moreover, where state penal institutions are involved, federal courts have a further reason for deference to the appropriate prison authorities.

Procunier v. Martinez, 416 U.S. 396, 404-405 (1974). Plaintiff's motion cites to Daubert, and Kumho Tire, in which the Supreme Court concluded "that *Daubert's* general principles apply to the expert matters described in Rule 702. The Rule, in respect to all such matters, 'establishes a standard of evidentiary reliability.' 509 U.S. at 590. It 'requires a valid . . . connection to the pertinent inquiry as a precondition to admissibility.' 509 U.S. at 592. And where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question, see Part III, infra, the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.' 509 U.S. at 592."

Kumho Tire Co. v. Carmichael, 526 U.S. 137, 149, 119 S. Ct. 1167, 1175 (1999). The Supreme Court noted,

> Experts of all kinds tie observations to conclusions through the use of what Judge Learned Hand called "general truths derived from . . . specialized experience." Hand, Historical and Practical Considerations Regarding Expert Testimony,   15 Harv. L. Rev. 40, 54 (1901). And whether the specific   expert testimony focuses upon specialized observations, the specialized translation of those observations into theory, a specialized theory itself, or the application of such a theory in a particular case, the expert's testimony often will rest "upon an experience confessedly foreign in kind to [the jury's] own." Ibid. The trial judge's effort to assure that the specialized testimony is reliable and relevant can help the jury evaluate  that foreign experience, whether the testimony reflects scientific, technical, or other specialized knowledge.

Kumho Tire Co. v. Carmichael,  526 U.S. at 148-149.  The defendants' expert witnesses, for example, former Commissioner Brian Murphy, have approximately 30 years of experience in the field of adult corrections. He has specialized observations of Northern CI based on his personal experience;  he has developed policies and procedures, and has knowledge of national correctional standards, and he can apply these general principles to the facts of this case. He has been admitted and qualified, by this very District Court as a correctional expert, in a number of federal civil rights cases, including in a case assigned to this District Judge, Office of Protection and Advocacy (OPA) v. Choinski, Civil  No.  3:03CV1352 (RNC)(DFM). The same would apply to former Commissioner Lantz, and a number of the other witnesses on defendants' witness list.

## II.     PLAINTIFF IS BOUND BY THE  JOINT TRIAL MEMORANDUM

"It is hornbook law that clients generally are bound by the acts of their attorneys"), cert. denied, 444 U.S. 801, 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979); Butler v. Butler, 1 Root (Conn.) 275 (1791) (attorney may bind client in legal proceeding). Ackerman v. Sobol Family P'ship, LLP, 298 Conn. 495, 509 (2010).

4

It is black letter law in the Second Circuit that a client (here, Mr. Alston) is bound by the conduct of his attorney. See, e.g., In re Artha Management, Inc., 91 F.3d 326, 329 (2d Cir. 1996) (presumption that attorney who enters into a settlement agreement had authority to do so); York Research Corp. v. Landgarten, 927 F.2d 119, 122 (2d Cir. 1991) ("As the Supreme Court has observed, a litigant 'is deemed bound by the acts of his lawyer-agent . . .'") (quoting Link v. Wabash R.R., 370 U.S. 626, 633-34, 82 S. Ct. 1386, 1390, 8 L. Ed. 2d 734 (1962)); Prate v. Freedman, 583 F.2d 42, 48 (2d Cir. 1978); Woo v. City of New York, 1997 U.S. Dist. LEXIS 7315 (S.D.N.Y. May 23, 1997).

In this case, Mr. Alston has named as defendants several expert correctional officials, who necessarily must testify based on their review of incident reports, videos, policies and procedures, and based on their specialized knowledge in the field of adult correctional management and security operations and procedures for maximum security prisons. Former Commissioner Lantz is a named defendant and she clearly is a correctional expert, as is former Commissioner Murphy, former Director of Classification and Population Management, Fred Levesque, and other experienced, expert correctional officials, e.g. former warden Jeff McGill, former Deputy Warden Valerie Light and others. They were properly listed in the JTM which was signed by Mr. Alston's lawyer.

On the other hand, Mr. Alston is attempting to name new witnesses, not mentioned in the JTM, and he has offered absolutely no good cause for the failure to name them earlier. Defendants object to plaintiff's newly named inmate and other staff witnesses. The JTM specifically states, ¶10, "Witnesses not listed, except rebuttal and impeachment witnesses, will not be permitted to testify at trial, except for good cause shown."

This case is expected to last at least two weeks, and there are eighteen (18) live, present defendants, although many have retired and defendants claim, lack the requisite personal

5

involvement. Defendants are going to make every reasonable effort to eliminate duplication and will not call persons who will merely repeat what was previously admitted into evidence. Defendants are going to make every effort to streamline and efficiently present their defense. However, eliminating their right to present a defense, as plaintiff's *in limine* motion attempts to do, is unwarranted and would be a denial of defendants' due process right to a fair trial.

## CONCLUSION

For all the foregoing reasons, plaintiff's motion *in limine* should be denied, and defendants' fact and expert witnesses should be allowed to testify as set forth in the Joint Trial Memorandum.

                                             DEFENDANTS
                                             Jason Cahill, Et Al.

                                             RICHARD BLUMENTHAL
                                             ATTORNEY GENERAL


                              BY:   /s/_____
                                  Steven R. Strom
                                  Assistant Attorney General
                                  110 Sherman Street
                                  Hartford, CT 06105
                                  Federal Bar #ct01211
                                  E-Mail: steven.strom@ct.gov
                                  Tel.:  (860) 808-5450
                                  Fax:  (860) 808-5591

## CERTIFICATION

I hereby certify that on February 9, 2012, a copy of foregoing defendants' memorandum in opposition to plaintiff's motions in limine (Doc. #253) was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System. I hereby certify that a copy of the foregoing was mailed to the following on this 9th day of February, 2012 :

Ira Alston, #275666
Northern CI, PO Box 665
Somers, CT 06071

/s/
Steven R. Strom
Assistant Attorney General